SAMUEL R. MAIZEL (SBN 189301 )
ARTHUR H. RUEGGER (NY Bar No. 1242031)
(pro hac vice application to be filed shortly)
TANIA M. MOYRON (SBN 235736)
samuel.maizel@dentons.com; arthur.ruegger@dentons.com
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300; Facsimile: (213) 623-9924
Attorneys for the Official Committee of Equity Holders

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY

| | |
|---|---|
| In re:<br><br>ICPW LIQUIDATION CORPORATION, a California corporation,[1]<br><br>    Debtor and Debtor in Possession.<br><br>In re:<br><br>ICPW LIQUIDATION CORPORATION, a Nevada corporation,[2]<br><br>    Debtor and Debtor in Possession.<br>Affects:<br><br>☒ Both Debtors<br><br>☐ ICPW Liquidation Corporation, a California corporation<br><br>☐ ICPW Liquidation Corporation, a Nevada corporation.<br>OFFICIAL COMMITTEE OF EQUITY HOLDERS of ICPW LIQUIDATION CORPORATION, a Nevada corporation,<br><br>    Objector and Plaintiff,<br>- against -<br><br>RADIANS WAREHAM HOLDING, INC., RADIANS, INC. and SAFETY SUPPLY CORPORATION,<br><br>    Claimant and Defendants. | Lead Case No.: 1:17-bk-12408-MB<br>Jointly administered with: 1:17-bk-12409-MB; Chapter 11 Cases<br><br>Adv. Proc. No.: _____<br><br>**(1) OBJECTION TO CLAIM NO. 20-1 IN CASE 1:17-BK-12408-MB AND CLAIM NO. 7-1 IN CASE 1:17-BK-12409-MB PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007;**<br><br>**COMPLAINT FOR:**<br><br>**(2) DURESS;**<br><br>**(3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(3) UNJUST ENRICHMENT; AND**<br><br>**(4) AVOIDANCE AND RECOVERY OF PROPERTY TRANSFER.** |

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

The Official Committee of Equity Security Holders (the "Committee", "Objector" or "Plaintiff") of ICPW Liquidation Corporation (f/k/a Ironclad Performance Wear Corporation), a Nevada corporation ("ICPW NV"), individually and on behalf of the estates of ICPW NV and ICPW Liquidation Corporation (f/k/a Ironclad Performance Wear Corporation), a California corporation ("ICPW CA"), as and for its Objection to the Claim of Radians Wareham Holding, Inc. in each of the above-captioned cases (Claim No. 20-1 in case 1:17-bk-12408-MB, and Claim No. 7-1 in case 1:17-bk-12409-MB) and its Complaint against Defendants Radians Wareham Holding, Inc., Radians, Inc. and Safety Supply Corporation ("Defendants"), upon knowledge as to its own actions and upon information and belief as to the other allegations, alleges as follows:

## I. PARTIES

1.     On September 8, 2017, ICPW CA and ICPW NV (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court") (Lead Case No.: 1:17-bk-12408-MB and 1:17-bk-12409-MB). ICPW CA was a developer and manufacturer of high-performance task-specific industrial and athletic gloves with headquarters in Farmers Branch, Texas. ICPW NV was the parent corporation of ICPW CA, with no operations or other business. The above-referenced name changes occurred following an October 30, 2017 auction of the Debtors' assets in the Bankruptcy Court, as described further below.

2.     Objector and Plaintiff Official Committee of Equity Holders is an official committee appointed on September 20, 2017, pursuant to the *Notice of Appointment of Official Committee of Equity Holders*. [Docket No. 59].

3.     Pursuant to the *Final Order: (I) Authorizing The Debtors To (A) Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 And 364, And (B) Utilize Cash Collateral Pursuant To 11 U.S.C §§ 361, 362, 363 And 364; (Ii) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; And (Iii) Granting Related Relief*, entered October 6, 2017 (Docket No. 87, the "Final DIP Order"), paragraph kk, the Committee has standing individually and on behalf of the Debtors' estates to, among other matters:

> object to, challenge, or seek to avoid the amount, validity, or enforceability of the Pre-Bankruptcy Secured Debt (or any portion thereof) or any of the liens and security interests created under the Pre-Bankruptcy Secured Debt and to bring any other claim that they have against Radians [Wareham Holding, Inc.] individually or on behalf of the Debtors' Estates [.]

4. Defendant Radians Wareham Holding, Inc. is, on information and belief, a Nevada corporation, with offices at 5305 Distriplex Farms Drive, Memphis, Tennessee 38141. On information and belief, Radians Wareham Holding Inc. is a direct or indirect subsidiary of Defendant Safety Supply Corporation.

5. Defendant Radians, Inc. is, on information and belief, a corporation, with offices at 5305 Distriplex Farms Drive, Memphis, Tennessee 38141 On information and belief, Radians, Inc. is a direct or indirect subsidiary of Defendant Safety Supply Corporation.

6. Defendant Safety Supply Corporation is, on information and belief, a corporation with offices at 880 North Hills Blvd., Suite 505, Reno, Nevada 89506. Safety Supply Corporation is, on information and belief, a privately held corporation, and is the direct or indirect parent company of Radians Wareham Holding, Inc. and Radians, Inc.

## II. THE RADIANS' CLAIM

7. On October 20, 2017, Radians Wareham Holding, Inc. filed identical proofs of claim in each of the two Debtor cases (Claim No. 20-1 in case 1:17-bk-12408-MB, and Claim No. 7-1 in case 1:17-bk-12409-MB, the "Claim"). The Claim sought $3,464,093.28, composed of $3,410,217.39 in principal; $15,481.89 in interest; and $38,394.00 in legal fees. Pursuant to orders approving certain bidding procedures and the sale of the Debtors assets (Docket Nos. 71 and 177), Radians was paid $5,343,988.19 (including a break-up fee in the amount of $500,000 (the "Break-up Fee")) upon the closing of the Debtors sale as set forth in that *Statement of Sale Closing* (Docket No. 237).

## III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. §502 and 28

U.S.C. §157(b)(2). This is a core proceeding under 28 U.S.C. §157(b)(2) (A), (B) and (O).

9. Venue is proper in this Court under 28 U.S.C. §1409.

## IV. **FACTUAL BACKGROUND**

10. Founded in 1998, ICPW CA and ICPW NV (together, "ICPW") were a developer and manufacturer of high-performance task-specific gloves for a variety of end markets. By 2017, ICPW offered over 160 different types of gloves, including industrial, mechanics, sporting and first responder uses. The operating ICPW entity was ICPW CA, which was a subsidiary of ICPW NV, the stock of which was publicly traded. As of April 7, 2017, ICPW NV had 85,646,354 shares of common stock issued and outstanding. ICPW's main offices were in Farmers Branch, Texas.

11. By 2017, ICPW's only structured debt was through a revolving credit line from Capital One, N.A. ("Capital One"), governed by a Revolving Loan and Security Agreement, first entered as of November 28, 2014 (as later amended, the "Loan Agreement"), and secured by ICPW's assets and property. The Loan Agreement provided it was to be governed by the laws of the State of Texas (Section 13.6). As of March 31, 2017, the balance ICPW owed Capital One under that line was $4,484,446.00.

12. Radians, Inc. was founded in 1997 and, along with its parent Safety Supply Corporation and Radians Wareham Holding, Inc. (collectively "Radians"), is a manufacturer of safety equipment and apparel, including eyewear, high-visibility apparel and high performance gloves. Radians is headquartered in Memphis, Tennessee and is privately held.

13. As corporate members of the same privately-owned organization, Radians Wareham Holding, Inc., Radians, Inc. and Safety Supply Corporation acted under the same management and share responsibility for each related entity's actions regarding the ICPW entities.

14. In or around 2007 or 2008, representatives of ICPW and Radians met and discussed in general terms whether the two businesses might benefit from a strategic transaction. While ICPW determined not to pursue the discussions, Radians remained interested in acquiring either ICPW's brands or the company itself. Over the following several years, Radians communicated its interest in a combination to ICPW several times, but ICPW did not accept those

invitations.

15. In May 2017, Radians determined to take a more active pursuit of ICPW and prepared documentation to offer ICPW NV's shareholders twenty-seven and a half cents (27.5¢) per share. Radians communicated this offer to several ICPW shareholders and representatives, but did not receive the desired response. Frustrated with the perceived lack of responsiveness on ICPW's part, in late June 2017, Radians, through Safety Supply Corporation, prepared to go public with the offer. Also during this time, ICPW's board of directors had engaged Craig-Hallum Capital Group LLC as a financial advisor to explore and evaluate potential strategic transactions.

16. ICPW had other problems at that point, however. In April and May, 2017, ICPW's board of directors had received anonymous reports of accounting irregularities at ICPW, resulting in certain revenue figures being inflated in ICPW's financial statements. After an investigation confirmed the irregularities, on or about July 6, 2017, ICPW filed a Form 8-K Report, dated June 29, 2017, disclosing the discovery of the irregularities, the termination of the employment of ICPW CA's CEO and CFO, and the appointment of new individuals to those positions.

17. The disclosure of the financial misstatements did nothing to discourage Radians' interest in acquiring ICPW. Indeed, days later on July 10, 2017, Radians CEO Mike Tutor wrote ICPW's Chairman Vane Clayton, stating Radians did not want to wait for the financial reports to be restated, and stated Radians was willing to consider increasing its 27.5¢ share offer if that would facilitate an agreement as to the acquisition.

18. At the same time, Radians found another approach to acquiring ICPW. In early July, 2017, following ICPW's public disclosure of the financial misstatements and dismissal of top management, Radians learned that ICPW's bank, Capital One, might sell its secured loan. On or about July 7, 2017, Radians contacted Capital One to express an interest in purchasing the ICPW loan.

19. In the months leading up to July, 2017, for various reasons ICPW's business had struggled, resulting in several defaults under the line with Capital One. Faced with these defaults, Capital One had uniformly responded as a responsible bank. Specifically, in or about November, 2016, February, 2017 and April, 2017, ICPW notified Capital One that it expected to miss the

Debt Service Coverage Ratio covenant (the "DSCR Covenant") under the Loan Agreement. In each instance, Capital One agreed to waive the default and modify the Loan Agreement. Indeed, on April 11, 2017, Capital One agreed to replace the DSCR Covenant with a 12-month trailing adjusted EBITDAS covenant, and in May, 2017 extended the loan maturity date to July, 2018. Thus, Capital One had demonstrated it was willing to work with ICPW through financial difficulties.

20. Unknown to ICPW, however, on July 8, 2017, Radians and Capital One began discussing the sale of ICPW's loan to Radians, and within four days had reached an agreement so that drafting started on the sale agreement. Making the sale easier was that fact that Radians cared little about the uncertainties presented by the misstatements in ICPW's financial statements. Radians expressly waived any recourse against and related representations from Capital One on that topic.

21. On July 25, 2017, Radians Wareham Holding, Inc. purchased the ICPW loan from Capital One, with Radians, Inc. wiring an amount to Capital One equivalent to the outstanding balance under the loan. None of the Radians entities or their managers had ever before acted as a commercial lender.

22. The next day, July 26, 2017, counsel to Radians sent ICPW a letter declaring ICPW in default under the loan due to the previously disclosed misstated financial reports, accelerating the loan and demanding immediate payment of the $3,688.195.22 outstanding balance in full. Radians knew ICPW had no means by which to pay the loan, as ICPW's last public financial statements showed a cash balance under $300,000.00.

23. Over the next four weeks, ICPW tried to negotiate with Radians to allow ICPW to continue operations and to try to refinance the loan, but Radians did not allow that to happen. Two one-week forbearances -- one signed August 1st, the other signed August 14th -- were all that Radians was willing to accept. This was despite the fact that ICPW told Radians ICPW needed, at a minimum, 2 to 3 weeks to arrange refinancing. Throughout this time, Radians made purchase offers to buy ICPW. At the time, ICPW was in negotiations with a number of prospective lenders (both to replace and to supplement the existing Radians' debt).

24. Finally, on August 24, 2017, Radians could wait no longer to acquire ICPW's assets and started sweeping cash from ICPW's bank accounts. Radians knew ICPW could not operate without the cash Radians was taking. Radians refused to stop sweeping the cash. The cash sweep was intended to force ICPW to shutdown, and turn over its assets to Radians.

25. Radians' actions in accelerating the loan, agreeing only to unworkable one-week forbearances and sweeping ICPW's bank accounts, were strictly for Radians' own commercial advantage. Radians' actions were unjust, oppressive and in bad faith.

26. Left with no funds to operate and no other alternative, ICPW advised Radians that ICPW intended to file for bankruptcy protection. As part of that process, ICPW negotiated with Radians agreements to auction ICPW's assets wherein Radians was the stalking horse bidder in bankruptcy.

27. ICPW CA and ICPW NV filed for protection under chapter 11 of the United States Bankruptcy Code on September 8, 2017. Per order of the Bankruptcy Court, ICPW's assets were sold at auction on October 30, 2017, for approximately $25,250,000. Radians was not the winning bidder. As part of the sale following the auction, Ironclad's name was property of the winning bidder, and the Debtors names were changed to ICPW Liquidation Corporation(s).

28. Radians' actions have damaged the estates of ICPW California and ICPW Nevada and the shareholders of ICPW Nevada. In addition, Radians' actions have damaged the Committee at least to the extent the Committee has been obliged to incur the expense of this litigation. Had Radians not acted in the above improper manner, the ICPW entities would not have been forced into bankruptcy and would have been able to negotiate a refinancing of the Radians debt or a sale of ICPW's assets on terms more favorable than those realized in the bankruptcy auction.

### V.    OBJECTION TO CLAIM

29. Paragraphs 1 through 28 are incorporated herein by reference in support of the objection to Claim. Based on the above-described misconduct and inequitable actions on the part of the Radians entities including Radians Wareham Holding, Inc., the Committee objects to the Claim(s) (Claim No. 20-1 in case 1:17-bk-12408-MB, and Claim No. 7-1 in case 1:17-bk-12409-

MB) pursuant to Federal Rule of Bankruptcy Procedure 3007, and requests that the Claim be disallowed pursuant to 11 U.S.C. §502, and the Claim avoided under 11 U.S.C. §549, in whole or in part, and order Radians Wareham Holding, Inc. to be liable under 11 U.S.C. §550 for the amounts disallowed and avoided.

### VI.    CAUSES OF ACTION AGAINST ALL DEFENDANTS

A.    **First Cause of Action:  Duress**

30.    Paragraphs 1 through 29 are incorporated herein by reference in support of each of the claims and causes of action.  All conditions precedent to these claims and causes of action have been performed or have occurred.  To the extent that the claims are governed by state law, the law of Texas governs.

31.    Radians' actions as a lender to ICPW constituted improper use of the Loan Agreement's acceleration and sweeping provisions for Radians' own commercial advantage over the ICPW entities, now known as ICPW Liquidation Corporation, a California corporation and ICPW Liquidation Corporation, a Nevada corporation.  Radians' actions were unjust, oppressive and designed to further Radians' own economic interests at the expense of the ICPW entities.

32.    Radians' actions were not in good faith.  Radians' improper actions forced the ICPW entities to file petitions for bankruptcy protection, and ultimately to surrender ICPW's business and assets.

33.    Radians' improper actions proximately caused injury to the estates of ICPW CA and ICPW NV by foreclosing the opportunity to obtain financing or achieve strategic transactions on terms more favorable than those resulting from the auction process.

34.    As a result of Radians' improper actions, the estates of ICPW CA and ICPW NV have suffered damage.

B.    **Second Cause of Action:  Breach of the Covenant of Good Faith and Fair Dealing.**

35.    Paragraphs 1 through 34 are incorporated herein by reference in support of each of the claims and causes of action.  All conditions precedent to these claims and causes of action have been performed or have occurred.

- 8 -

36. The Loan Agreement sold by Capital One to Radians Wareham Holding, Inc. included an implied covenant of good faith and fair dealing.

37. The covenant of good faith and fair dealing requires the parties not do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

38. Radians' actions deprived ICPW of the benefits of the Loan Agreement, improperly invoking the acceleration and sweeping provisions, and contrary to the standards of conduct established while Capital One held the loan, for Radians' own commercial advantage over the ICPW entities. Radians' actions were unjust, oppressive and designed to further Radians' own economic interests at the expense of the ICPW entities.

39. Radians' improper actions forced the ICPW entities to file petitions for bankruptcy protection.

40. Radians' improper actions proximately caused injury to the estates of ICPW CA and ICPW NV by foreclosing the opportunity to obtain financing or achieve strategic transactions on terms more favorable than those resulting from the auction process.

41. As a result of Radians' improper actions, the estates of ICPW CA and ICPW NV (now known as ICPW Liquidation Corporation, a California corporation and ICPW Liquidation Corporation, a Nevada corporation) have suffered damage.

**C.     Third Cause of Action:  Unjust Enrichment**

42. Paragraphs 1 through 41 are incorporated herein by reference in support of each of the claims and causes of action. All conditions precedent to these claims and causes of action have been performed or have occurred.

43. Radians' wrongful actions include using the acceleration and sweeping provisions of the Loan Agreement to coerce unreasonable terms and other consideration from ICPW, including a pre-payment fee and the Break-Up Fee.

44. By receiving such payments, Radians was unjustly enriched, and the Debtors' estates were unjustly damaged.

45. Radians should return such payments to the Debtors' estates.

### D. Fourth Cause of Action: Avoidance and Recovery of Property Transfer

46. Paragraphs 1 through 45 are incorporated herein by reference in support of each of the claims and causes of action. All conditions precedent to these claims and causes of action have been performed or have occurred.

47. For the reasons set forth above, the transfer of property in the form of the payment based on Radians' Claim should be avoided and recovered for the benefit of the Debtors' estates.

48. Pursuant to 11 U.S.C. §§ 549 and 550, the Committee is entitled to avoid and recover that transfer and payment for the benefits of the Debtors' estates.

49. Radians Wareham Holding, Inc. is liable to the Committee for any amount of the Claim disallowed and the related transfer avoided.

### VII. CONCLUSION AND PRAYER

WHEREFORE, on the basis of the foregoing, Plaintiff respectfully requests a judgment or orders against the Defendants as follows:

(a) an order (i) disallowing the Claim, in whole or in part, (ii) avoiding the Claim pursuant to 11 U.S.C. §549, in whole or in part, and (iii) and directing repayment to the Debtors' estates of the amounts disallowed, pursuant to 11 U.S.C. §550;

(b) an order awarding actual damages to Plaintiff against each Defendant;

(c) an order directing payment to Plaintiff of such amounts by which the Defendants are found to have been unjustly enriched;

(d) an order awarding the reasonable and necessary costs and attorneys' fees incurred in bringing and prosecuting this objection and action; and

(e) such other and further relief as the Court deems appropriate.

Dated: December 5, 2017        Respectfully submitted,

DENTONS US LLP
By ___/s/ Samuel R. Maizel___
    Samuel R. Maizel
    Tania M. Moyron

Attorneys for the Official Committee of Equity Security Holders