**BRYAN CAVE LLP**
Sharon Z. Weiss (State Bar No. 169446)
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100 / Facsimile: (310) 576-2200
E-mail: sharon.weiss@bryancave.com

**BAKER DONELSON BEARMAN,**
**CALDWELL & BERKOWITZ, PC**
E. Franklin Childress, Jr. (TN Bar 07040) - Admitted *Pro Hac Vice*
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-2147 / Facsimile: (901) 577-0845
E-mail: fchildress@bakerdonelson.com

Attorneys for Radians Wareham Holding, Inc., Radians, Inc.
and Safety Supply Corporation

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:17-bk-12408-MB |
| ICPW LIQUIDATION CORPORATION, a California corporation, and ICPW LIQUIDATION CORPORATION, a Nevada corporation, | Jointly Administered with 1:17-bk-12409-MB<br><br>Chapter 11<br><br>Adv. Proc. No. 1:17-ap-01101-MB |
| Debtors and Debtors in Possession. | **DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS:** |
| OFFICIAL COMMITTEE OF EQUITY HOLDERS OF ICPW LIQUIDATION CORPORATION, a Nevada corporation, | **(1) OBJECTION TO CLAIM NO. 20-1 IN CASE 1:17-BK-12408-MB AND CLAIM NO. 7-1 IN CASE 1:17-BK-12409-MB PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007;** |
| Plaintiff, | |
| v. | **COMPLAINT FOR:**<br>**(2) DURESS;**<br>**(3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| RADIANS WAREHAM HOLDING, INC., RADIANS, INC. and SAFETY SUPPLY CORPORATION, | **(3) UNJUST ENRICHMENT; AND**<br>**(4) AVOIDANCE AND RECOVERY OF PROPERTY OF THE ESTATE** |
| Defendants. | **[CONCURRENTLY FILED WITH DECLARATION OF E. FRANKLIN CHILDRESS, JR.]**<br><br>**[HEARING DATE TO BE DETERMINED]** |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

11111819

1    **TO: THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE,**

2    **THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS ("PLAINTIFF" OR**

3    **"EQUITY COMMITTEE"), AND ITS ATTORNEYS OF RECORD, AND ALL OTHER**

4    **INTERESTED PARTIES:**

5    Defendants Radians Wareham Holding, Inc., Radians, Inc. and Safety Supply Corporation

6    (collectively the "Radians Defendants"), jointly move this Court pursuant to Fed. R. Bankr. P.

7    Rules 7008 and 7012(b)(6) and Fed. R. Civ. P. Rules 8 and 12(b)(6) for an order dismissing all

8    claims against the Radians Defendants with prejudice on the grounds that Plaintiff lacks standing

9    to pursue the claims asserted in the adversary complaint because (1) as a matter of law, Plaintiff

10   cannot assert an injury on behalf of the Debtors because the Debtors voluntarily released their

11   claims against the Radians Defendants before and after the bankruptcy case with the advice of

12   highly competent counsel, and (2) Plaintiff, standing in its own shoes as equity holders, did not

13   suffer a recognizable injury as a matter of law.  In addition, Plaintiff admits that the Radians

14   Defendants' actions were limited to the enforcement of its contractual remedies, and therefore,

15   each claim for relief must fail as a matter of law.  Plaintiff did not, and cannot, allege sufficient

16   facts to state a claim for (a) duress, (b) breach of the covenant of good faith and fair dealing and

17   (c) unjust enrichment, and (d) Plaintiff fails to assert a viable claim which would entitle it to

18   avoidance and recovery of property.

19   This Motion is based on the Notice of Motion and Motion, the attached Memorandum of

20   Points and Authorities, the concurrently filed Declaration of E. Franklin Childress, Jr. ("Childress

21   Decl."), all pleadings and papers on file in this adversary proceeding and in the Debtors'

22   bankruptcy cases, and such other and further matters as the Court may consider.

23

24   Dated:  January 5, 2018                    BRYAN CAVE LLP

25                                              By: _/s/Sharon Z. Weiss_____

26                                              Sharon Z. Weiss
                                                Attorneys for Radians Wareham Holding, Inc.,
27                                              Radians, Inc. and Safety Supply Corporation

28

*(left margin vertical text:)* BRYAN CAVE LLP / 120 BROADWAY, SUITE 300 / SANTA MONICA, CALIFORNIA 90401-2386

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

BACKGROUND ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.    The ICPW Entities Have Released The Claims Which Plaintiff Asserted And
      Therefore, As A Matter Of Law, Cannot Recover For An Alleged Injury To The
      Debtors. .............................................................................................................. 3

II.   The Court Should Dismiss the Complaint Because Under Texas Law, Shareholders
      Are Prohibited From Bringing A Suit For Damages To Their Corporation. ....................... 9

III.  Plaintiff's Complaint Must Be Dismissed Because It Fails to State a Claim. ..................... 10

      A.    Legal Standard for Dismissal. ..................................................................... 10

      B.    Plaintiff's First Claim for Relief for Duress Must Be Dismissed. ............................ 11

      C.    Plaintiff's Second Claim for Relief for Breach of the Covenant of Good Faith
            and Fair Dealing Must Be Dismissed. ............................................................ 19

      D.    Plaintiff's Third Claim for Relief for Unjust Enrichment Must Be Dismissed. ......... 22

      E.    Plaintiff's Objection to Claim and Fourth Claim for Relief for Avoidance and
            Recovery of Property Transfer Must Be Dismissed. ........................................... 26

IV.   Leave to Amend Is Futile And Should Not Be Granted. .................................................. 26

V.    RWHI Is Entitled to Indemnification for the Cost of Defending this Adversary
      Proceeding. .............................................................................................................. 27

CONCLUSION .................................................................................................................. 29

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Adolph Coors Co. v. Rodriguez,*
   780 S.W.2d 477 (Tex. Ct. App. 1989) ................................................................21, 22

5

*Arnold v. National County Mut. Fire Ins. Co.,*
   725 S.W.2d 165 (Tex. 1987) ...........................................................................................20

6

7

*Austin Nursing Ctr., Inc. v. Lovato,*
   171 S.W.3d 845 (Tex.2005) ............................................................................................10

8

*In re Barnhart,*
   2010 WL 724703 (Bankr. N.D. W. Va. Feb. 26, 2010) ....................................26

9

10

*Barron v. Reich,*
   13 F.3d 1370 (9th Cir. 1994).............................................................................................2

11

*BCC Merchant Solutions, Inc. v. Jet Pay, LLC,*
   129 F. Supp.3d 440 (N.D. Tex. 2015)......................................................................10

12

13

*Bd. of Water Eng'rs v. City of San Antonio,*
   155 Tex. 111, 283 S.W.2d 722 (Tex.1955)............................................................10

14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955 (2007) .....................................................................11

15

16

*In re Bello,*
   2013 WL 2367796 (B.A.P. 9th Cir. May 30, 2013), aff'd, 622 F. App'x 663
   (9th Cir. 2015) ..........................................................................................................10, 11

17

18

*In re Bloemendaal,*
   2016 WL 7852312 (Bankr. D. Mont. Dec. 22, 2016) .......................................11

19

*Branch v. Tunnell,*
   14 F.3d 449, 454 (9th Cir. 1994)....................................................................................2

20

21

*Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.,*
   848 S.W.2d 232 (Tex. App. 1992) .............................................................................21

22

*City of Midland v. O'Bryant,*
   18 S.W.3d 209 (Tex. 2000) ...........................................................................................20

23

24

*Cockrell v. Republic Mortg. Ins. Co.,*
   817 S.W.2d 106 (Tex. App. 1991) .............................................................................21

25

*Cole v. Hall,*
   864 S.W.2d 563 (Tex. Ct. App. 1993) .......................................................................20

26

27

*Commercial Nat. Bank of Beeville v. Batchelor,*
   980 S.W.2d 750 (Tex. App. 1998) .............................................................................22

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*D.R.Horton-Texas, Ltd. v. Savannah Properties Associates, L.P.*,
   416 S.W. 3d 217 (Tex. Ct. App. 2013) ................................................................7

*Dale v. Simon*,
   267 S.W. 467 (Tex. Comm'n App. 1924) ...........................................................12

*Deer Creek Ltd. v. N. Am. Mortg. Co.*,
   792 S.W.2d 198 (Tex. Ct. App. 1990) ................................................13, 18, 19

*In re Dublin Secs.*,
   133 F.3d 377 (6th Cir. 1997).................................................................................4

*English v. Fischer*,
   660 S.W.2d 521 (Tex. 1983) ...............................................................................20

*Ennis State Bank v. Heritage Bank*,
   No. 10-02-00226-CV, 2004 WL 1109833 (Tex. App. May 12, 2004) .................22

*Farah v. Mafrige & Kormanik*,
   927 S.W.2d 663 (Tex. Ct. App. 1996) ................................................................20

*FDIC v. Coleman*,
   795 S.W.2d 706 (Tex. 1990) ..........................................................................20, 21

*Fed. Savs. & Loan Ins. Corp. v. Wilson*,
   722 F. Supp. 306 (N.D. Tex. 1989).....................................................................21

*First Union Nat. Bank v. Richmont Capital Partners I, L.P.*,
   168 S.W.3d 917 (Tex. App. 2005) ......................................................................24

*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*,
   960 S.W.2d 41 (Tex. 1998) .................................................................................20

*Freeman v. Harleton Oil & Gas, Inc.*,
   528 S.W.3d 708 (Tex. App. 2017), *reh'g overruled* (Aug. 8, 2017) ................24

*In re Gwen*,
   No. LA CV15-02111 JAK, 2015 WL 6758126 (C.D. Cal. Nov. 5, 2015).............24

*Hall v. Resolution Trust Corp.*,
   958 F.2d 75 (5th Cir. 1992) ................................................................................21

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   885 F.2d 1149 (3d Cir.1989)..................................................................................4

*In re Hedged-Investments Assoc., Inc.*,
   84 F.3d 1281 (10th Cir. 1996)................................................................................4

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995)...................................................................................4

*In re Home & Hearth Plano Parkway, L.P.*,
   320 B.R. 596 (N.D. Tex. Bankr. 2004) ...............................................................21

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Hunt v. Bass*,
   664 S.W.2d 323 (Tex.1984) ........................................................................................9

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ...................................................................................11

*Kalyanaram v. Burck*,
   225 S.W. 3d 291 (Tex. Ct. App. 2006) ....................................................................6

*Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*,
   20 S.W.3d 692 (Tex. 2000) ......................................................................................7

*Lindsey v. Ipock*,
   732 F.2d 619 (8th Cir. 1984) .................................................................................24

*Lovell v. W. Nat'l Life Ins. Co.*,
   754 S.W.2d 298–303 (Tex. App.—Amarillo 1988, writ denied) ...........................21

*Morath v. The Texas Taxpayer and Student Fairness Coalition*,
   490 S.W.3d 826 (Tex. 2016) ....................................................................................9

*Nance v. Resolution Tr. Corp.*,
   803 S.W.2d 323 (Tex. App. 1990), writ granted (Nov. 7, 1990), writ withdrawn
   (June 5, 1991), writ denied, 813 S.W.2d 154 (Tex. 1991) .....................................20

*Nautical Landings Marina, Inc. v. First Nat'l Bank*,
   791 S.W.2d 293 (Tex. App.—Corpus Christi 1990, writ denied) ...........................21

*O'Dowd v. Trueger*,
   233 F.3d 197 (3d Cir. 2000) .....................................................................................4

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers &
   Lybrand*,
   LLP, 322 F.3d 147 (2d Cir. 2003) ...........................................................................11

*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*,
   267 F.3d 340 (3d Cir. 2001) .....................................................................................4

*Papasan v. Allain*,
   478 U.S. 265 (1986) ................................................................................................11

*Preblich v. Battley*,
   181 F.3d 1048 (9th Cir. 1999) ...............................................................................24

*In re QMect, Inc.*,
   349 B.R. 620 (Bankr. N.D. Cal. 2006) ..................................................................26

*Sanders v. Republic National Bank of Dallas*,
   389 S.W.2d 551 (Tex. Civ. App. 1965) .................................................................13

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir.1991) .......................................................................................4

*Shurberg v. La Salle Indus. Ltd.*,
   No. 04-15-00320-CV, 2016 WL 1128291 (Tex. App. Mar. 23, 2016) ....................9

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*Sneed v. Webre*,
465 S.W.3d 169 (Tex. 2015) ........ 10

*South Plains Switching, Ltd. Co. v. BNSF Ry. Co.*,
255 S.W.3d 690 (Tex. Ct. App. 2008) ........ 20

*State National Bank of El Paso v. Farah Manufacturing Company, Inc.*,
678 S.W.2d 661 (Tex. Ct. App. 1984) ........ 7, 8, 12, 19

*Stevens v. Lowder*,
643 F.2d 1078 (5th Cir. 1981) ........ 10

*In re Still*,
573 F. App'x 654 (9th Cir. 2014) ........ 24

*Swank v. Cunningham*,
258 S.W.3d 647(Tex. 2008) ........ 9

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex.1993) ........ 9, 10

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 2

*Van Buskirk v. CNN*,
284 F.3d 977 (9th Cir. 2002) ........ 2

*In re Whitley*,
463 B.R. 775 (Bankr. M.D.N.C. 2012) ........ 26

*Williams v. Lara*,
52 S.W.3d 171 (Tex.2001) ........ 9

**Statutes**

11 U.S.C. § 541 ........ 3, 4

11 U.S.C. § 541(a) ........ 4

28 U.S.C. § 158(c)(2) ........ 24

**Rules**

Fed. R. Bankr. P. 7008 ........ 10

Fed. R. Bankr. P. 7012(b) ........ 10

Fed. R. Bankr. P. 8002(a) ........ 24

Fed. R. Civ. P. 8 ........ 10

Fed. R. Civ. P. 8(a)(2) ........ 11

Fed. R. Civ. P. 10(c) ........ 2

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2, 10, 26

**Other Authorities**

3 *Collier on Bankruptcy* ¶ 323.02[1]..............................................................................4

Principles of Corporate Governance: Analysis and Recommendation § 7.01 cmt.
   c(2005) .......................................................................................................................9

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**BACKGROUND**

3      On or about November 28, 2014, Capital One, N.A. ("Capital One") extended a credit

4 facility to Ironclad Performance Wear Corporation, a California corporation ("ICPWA CA") and

5 Ironclad Performance Wear Corporation, a Nevada corporation ("ICPWA NV", collectively with

6 ICPW CA, the "ICPW Entities" or the "Debtors") in the form of a revolving credit line (the

7 "Subject Loan") pursuant to the terms of a Revolving Loan and Security Agreement (as later

8 amended, the "Loan Agreement").  The repayment of the Subject Loan was secured by the assets

9 and property of the ICPW Entities.  [*See* Complaint, ¶11; *see also* Childress Decl., Ex. 1 - Bankr.

10 Dkt #6, pp. 18-55.]  Since the extension of the Subject Loan, there have been a series of

11 modification agreements with the last modification, the Sixth Modification Agreement, executed

12 on or about May 10, 2017.  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, Exh. 3, p. 121.]  The

13 Sixth Modification Agreement was executed prior to ICPW NV filing a Form 8-K on July 6, 2017.

14 In the Form 8-K, ICPW NV disclosed that its creditors and investors could not rely on the

15 financial information which it had previously provided, including the financial statements

16 provided in conjunction with the Subject Loan.

17      Thereafter, on or about July 25, 2017, Radians Wareham Holding, Inc. ("RWHI")

18 purchased the Subject Loan from Capital One.  The purchase included an assignment of the

19 collateral documentation for the Subject Loan.[1]  [*See* Complaint ¶21; *see also* Childress Decl., Ex.

20 1 - Bankr. Dkt #6, Exh. 4, pp. 128-134.]

21      On July 26, 2017, RWHI delivered a demand letter in which it provided the ICPW Entities

22 with notice of default under the terms of the Loan Agreement (the "First Demand Letter").  The

23 notice of default was based upon the information provided in the Form 8-K which was filed on

24 July 6, 2017.  In the First Demand Letter, RWHI asserted the following:

25           Section 6 of the Loan Agreement requires, and Borrowers[2] agree, that until
            payment in full of the Indebtedness, Borrowers will provide the lender with

26

27 [1] The Loan Agreement provided that Capital One reserved the "right to sell all or a portion of its interest in the
Revolving Loan."  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, p. 52, Section 13.10.]

28 [2] In the First Demand Letter, the ICPW Entities are referenced as the "Borrowers."

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

financial statements for stated time periods that will be "materially complete and correct". The Form 8-K filed indicates that the Borrowers have failed to comply with the requirements of the Loan Agreement in this regard.

In accordance with Sections 10(b) and (c) of the Loan Agreement, an Event of Default has occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

As provided under Section 11 of the Loan Agreement, as an Event of Default currently exists, Radians hereby accelerates and declares due and immediately payable the entire outstanding principal balance of the Note, together with all accrued and unpaid interest, and all other amounts due and owing under the Note, and any other Loan Documents.

[*See* Childress Decl., Ex. 12 - First Demand Letter;[3] *see also* Complaint, ¶22.]

After the delivery of the First Demand Letter, the ICPW Entities and RWHI negotiated a series of forbearance and loan modification agreements. [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, 136-169.] At all relevant times, ICPW had the benefit of legal counsel. In late August, 2017, the ICPW Entities notified RWHI of their intent to file petitions under Chapter 11 of the Bankruptcy Code. Thereafter, the ICPW Entities and RWHI through their respective counsel began to negotiate the terms of the Asset Purchase Agreement, accompanying Bidding Procedures and DIP Financing and Cash Collateral Agreement. The ICPW Entities filed the Voluntary Petitions on September 8, 2017. On September 11, 2017, the ICPW Entities filed their motion to approve the Bidding Procedures (the "Bidding Procedures Motion"). [*See* Childress Decl., Ex. 2 -

---

[3] When ruling on a Rule 12(b)(6) motion to dismiss, a court may consider certain materials outside the complaint without converting the motion to dismiss into a motion for summary judgment, including documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *See U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Pursuant to Rule 10(c), written instruments attached to pleadings may be considered part of the pleading. *See* Fed. R. Civ. P. 10(c). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908; *see Van Buskirk*, 284 F.3d at 980. "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. A court may also consider materials outside the pleadings that are subject to judicial notice by the court. *Barron*, 13 F.3d at 1377; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

1    Bankr. Dkt #10.]  On September 20, 2017, the notice of appointment of the Equity Committee was

2    filed.  [*See* Childress Decl., Ex. 4 - Bankr. Dkt # 59.]

3         On December 5, 2017, Plaintiff, as the Equity Committee, commenced this adversary

4    proceeding against RWHI, Radians, Inc. and Safety Supply Corporation.  [*See* Childress Decl.,

5    Ex. 11 - Bankr. Dkt #292.]   The claims in the Complaint are premised solely on the alleged

6    misconduct of RWHI that occurred after RWHI purchased the Subject Loan (i.e. post July 25,

7    2017).  Defendants Radians, Inc. and Safety Supply Corporation did not participate in the

8    purchase of the Subject Loan, and are not parties to any agreement as to the Subject Loan.

9         There are four specific claims in the Complaint: duress, breach of the covenant of good

10   faith and fair dealing, unjust enrichment, and avoidance and recovery of property transfer. The tort

11   claims are governed by Texas law.  [*See* Childress Decl., Ex. 1 - Loan Agreement at Section 13.5].

12   The claim for avoidance and recovery of property transfer is governed by federal bankruptcy law.

13   As will be shown hereinafter, each of the four claims asserted in the Complaint is legally

14   defective, and the Complaint should be dismissed without leave to amend.

15                              **ARGUMENT**

16   **I.    The ICPW Entities Have Released The Claims Which Plaintiff Asserted And**
         **Therefore, As A Matter Of Law, Cannot Recover For An Alleged Injury To The**
17       **Debtors.**

18        Plaintiff alleges that the Equity Committee has standing individually and on behalf of the

19   Debtors' estates to bring the claims asserted in the Complaint as provided for in paragraph kk of

20   the Final DIP Order. [*See*, Complaint, ¶3].  As reflected in the quoted language, the Committee is

21   only entitled to "bring any other claim that they have against Radians [Wareham Holding, Inc.]

22   individually or on behalf of the Debtors' Estates."  In other words, this Court did not, and could

23   not, make a finding that either the Debtor or the Equity Committee suffered a recoverable injury

24   nor could it confer rights or remedies that did not otherwise exists by the Debtors or equity

25   holders.

26        To the extent the Equity Committee asserts claims on behalf of the Debtors, those claims

27   were released by the ICPW Entities pre-petition and again post-petition.  Under 11 U.S.C. § 541,

28   the bankruptcy estate includes "all legal or equitable interests of the debtor in property *as of the*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   *commencement*" of bankruptcy. 11 U.S.C. § 541(a) (emphasis added); *see also O'Dowd v.*

2   *Trueger,* 233 F.3d 197, 202 (3d Cir. 2000). These legal and equitable interests include causes of

3   action. 3 *Collier on Bankruptcy* ¶ 323.02[1]; *accord O'Dowd,* 233 F.3d at 202-03. Thus, "in

4   actions brought by the trustee as successor to the debtor's interest under section 541, the 'trustee

5   stands in the shoes of the debtor and can only assert those causes of action possessed by the

6   debtor. [Conversely,] [t]he trustee is, of course, subject to the same defenses as could have been

7   asserted by the defendant had the action been instituted by the debtor.'" *Hays & Co. v. Merrill*

8   *Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3d Cir.1989); *see also In re Hedged-*

9   *Investments Assoc., Inc.,* 84 F.3d 1281, 1284 (10th Cir. 1996) (A trustee cannot bring suit against

10  third-party investors because "one who has himself participated in a violation of law cannot be

11  permitted to assert ... any right founded upon ... the illegal transaction.").  Therefore, to the extent

12  that Plaintiff, as the Equity Committee, stands in the shoes of the Debtors, it is restricted by the

13  parameters of 11 U.S.C. § 541 to pursue the claims in this adversary proceeding.  Plaintiff may <u>not</u>

14  use the status as Equity Committee to insulate itself.  *Hedged-Investments,* 84 F.3d at 1285-86; *see*

15  *also Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,* 267 F.3d 340, 357-

16  358 (3d Cir. 2001); *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093-94 (2d Cir. 1995);

17  *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 120 (2d Cir.1991); *In re Dublin Secs.,*

18  133 F.3d 377, 380 (6th Cir. 1997).

19          Prior to RWHI's purchase of the Subject Loan, Capital One and the ICPW Entities entered

20  into a series of modification agreements.[4]  The Sixth Modification Agreement was executed on or

21  about May 10, 2017.  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, pp. 121-126.]  In paragraph 12

22  of the Sixth Modification Agreement, the ICPW Entities released any claims that they might have

23  against Capital One.  The release specifically reads:

24          12.    **Release.**  Borrower[5] hereby releases and forever discharges [Capital
            One] from any and all claims, demands, liabilities, losses or causes of
25          action, known or unknown, fixed or contingent, Borrower may have directly
            against [Capital One], as of 12:00 midnight, Dallas, Texas time, on the date
26

27  ───────────────
    [4] Each loan modification contained the same or substantially similar release language.

28  [5] Borrower is defined as Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance
    Wear Corporation, a Nevada corporation, individually, collectively and interchangeably.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  of the execution of this Sixth Modification, that is a part of, concerns or in
   any manner relates to this Sixth Modification or the Security Documents,
2  including but not limited to, claims for tortious interference with contractual
   relations, breach of contract, usury, breach of fiduciary duty, bad faith,
3  negligence, negligent misrepresentation, defamation, business
   disparagement, promissory estoppel, or similar causes of action, except
4  Damages they incurred in any action, suit or proceeding brought by a third
   party against them.

5

6  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, p. 124.]

7      In the Forbearance and Modification Agreement which the ICPW Entities and RWHI

8  executed on August 1, 2017, the ICPW Entities acknowledged that they did not have any defenses

9  to the payment obligation as to the Subject Loan.  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, pp.

10  136-146.]

11      6.    **Acknowledgement of Lack of Defenses.**  Borrowers acknowledge
       that as of the Effective Date each has no defense, counterclaim, offset, cross
12     complaint, claim or demand of any kind or nature whatsoever (collectively,
       the "Borrower Claims") that can be asserted to reduce or eliminate all or
13     any part of its liability to repay any of the Obligations to Lender or seek
       affirmative relief for damages of any kind or nature from Lender, which
14     Borrower Claims arise out of or are related to the Loan Documents or, more
       generally, Borrowers' relationship with Lender. **To the extent that any**
15     **such Borrower Claims exist as of the Effective Date, Borrowers**
       **acknowledge and agree that they have been fully, forever and**
16     **irrevocably released pursuant to Paragraph 14 hereto.**

17  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, p. 138, emphasis added.]  The ICPW Entities further

18  acknowledged several events of default had occurred for their "failure to provide materially

19  complete and correct financial statements provided in accordance with the Loan Agreement."  [*See*

20  Childress Decl., Ex. 1 - Bankr. Dkt #6, p. 138.]  The ICPW Entities then released any claims that

21  they had in Paragraph 14.  It reads:

22      14.    **Release of Lender.**[6]

23      (a)    Except with respect to Lender's obligations set forth in this
       Agreement, in consideration of the agreements of Lender contained herein
24     and for other good and valuable consideration, the receipt and sufficiency of
       which is hereby acknowledged, Borrowers, and each of their respective
25     successors, assigns, and other legal representatives, hereby absolutely,
       unconditionally and irrevocably releases, remises and forever discharges
26     Lender, and its successors and assigns, and its present and former
       shareholders, affiliates, subsidiaries, divisions, predecessors, directors,

27

28  _____
   [6] Lender is defined as RWHI.

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   officers, attorneys, employees, agents and other representatives (Lender and

2   all such other Persons being hereinafter referred to collectively as the
    "Releasees" and individually as a "Releasee"), of and from all demands,
    actions, causes of action, suits, covenants, contracts, controversies,

3   agreements, promises, sums of money, accounts, bills, reckonings, damages
    and any and all other claims, counterclaims, defenses, rights of set off,

4   demands and liabilities whatsoever (individually, a "Claim" and
    collectively, "Claims") of every name and nature, known or unknown,

5   suspected or unsuspected, both at law and in equity, which such Borrowers
    or any of their respective heirs, successors, assigns, or other legal

6   representatives may now or hereafter own, hold, have or claim to have
    against the Releasees or any of them for, upon, or by reason of any

7   circumstance, action, cause or thing whatsoever which arises at any time on
    or prior to the day and date of this Agreement, including, without limitation,

8   for or on account of, or in relation to, or in any way in connection with any
    of the Loan Documents or transactions thereunder or related thereto.

9

10  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, pp. 140-41, emphasis added.]

11      Essentially the same provisions as to the "Acknowledgement of Events of Default",

12  "Acknowledgment of Lack of Defenses" and the "Release of Lender" are found in the August 14,

13  2017 Forbearance Agreement and the Second Forbearance Agreement dated August 30, 2017

14  ("Second Forbearance Agreement").  [Bankr. Childress Decl., Ex. 1 - Dkt #6, pp. 147-157, ¶¶ 4, 6

15  and 12; Bankr. Dkt #6, pp.158-169, ¶¶ 4, 6 and 14.].

16      In the Complaint, Plaintiff alleges that RWHI and Radians, Inc. are subsidiaries of Safety

17  Supply Corporation.  [*See* Complaint, ¶¶4 to 6.]  In other words, Radians, Inc. and Safety Supply

18  Corporation are affiliates of RWHI.  As affiliates, under the clause quoted above, Radians, Inc.

19  and Safety Supply Corporation were also expressly released.  As a result, while neither Radians,

20  Inc. nor Safety Supply Corporation engaged in any of the improper conduct alleged in the

21  Complaint, the ICPW Entities had, nevertheless, released any claims against them.

22      In *Kalyanaram v. Burck*, 225 S.W. 3d 291 (Tex. Ct. App. 2006), the Texas Court of

23  Appeals indicated that a release of a claim is valid as long as the claim is "mentioned" in the

24  release.  The Court described the release as follows:

25      "A release is an agreement or contract in which one party agrees that a duty
        or obligation owed by the other party is discharged immediately on the

26      occurrence of a condition. A release extinguishes a cause of action and bars
        recovery on the released matter. To effectively release a claim, the release

27      must mention the claim to be released. Although the agreement must
        mention the claim to be effective, the parties need not identify each

28      potential cause of action relating to the subject matter of the release.

1
2
3

> Further, although releases include claims existing at the time of execution, they may also include unknown claims and damages that develop in the future. Under Texas law, a release is a contract. As such, a release should be interpreted like any other contract."

4    *Id*. at 297 (internal citations omitted).

5      In *D.R.Horton-Texas, Ltd. v. Savannah Properties Associates, L.P.*, 416 S.W. 3d 217, 226

6 (Tex. Ct. App. 2013), the Court of Appeals added that "[i]n construing a release, as with other

7 contracts, the primary effort is to ascertain and give effect to the intention of the parties to the

8 release, considering the instrument as a whole."

9      The Supreme Court of Texas has also approved broad form releases. *See Keck, Mahin &*

10 *Cate v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000):

11
12
13
14

> "Nothing in *Brady* [a prior TX Supreme Court Case] forbids such a broad-form release. Brady simply holds that the release must "mention" the claim to be effective. It does not require that the parties anticipate and identify each potential cause of action relating to the release's subject matter. Although releases often consider claims existing at the time of execution, a valid release may encompass unknown claims and damages that develop in the future."  (internal citations omitted).

15 *Id*.  In the three forbearance agreements which the ICPW Entities executed after RWHI purchased

16 the Subject Loan, the ICPW Entities represented and warranted that they did not have any defense

17 to the payment obligation as to the Subject Loan (and further acknowledged events of default had

18 occurred).  Likewise, the ICPW Entities represented and warranted that they did not have any

19 claims "that [arose] out of or are related to the Loan Documents or, **more generally, Borrowers'**

20 **relationship with Lender.**"  [Childress Decl., Ex. 1 - Bankr. Dkt #6, pp. 138, 150, 161-62,

21 emphasis added.]

22      The ICPW Entities then "absolutely, unconditionally and irrevocably release[d] . . .

23 [RWHI] and its affiliates . . . from all . . . claims. . . of every name and nature, known or unknown,

24 suspected or unsuspected, . . .which [the ICPW Entities] . . . may now or hereafter own, hold, have

25 or claim to have against [RWHI and its affiliates] . . . including, without limitation, . . .in any way

26 in connection with any of the Loan Documents or transactions thereunder or related thereto.[7]

27
28

[7] The ICPW Entities' execution of releases in three different forbearance agreements distinguishes the events in the present case from those subsequently discussed in *State National Bank of El Paso v. Farah Manufacturing Company,*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Under Texas law, the ICPW Entities have represented, warranted and acknowledged that they did not have any claims arising out of or related to its relationship with RWHI.  Similarly, the ICPW Entities have released any claims that they did have.  Accordingly, for that additional reason, the Court should dismiss all of the claims in Complaint against each of the Radian's Defendants.

Finally, and perhaps most importantly, the ICPW Entities subsequently released all claims against the Radians Defendants in the Court approved Debtor-In-Possession Credit Agreement and Agreement for the Use of Cash Collateral dated September 8, 2017 ("DIP Agreement").  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, p. 199-309, Section 11.13.]  The Court specifically found that the DIP Agreement was "fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration."  [*See* Childress Decl., Ex. 3 - Bankr. Dkt #31 (Interim DIP Order), ¶H; Bankr. Childress Decl., Ex. 6 - Dkt #70 (Second Interim DIP Order), ¶H; Childress Decl., Ex. 8 - Bankr. Dkt 87, ¶J (Final DIP Order).]  The Court further clarified that the DIP Agreement, and related interim orders approving the DIP Agreement, did not "impair or prejudice the rights of any creditor, future trustee or shareholder to challenge the validity, perfection or enforceability of the Lender's pre-petition liens, and the release of claims set forth in Section 11.13 of the DIP Agreement does not apply to any party other than the Debtors and their estates."  [*See* Childress Decl., Ex. 3 - Bankr. Dkt #31, ¶ii; Childress Decl., Ex. 6 - Bankr. Dkt #70, ¶ii.]  Because the Equity Committee is not seeking to challenge the validity, perfection or enforceability of Radians' pre-petition lien, but instead asserts causes of action which solely belong to the bankruptcy estates, the release contained in Section 11.13 of the DIP Agreement is applicable, and the Complaint should be dismissed without leave to amend.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

---

*Inc.*, 678 S.W.2d 661 (Tex. Ct. App. 1984).  In *Farah*, when the company discovered the release in the restructuring document, the release was deleted.  *Id.* at 679.

**II.    The Court Should Dismiss the Complaint Because Under Texas Law, Shareholders Are Prohibited From Bringing A Suit For Damages To Their Corporation.**

Since the Equity Committee may not pursue any claims against the Radians Defendants standing in the shoes of the Debtors, it may only pursue claims that it is entitled to bring on its own behalf.  Here, the Equity Committee consists only of shareholders and therefore, the Court must review a shareholder's standing to pursue the claims alleged in the Complaint.  Although articulated in different ways, standing generally requires that there be a real controversy between the parties which will be actually determined by the judicial declaration sought. *Morath v. The Texas Taxpayer and Student Fairness Coalition*, 490 S.W.3d 826, 848 (Tex. 2016).   The Complaint must fail because only the Debtors may bring the claims alleged in the Complaint.  A cause of action against one who has injured a corporation belongs to the corporation and not to the shareholders.  Thus, a shareholder who seeks individual redress based on allegations concerning the wrongs done to a corporation lacks standing.  *Swank v. Cunningham*, 258 S.W.3d 647, 661(Tex. 2008).

An individual stakeholder is said to have a direct claim for wrongs done to him in cases in which the wrongdoer violates a duty that arises from a contract or otherwise that is owed directly by the wrongdoer to the stakeholder.   *Shurberg v. La Salle Indus. Ltd*., No. 04-15-00320-CV, 2016 WL 1128291, at *7 (Tex. App. Mar. 23, 2016) *citing Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex. App. 2008).  Only a wrongful act that causes an injury that is separate and distinct from a corporate injury will give rise to a direct cause of action. *Swank*, 258 S.W.3d at 661 (citing Principles of Corporate Governance: Analysis and Recommendation § 7.01 cmt. c(2005)).

As observed by the Texas Supreme Court:

> "Standing is a constitutional prerequisite to maintaining suit in either federal or state court." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex.2001) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 444 (Tex.1993)). Generally, unless standing is conferred by statute, "a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Id*. at 178–79 (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984)). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1

> have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc.
> v. Lovato*, 171 S.W.3d 845, 848 (Tex.2005). "The general test for
> standing in Texas requires that there '(a) shall be a real controversy
> between the parties, which (b) will be actually determined by the
> judicial declaration sought.' " *Tex. Ass'n of Bus.*, 852 S.W.2d at 446
> (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 155 Tex. 111,
> 283 S.W.2d 722, 724 (Tex.1955)).

2

3

4

5

6    *Sneed v. Webre*, 465 S.W.3d 169, 179–80 (Tex. 2015).

7           The Equity Committee has no viable individual claims here because shareholders cannot

8    sue on their own behalf to recover for a loss resulting from depreciation of the value of their stock

9    as the result of an injury to the corporation.  *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir.

10   1981); *see also BCC Merchant Solutions, Inc. v. Jet Pay, LLC*, 129 F. Supp.3d 440, n.8 (N.D. Tex.

11   2015)(recognizing *Stevens* holding that an action to redress injuries to a corporation cannot be

12   maintained by shareholder in his own name but must be brought in the name of the corporation).

13          There is nothing in the Complaint that alleges a harm that is particular to the Equity

14   Committee or any specific shareholder.  As a result, any claims asserted by a shareholder must be

15   dismissed without leave to amend since there is no recognizable legal injury to the shareholders.

16   [*See e.g.* Complaint ¶¶ 34, 41, and 44].

17   **III.    Plaintiff's Complaint Must Be Dismissed Because It Fails to State a Claim.**

18          **A.       Legal Standard for Dismissal.**

19          Even if this Court were to find that Plaintiff has standing to pursue the claims asserted in

20   this adversary proceeding and that the claims were not released, the adversary proceeding should

21   still be dismissed because the Complaint does not state a cognizable claim for relief.  Fed. R. Civ.

22   P. 8 and 12(b)(6); Fed. R. Bankr. P. 7008 and 7012(b).  Under Fed. R. Civ. P. Rule 12(b)(6),

23   incorporated by reference into Fed. R. Bankr. P. Rule 7012(b), the Court should dismiss this

24   adversary proceeding if the Complaint "fail[s] to state a claim upon which relief can be granted."

25   Fed. R. Civ. P. Rule 12(b)(6). While a motion to dismiss pursuant to Rule 12(b)(6) generally

26   requires that the Court accept as true the material allegations in the complaint and draw reasonable

27   inferences in the plaintiff's favor, with respect to the legal elements of a claim, the Court is not

28   "bound to accept as true a legal conclusion couched as a factual allegation." *In re Bello*, 2013 WL

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    2367796, at *3 (B.A.P. 9th Cir. May 30, 2013), aff'd, 622 F. App'x 663 (9th Cir. 2015) *citing*

2    *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

3        Furthermore, only a complaint that states a plausible claim for relief survives a motion to

4    dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955 (2007). Determining

5    whether a complaint states a plausible claim for relief will be a context-specific task that requires

6    the reviewing Court to draw on its judicial experience and common sense.  *In re Bello*, Nos. SC-

7    11-1541-JuBaPa, No. 10-16981, No. 10-90528, 2013 WL 2367796, at *3 (9th Cir. B.A.P. May 30,

8    2013) (*citing Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). But where the well-pleaded

9    facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint

10    has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc.

11    8(a)(2); *see also In re Bloemendaal*, 2016 WL 7852312, at *4 (Bankr. D. Mont. Dec. 22, 2016).

12        The Court should also grant a motion to dismiss if a defense negating plaintiff's claims

13    appears on the face of the complaint (or documents otherwise cognizable on the motion). *See, e.g.,*

14    *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, LLP, 322

15    F.3d 147, 158 (2d Cir. 2003).

16        **B.        Plaintiff's First Claim for Relief for Duress Must Be Dismissed.**

17        The first claim for relief which Plaintiff asserts against the Radians Defendants is for

18    duress.  *See* Complaint, ¶¶30-34.  The specific allegations as to the claim of duress are stated as

19    follows:

20        31.    Radians' actions as a lender to ICPW constituted improper use of the
       Loan Agreement's acceleration and sweeping provisions for Radians' own
21       commercial advantage over the ICPW entities, now known as ICPW
       Liquidation Corporation, a California corporation and ICPW Liquidation
22       Corporation, a Nevada corporation.  Radians' actions were unjust,
       oppressive and designed to further Radians' own economic interests at the
23       expense of the ICPW entities.

24        32.    Radians' actions were not in good faith.  Radians' improper actions
       forced the ICPW entities to file petitions for bankruptcy protection, and
25       ultimately to surrender ICPW's business and assets.

26        33.    Radians' improper actions proximately caused injury to the estates of
       ICPW CA and ICPW NV by foreclosing the opportunity to obtain financing
27       or achieve strategic transactions on terms more favorable than those
       resulting from the auction process.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1     34.     As a result of Radians' improper actions, the estates of ICPW CA
       and ICPW NV have suffered damage.
2

3     [Complaint, ¶¶31 to 34.].

4         The most frequently cited case on duress under Texas law is *State National Bank of El*

5     *Paso v. Farah Manufacturing Company, Inc.*, 678 S.W.2d 661 (Tex. Ct. App. 1984) (writ granted

6     (Mar. 6, 1985), judgment set aside and cause dismissed (Mar. 6, 1985)).  Initially, the Court of

7     Appeals found that duress is a tort under Texas law.  The *Farah* Court then quoted from *Dale v.*

8     *Simon*, 267 S.W. 467, 470 (Tex. Comm'n App. 1924) as to the elements of duress and the

9     limitations on the cause:

10             There can be no duress unless [1] there is a threat to do some act which the
        party threatening has no legal right to do. [2] Such threat must be of such
11        character as to destroy the free agency of the party to whom it is directed. It
        must overcome his will and cause him to do that which he would not
12        otherwise do, and which he was not legally bound to do. [3] The restraint
        caused by such threat must be imminent. [4] It must be such that the person
13        to whom it is directed has no present means of protection.

14    678 S.W.2d at 684 (quoting *Dale* at 267 S.W. at 470).  The *Farah* Court also discussed the impact

15    of the availability of the courts to the threatening party in the enforcement of his legal right:

16             [5] Where a demand made is wrongful or unlawful, and it is necessary for
        the party making such demand to resort to the courts to enforce same, there
17        is no duress, for the one upon whom demand is made has adequate means of
        protection, and there is no imminent restraint .... [6] But where the party
18        making such demand has, or is supposed to have, the power to injure the
        business or property interests of the one upon whom such demand is made,
19        without resort to the courts to enforce the demand, and threatens to do an
        act which would cause such injury, and which he has no right to do, and
20        thereby induces a compliance with his demand, [7] against the will of such
        party through fear of injury to his business or property interests, such threats
21        amount to duress, [8] if it appears that the party making such demand and
        threat ought not in good conscience to retain the benefit received by reason
22        thereof.

23    *Id*.

24        Ultimately, the *Farah* Court stated that a party does not engage in duress when it threatens

25    to do what it has a legal right to do.

26             It has been held that threatening to do that which a party has a legal right to
        do cannot form the basis of a claim of duress by business compulsion. The
27        vice arises only when he employs extortive measures, or when, lacking
        good faith, he makes improper demands.
28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    *Id.* (*citing Sanders v. Republic National Bank of Dallas*, 389 S.W.2d 551 (Tex. Civ. App. 1965).

2            In *Deer Creek Ltd. v. N. Am. Mortg. Co.*, 792 S.W.2d 198, 203 (Tex. Ct. App. 1990), the

3    Texas Court of Appeals indicated that "economic duress may be claimed only when the party

4    against whom it is claimed was responsible for claimant's financial distress."  792 S.W.2d at 203.

5    In other words, there is a causation element - only the party that caused the claimant's financial

6    problems can be liable for economic duress related to those problems.

7            Under Texas law, the initial element of a claim for duress is that the alleged tortfeasor

8    "threat[ened] to do some act which the party threatening has no legal right to do."  Plaintiff must,

9    therefore, initially establish that each of the Radians Defendants threatened to take an action which

10   they were not legally entitled to take.  The Complaint fails to do so, and for this reason alone, the

11   duress claim fails.

12           The crucial allegations are found in paragraphs 19 to 27 of the Complaint.  Those

13   allegations can be summarized as follows:

14           19.     Prior to July, 2017, the ICPW Entities had defaulted under the terms
                     of the Loan Agreement (as amended) with Capital One.
15

16           21.     On July 25, 2017, RWHI purchased the ICPW loan from Capital
                     One.
17
             22.     On July 26, 2017, counsel for RWHI sent a demand letter to the
18                   ICPW Entities.[8]

19           23.     Over the next four weeks, the ICPW Entities and RWHI entered into
                     a series of forbearance agreements.[9]  RWHI refused to extend the
20                   forbearance period despite pending refinancing and pending purchasers.

21           24.     On August 24, 2017, RWHI began to sweep the funds from the
                     ICPW Entities' bank accounts.
22
             25.     The actions of RWHI were unjust, oppressive and in bad faith.
23
             26.     The ICPW Entities had no alternative except to file a Petition under
24                   Chapter 11 of the United States Bankruptcy Code.

25   _____
     [8] The Committee did not attach a copy of the First Demand Letter (July 26, 2017) to the Complaint.  A copy is
26   attached hereto as Exhibit 2.

     [9] The Committee also did not attach copies of the forbearance agreements to the Complaint.  *See* Forbearance and
27   Modification Agreement dated August 1, 2017, [Bankr. Dkt #6, pp. 136-146]; Forbearance Agreement dated August
     14, 2017, [Bankr. Dkt #6, pp. 147-157]; and Second Forbearance Agreement dated August 30, 2017, [Bankr. Dkt #6,
28   pp. 158-169].

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA  90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

27.     The ICPW Entities did so on September 8, 2017.

As a starting point, neither Radians, Inc. nor Safety Supply Corporation engaged in any of the conduct upon which the claim for duress is based. As clearly stated in the First Demand Letter (July 26, 2017), RWHI purchased the Subject Loan from Capital One. Thereafter, based on publicly disclosed events of default as set forth in the Form 8-K which ICPW NV filed with the Securities and Exchange Commission, RWHI accelerated the payment date and demanded payment in full. Since RWHI undertook all of the allegedly improper actions, the Court should dismiss the claim for duress against Radians, Inc. and Safety Supply Corporation.

The question as to RWHI is, therefore, whether it **threatened to do some act which it had no legal right to threaten to do.** The answer is that RWHI did not make any unlawful threat. In the Complaint, Plaintiff acknowledges that RWHI purchased the Subject Loan from Capital One. [*See* Complaint, ¶21.] Plaintiff also acknowledges that the ICPW Entities had misstated their financial condition. [*See* Complaint, ¶16.]

> 16.     ICPW had other problems at that point, however. In April and May, 2017, ICPW's board of directors had received anonymous reports of accounting irregularities at ICPW, resulting in certain revenue figures being inflated in ICPW's financial statements. After an investigation confirmed the irregularities, on or about July 6, 2017, ICPW filed a Form 8-K Report, dated June 29, 2017, disclosing the discovery of the irregularities, the termination of the employment of ICPW CA's CEO and CFO, and the appointment of new individuals to those positions.

[*See* Complaint, ¶16] Plaintiff also admits that Capital One had decided to attempt to sell the Subject Loan after the discovery of the false financial statements. [*See* Complaint, ¶18.]

What Plaintiff does not state is that the delivery of false financial information to Capital One was a default under the terms of the Loan Agreement as to the Subject Loan. (In fact, Plaintiff did not attach the Loan Agreement as an Exhibit to the Complaint.[10]) Section 6 of the Loan Agreement required that the ICPW Entities to provide accurate financial information to the lender throughout the year.

---

[10]    *See* Revolving Loan and Security Agreement dated November 18, 2014 [Childress Decl., Ex. 1 - Bankr. Dkt #6, pp. 18-67].

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    In the First Demand Letter, counsel for RWHI described the event of default, related

2  acceleration and demand for payment as follows:

3
> Events of Default have occurred and are continuing under the Loan
> Documents as more particularly described herein.  On July 6, 2017, the
> Borrower, Ironclad Performance Wear Corporation, a Nevada corporation,
> filed a Form 8-K with the Securities and Exchange Commission for the
> period ending June 29, 2017 (the "Form 8-K").  The Form 8-K discloses
> that the Audit Committee of the Borrower's Board of Directors (the "Audit
> Committee") has called into doubt the reliance on the Borrower's financial
> statements as of and for the fiscal years ended December 31, 2016, and
> 2015, and as of and for the fiscal quarters ended March 31, 2017 and March
> 31, June 30 and September 30, 2016.The Form 8-K provided the following
> information:
>
> A review of the Borrower's financial statements began when, during the
> second quarter of fiscal 2017, the Borrower received anonymous reports
> regarding potential accounting irregularities relating to certain sale
> transactions (the "Subject Transactions"). The Borrower has subsequently
> determined that the Subject Transactions affect the periods as of and for the
> fiscal years ended December 31, 2016, and 2015, and as of and for the fiscal
> quarters ended March 31, and June 30, 2016 (collectively, the "Subject
> Periods"), and that the corresponding roll-over effect of these misstatements
> resulting from the Subject Transactions in the Subject Periods also affect
> the Borrower's financial statements as of and for the fiscal quarters ended
> September 30, 2016 and March 31, 2017. The Audit Committee promptly
> directed its regular outside general counsel, Stubbs Alderton & Markiles,
> LLP, to conduct an investigation with the assistance of Resources Global
> Professionals, a global accounting services firm (the "Consultant"), into the
> alleged irregularities, along with a review of relevant accounting and sales
> records for the Subject Periods. Later, a committee of the Borrower's
> independent directors retained an outside law firm, Skadden, Arps, Slate,
> Meagher & Flom LLP, to help oversee the investigation and provide
> direction and guidance to the Consultant. The Audit Committee informed
> BDO USA, LLP ("BDO"), the Borrower's independent registered public
> accounting firm, of the anonymous reports and on-going investigation on
> June 12, 2017.
>
> Over the course of approximately 6 weeks, the Consultant, working under
> the direction and guidance of outside counsel and on behalf of the Audit
> Committee, identified previously undisclosed information pertaining to
> certain recorded sales that preliminarily indicate that the Subject
> Transactions should not have been recorded in the Subject Periods. Based
> upon the review conducted by the Consultant and the Audit Committee,
> which are not yet complete or definitive, the Audit Committee believes the
> items in question improperly (increased) reduced, for the quarter ended
> March 31, 2017, and the years ended December 31, 2016, and 2015,
> revenues by approximately $292,000 (or approximately 6.6%), ($844,000)
> (or approximately -3.4%) and ($1,390,000) (or approximately -5.9%), gross
> profit by approximately $86,000 (or approximately 5.5%), ($322,000) (or
> approximately -3.6%) and ($402,000) (or approximately -4.9%), and
> operating loss and net loss by approximately ($86,000), $6,000 and
> $402,000, respectively. However, the investigation is not final and the
> ultimate amounts may differ from the aforementioned amounts. Therefore,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

on June 29, 2017, the Audit Committee concluded that the Borrower's financial statements as of and for the fiscal years ended December 31, 2016, and 2015, and as of and for the fiscal quarters ended March 31, 2017, and March 31, June 30 and September 30, 2016, should no longer be relied upon due to the misstatements resulting from the Subject Transactions in the Subject Periods and the corresponding roll-over effect of these misstatements outside the Subject Periods. Although the Borrower cannot yet estimate when it will complete the restatement of its financial statements for such periods and file applicable amended reports, it is diligently pursuing completion of such restatements and intends to file applicable amended reports as soon as reasonably practicable.  BDO concurred with the Audit Committee's conclusions that the Borrower's financial statements as of and for the fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016, required restatement.

Section 6 of the Loan Agreement requires, and Borrowers agree, that until payment in full of the Indebtedness, Borrowers will provide the lender with financial statements for stated time periods that will be "materially complete and correct".  The Form 8-K filed indicates that [ICPW has] failed to comply with the requirements of the Loan Agreement in this regard.

In accordance with Sections 10(b) and (c) of the Loan Agreement, an Event of Default has occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

As provided under Section 11 of the Loan Agreement, as an Event of Default currently exists, Radians hereby accelerates and declares due and immediately payable the entire outstanding principal balance of the Note, together with all accrued and unpaid interest, and all other amounts due and owing under the Note, and any other Loan Documents.

Counsel then details the amounts owed on the Subject Loan after acceleration, notes that the lender is no longer obligated to make advances on the line of credit and reminds the ICPW Entities that any funds collected on accounts receivable are its collateral.

While counsel for RWHI notified the ICPW Entities of the default, accelerated the payment date and demanded payment, counsel did not set a specific date by which payment had to be made.  Instead, RWHI almost immediately began to work with the ICPW Entities as to a forbearance agreement.

On August 1, 2017, RWHI and the ICPW Entities, with the advice of experienced legal counsel, entered into the Forbearance and Modification Agreement.  In the Forbearance and Modification Agreement, the ICPW Entities acknowledged the events of default, the termination

of the obligation to make further advances on the line of credit and the lack of defenses to

obligations on the Subject Loan.

> **2.     Acknowledgement of Obligations by Borrowers**. Borrowers
> acknowledge and agree that Borrowers are indebted to Lender for
> repayment of the Obligations, including all accrued interest accrued
> thereon. Borrowers further acknowledge that they are responsible for all
> fees, expenses and charges as allowed under the Loan Documents.
> Borrowers hereby reaffirm and ratify the terms of the Loan Documents, as
> amended herein, and acknowledge that they are enforceable in accordance
> with their terms.

> \* \* \* \*

> **4.     Acknowledgement of Events of Default**. Borrowers acknowledge
> that in accordance with Sections 10(b) and (c) of the Loan Agreement,
> Events of Default have occurred for failure to provide materially complete
> and correct financial statements provided in accordance with the Loan
> Agreement for fiscal years ended December 31, 2016, and 2015, and the
> fiscal quarters as of and for the periods ended March 31, 2017, and March
> 31, June 30 and September 30, 2016.

> **5.     Acknowledgment of Termination of Requirement to Make
> Further Advances Under the Note**. Borrowers acknowledge that in
> accordance with Section 2.2 of the Loan Agreement, as Events of Default
> have occurred and are continuing, Radians [Radians Wareham Holding,
> Inc.] is not required to make further advances under the Loan.

> **6.     Acknowledgement of Lack of Defenses**. Borrowers acknowledge
> that as of the Effective Date each has no defense, counterclaim, offset, cross
> complaint, claim or demand of any kind or nature whatsoever (collectively,
> the "Borrower Claims") that can be asserted to reduce or eliminate all or
> any part of its liability to repay any of the Obligations to Lender or seek
> affirmative relief for damages of any kind or nature from Lender, which
> Borrower Claims arise out of or are related to the Loan Documents or, more
> generally, Borrowers' relationship with Lender. **To the extent that any
> such Borrower Claims exist as of the Effective Date, Borrowers
> acknowledge and agree that they have been fully, forever and
> irrevocably released pursuant to Paragraph 14 hereto.**

[*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, pp. 136-146, emphasis added; *see also* Section II,

*supra*.]  RWHI then agreed to extend the termination date of the Subject Loan to August 7, 2017

and to advance $250,000.00 to the ICPW Entities under the frozen line of credit.

While the ICPW Entities did not repay the outstanding indebtedness owed on the Subject

Loan on August 7, 2017 at the expiration of the forbearance period, RWHI continued in

discussions with the ICPW Entities.  RWHI again began to work with the ICPW Entities as to

another forbearance agreement.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1    On August 15, 2017, RWHI and the ICPW Entities entered into the Forbearance

2    Agreement.  In the Forbearance Agreement, the ICPW Entities again acknowledged the events of

3    default, the termination of the obligation to make further advances on the line of credit and the

4    lack of defenses to obligations on the Subject Loan.  RWHI then essentially extended the prior

5    forbearance period until August 21, 2017.  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, pp. 147-

6    157.]

7    The ICPW Entities did not repay the outstanding indebtedness owed on the Subject Loan

8    by August 21, 2017 at the expiration of the forbearance period, as extended.  The ICPW Entities

9    subsequently notified counsel for RWHI that they intended to file voluntary cases (the

10    "Bankruptcy Cases") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

11    Court for the Central District of California on or before Friday, September 1, 2017.  The ICPW

12    Entities also requested that RWHI provide the debtor in possession financing ("DIP Financing")

13    and consent to their use of cash collateral.

14    On August 30, 2017, RWHI and the ICPW Entities entered into the Second Forbearance

15    Agreement.  In the Second Forbearance Agreement, the ICPW Entities again acknowledged the

16    events of default, the termination of the obligation to make further advances on the line of credit

17    and the lack of defenses to obligations on the Subject Loan.  RWHI then extended the prior

18    forbearance period until September 1, 2017, provided additional funding for operations and

19    preparation for the case filings, and agreed to the basics under which the ICPW Entities would

20    operate after the Bankruptcy Cases were filed.  [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, pp.

21    158-169.]

22    As of September 1, 2017, RWHI had not threatened to take or taken any unlawful action as

23    to the ICPW Entities.  In fact, RWHI had worked with the ICPW Entities through the difficult

24    times following the filing of the Form 8-K, agreed to provide DIP financing and agreed to allow

25    the use of cash collateral.  Accordingly, Plaintiff cannot establish the first element of a claim of

26    duress against RWHI under Texas law.

27    Similarly, Plaintiff cannot prevail on the *Deer Creek* causation element.  Under *Deer*

28    *Creek*, only the party that caused the ICPW Entities' financial problems can be liable for economic

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA  90401-2386

1   duress related to those problems.  792 S.W.2d at 203.  Here, the Debtors financial problems were

2   caused by their own malfeasance due to the financial irregularities in which the prior CEO and

3   CFO of ICPW CA had engaged[11].  Those individuals falsified the financial information provided

4   to Capital One which ultimately led to the events of default under the Loan Agreement.  (Those

5   actions actually concealed the ICPW Entities' poor financial condition.)  As a result for this

6   additional reason, the duress claim should be dismissed.

7           Finally, Plaintiff cannot overcome the fourth and fifth points noted in *Farah*.  In

8   summarizing the elements of duress, the Court stated the following:

9               [4] [The threat] must be such that the person to whom it is directed has no
                present means of protection.
10

11              [5]      Where a demand made is wrongful or unlawful, and it is necessary
                for the party making such demand to resort to the courts to enforce same,
                there is no duress, for the one upon whom demand is made has adequate
12              means of protection, and there is no imminent restraint.

13   678 S.W.2d at 684.

14          Throughout the period from July 26, 2017 until September 1, 2017 and beyond, the ICPW

15   Entities had experienced counsel representing the corporations.  As is clear from the filing of the

16   Bankruptcy Cases, the ICPW Entities had the ability to seek the protection of the United States

17   Bankruptcy Court at any time.

18          In the end, RWHI did not threaten to or undertake any unlawful action toward the ICPW

19   Entities.  RWHI was not involved in the generation of or the discovery of false financial

20   information.  The ICPW Entities always have had counsel, have acknowledged their defaults and

21   have worked with RWHI in a cooperative manner.  As a result, Plaintiff cannot establish that any

22   of the Radians Defendants engaged in duress as to the ICPW Entities.

23      **C.    Plaintiff's Second Claim for Relief for Breach of the Covenant of Good Faith
                and Fair Dealing Must Be Dismissed.**
24

25          In its second claim for relief, Plaintiff alleges that "[t]he Loan Agreement sold by Capital

26   One to Radians Wareham Holding, Inc. included an implied covenant of good faith and fair

27

28   [11] Those financial irregularities are also the basis of the Equity Committee's planned adversary proceeding against
     Jeffrey Cordes and William Aisenberg. [*See* Childress Decl., Ex. 10 - Bankr. Dkt #243 and 357.]

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  dealing" and that "Radians" breached this duty by "improperly invoking the acceleration and

2  sweeping provisions" of the Loan Agreement "for "Radians'" own commercial advantage over the

3  ICPW [E]ntities." [Complaint, ¶¶ 36, 38].  Based on applicable Texas law and Plaintiff's own

4  allegations, this cause of action should be dismissed.  None of the Radians Defendants owed a

5  duty of good faith and fair dealing to Plaintiff as a matter of law.  Even if such a duty could

6  conceivably apply in this case, Plaintiff's allegations do not state a plausible claim for relief.

7       The Supreme Court of Texas "has held that not every contractual relationship creates a

8  duty of good faith and fair dealing.  We have 'specifically rejected the implication of a general

9  duty of good faith and fair dealing in all contracts.'"  *City of Midland v. O'Bryant*, 18 S.W.3d 209,

10 215 (Tex. 2000); *English v. Fischer*, 660 S.W.2d 521 (Tex. 1983) (explaining that Texas courts

11 disfavor the implied duty of good faith and fair dealing).  In Texas, "there is no general duty of

12 good faith and fair dealing in ordinary arm's length commercial transactions." *South Plains*

13 *Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 702 (Tex. Ct. App. 2008) (citing *Formosa*

14 *Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 52 (Tex. 1998)).

15 "[T]he duty of good faith and fair dealing does not exist in Texas unless intentionally created by

16 express language in a contract or unless a special relationship[12] of trust and confidence exists

17 between the parties to the contract."  *Id.*  "The fact that one businessman trusts another and relies

18 upon another to perform a contract does not rise to a confidential relationship."  *Id*. (citing *Farah*

19 *v. Mafrige & Kormanik*, 927 S.W.2d 663, 675-76 (Tex. Ct. App. 1996)).

20      Both Texas appellate courts and federal courts applying Texas law have repeatedly held

21 that "the lender-borrower relationship . . . is not a 'special relationship' that would justify reading

22 such a duty into the contract."  *Nance v. Resolution Tr. Corp.*, 803 S.W.2d 323, 333 (Tex. App.

---

[12] "Texas courts have carved out exceptions for certain 'special relationships,' such as those between insurers and insureds, principal and agent, joint ventures, and partners." *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. Ct. App. 1993) (citing *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)); *FDIC v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990) (explaining that a tortious breach of the implied duty is cognizable only when the contracting parties enjoyed a "special relationship[]" marked by shared trust or an imbalance in bargaining power."). "Absent an *Arnold* 'special relationship,' the duty to act in good faith is contractual in nature and its breach does not amount to an independent tort." *Cole*, 864 S.W.2d at 568.  In this case, the Loan Agreement expressly provides that "[t]he relationship between Borrower and Bank is, and shall at all times remain, solely that of the borrower and Bank, and Bank has no fiduciary or other special relationship with Borrower." Loan Agreement, § 13.9.

1990), writ granted (Nov. 7, 1990), writ withdrawn (June 5, 1991), writ denied, 813 S.W.2d 154

(Tex. 1991) (cited to approvingly by *Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848

S.W.2d 232, 239 (Tex. App. 1992); *see Hall v. Resolution Trust Corp.*, 958 F.2d 75, 79 (5th Cir.

1992) ("Three Texas intermediate appellate courts have explicitly 'refused to overlay an implied

duty of good faith and fair dealing duty in the lender borrower relationship.' . . . We join them in

that respect.") (citations omitted); *In re Home & Hearth Plano Parkway, L.P.*, 320 B.R. 596, 610

n.9 (N.D. Tex. Bankr. 2004) ("[U]nder Texas law, there is no implied covenant of good faith and

fair dealing in the lender-borrower relationship, and the Debtor has not pointed to any contractual

language expressly creating one."); *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 116

(Tex. App. 1991) ("We agree that the English rule [that there is no implied covenant of good faith

and fair dealing] continues to apply to commercial contractual relationships, including the lender-

borrower relationship."); *see also FDIC v. Coleman*, 795 S.W.2d 706, 708–09 (Tex.1990) ("The

relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith."); *Fed.

Savs. & Loan Ins. Corp. v. Wilson*, 722 F. Supp. 306, 311 (N.D. Tex. 1989) (holding that a note

and guaranties did not impose on a lender a duty of good faith and fair dealing); *Nautical

Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293, 299 (Tex. App.—Corpus Christi

1990, writ denied) (holding there is no special relationship between lender and guarantor); *Lovell

v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298–303 (Tex. App.—Amarillo 1988, writ denied) (noting

there is no special relationship between mortgagor and mortgagee).

To the extent Plaintiff is relying on Section 1.304 of the Texas Business and Commercial

Code, its cause of action still fails.  Section 1.304 "imposes an obligation of good faith in [the]

performance and enforcement" of commercial contracts.  Importantly, however, Section 1.304

"does not support an independent cause of action for failure to perform in good faith."  Tex. Bus.

& Comm. Code § 1.304 cmt. 1; *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 482 (Tex. Ct.

App. 1989) (explaining that the "failure to act in good faith" under Section 1.304 "does not state

an independent cause of action").  Similarly, the section "does not create a duty where none

previously existed.  Rather, the section means that a failure to perform or enforce, in good faith, a

specific duty or obligation under a contract, constitutes a breach of that contract or makes

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    unavailable under the particular circumstances, a remedial right or power." *Ennis State Bank v.*

2    *Heritage Bank*, No. 10-02-00226-CV, 2004 WL 1109833, at *2 (Tex. App. May 12, 2004).

3        Further, to allege a violation of Section 1.304, "one must first identify the particular

4    provision of the contract that was not enforced in good faith." *Commercial Nat. Bank of Beeville v.*

5    *Batchelor*, 980 S.W.2d 750, 753 (Tex. App. 1998) (citations omitted); *Adolph Coors Co. v.*

6    *Rodriguez*, 780 S.W.2d 477, 482 (Tex. App. 1989), *writ denied* (Nov. 14, 1990).  To the extent

7    that Plaintiff purports to claim that the Radians Defendants' conduct violates the good faith

8    requirement of the Texas Business Code, Plaintiff must allege a specific provision of the Loan

9    Agreement that was performed in bad faith.  Here, Plaintiff fails to allege a violation of Section

10   1.304 because Plaintiff cannot point to any actual term of the Loan Agreement that RWHI

11   purportedly performed in bad faith.  Plaintiff has not claimed that RWHI breached any of the

12   provisions in the Loan Agreement.  Instead, Plaintiff alleges generally that "Radians" sent [the

13   ICPW Entities] a letter declaring [the ICPW Entities] in default and accelerating the loan due to

14   events of default that had occurred.[13]  [Complaint, ¶ 22.]  Plaintiff does not claim that there were

15   no events of default or that Plaintiff was in compliance with all of the terms of the Loan

16   Agreement.  In fact, Plaintiff alleges the opposite—that [the ICPW Entities] were in breach, as the

17   Complaint concedes there were "several defaults under the line," when the Loan Agreement was

18   still with Capital One.  [Complaint, ¶ 19.[14]]  There is no allegation in the Complaint that RWHI

19   failed to act in accordance with any provision in the Loan Agreement.  Thus, based on Plaintiff's

20   pleading alone, the Second Cause of Action must be dismissed.

21        **D.    Plaintiff's Third Claim for Relief for Unjust Enrichment Must Be Dismissed.**

22        Plaintiff's third claim for relief alleges that "Radians'" was unjustly enriched by "using the

23   acceleration clause and sweeping provisions of the Loan Agreement to coerce unreasonable terms

24   and other consideration from ICPW, including a pre-payment fee and the Break-Up fee."

25   [Complaint, ¶¶ 43-44.]  Based on federal bankruptcy law, applicable Texas state law, and

26   ───────────────────────
27   [13] 23 WILLISTON ON CONTRACTS § 63:22 ("As a general principal, there can be no breach of the implied promise
     or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the
     defendant acts in accordance with the express terms of the contract.").

28   [14] *See* Section III.E for further discussion of defaults.

1   Plaintiff's own allegations, Plaintiff's claim for unjust enrichment fails as a matter of law.  This

2   cause of action should be dismissed.

3           At the outset, Plaintiff's unjust enrichment claim is procedurally defective.  Plaintiff's

4   Complaint alleges that "Radians" was unjustly enriched in procuring pre-payment and Break-Up

5   fees. [*See* Complaint, ¶¶ 43-44.]  However, on September 11, 2017, the DIP filed its motion to

6   approve the Bidding Procedures (the "Bidding Procedures Motion") [Childress Decl., Ex. 2 -

7   Bankr. Dkt #10].  Subsequently, on September 25, 2017, the Equity Committee filed an objection

8   to the Bidding Procedures Motion [Childress Decl., Ex. 5 - Bankr. Dkt #68].

9           This Court conducted a hearing on the Bidding Procedures Motion resulting in the entry of

10  an order approving the Bidding Procedures on September 25, 2017 (the "Bidding Procedures

11  Order") [Childress Decl., Ex. 7 - Bankr. Dkt #71].  The Bidding Procedures Order specifically

12  made a finding with regard to the Breakup Fee:

13              The $500,000 break-up fee proposed to be paid to Radians Wareham
                Holding, Inc. ("Purchaser" or "[RWHI]") in the event of a successful
14              overbid (the "Breakup Fee") is reasonable and appropriate under the
                circumstances of these cases, is in the best interests of these bankruptcy
15              estates, and, under the circumstances of these cases, is the best option
                currently available to the Debtors to enable the Debtors to (i) attract and
16              retain the [RWHI's] bid, (ii) establish a bid standard or minimum for other
                bidders to follow, and (iii) attract additional bidders. [RWHI] was not
17              willing to serve as the stalking horse bidder without the payment of the
                $500,000 Breakup Fee.
18

19  [Childress Decl., Ex. 7 - Bankr. Dkt #71.]  The Bidding Procedures Order further provided:

20              If any party other than [RWHI] is deemed by the Bankruptcy Court to be
                the winning bidder at the Auction, or if the Debtors elect to proceed with
21              seeking confirmation of a plan of reorganization instead of proceeding with
                a sale of the Purchased Assets, [RWHI] shall receive payment of the
22              $500,000. Breakup Fee upon the consummation of such Alternative
                Transaction.
23

24  [Childress Decl., Ex. 7 - Bankr. Dkt #71.]  The Equity Committee did not appeal or seek

25  reconsideration of the September 25, 2017 Bidding Procedures Order.  Instead, Plaintiff "objects"

26  to these fees for the first time in its December 5, 2017 adversary complaint.

27          The third claim for relief the in the Complaint, therefore, must be dismissed as

28  procedurally improper.  In order to object to the relief provided in the Bidding Procedure Order,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   the Equity Committee was required to file a notice of appeal "with the bankruptcy clerk within 14

2   days after entry" of the order. Fed. R. Bank. P. 8002(a); *see* 28 U.S.C. § 158(c)(2).  The limitations

3   period of Rule 8002(a) is strictly enforced. *In re Gwen*, No. LA CV15-02111 JAK, 2015 WL

4   6758126, at *4 (C.D. Cal. Nov. 5, 2015).  The Equity Committee failed to file a notice of appeal,

5   and in fact agreed to the Bidding Procedures Order.  Accordingly, the Equity Committee has

6   waived the right to challenge any aspect of the Bidding Procedures Order and cannot now

7   complain that the Bidding Procedures Order unjustly awards RWHI pre-payment and Break-Up

8   fees. *See In re Gwen*, 2015 WL 6758126, at *6 (quoting *Lindsey v. Ipock*, 732 F.2d 619, 622 (8th

9   Cir. 1984) ("Appellants may not now "belate[d]ly attack the bankruptcy order of sale in . . .

10  collateral proceedings; once [Appellants were] apprised of the bankruptcy court's sale order and

11  failed to timely appeal, [they were] obligated to obey these orders even if they were in error."));

12  *see also*, *In re Still*, 573 F. App'x 654, 656 (9th Cir. 2014); *Preblich v. Battley*, 181 F.3d 1048,

13  1056 (9th Cir. 1999).

14          Plaintiff's unjust enrichment claim further fails under Texas substantive law.  "The doctrine

15  of unjust enrichment belongs to the measure of damages known as quasi-contract or restitution."

16  *First Union Nat. Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.

17  2005).  Generally, a claim for unjust enrichment will lie where "one party has obtained a benefit

18  from another by fraud, duress, or the taking of an undue advantage." *Id.*  However, "the doctrine of

19  unjust enrichment does not operate to rescue a party from the consequences of a bad bargain, and

20  the enrichment of one party at the expense of the other is not unjust where it is permissible under

21  the terms of an express contract." *Id.*  Moreover, "unjust enrichment claims based on quasi-

22  contract are predicated on the absence of an express contract controlling the circumstances."

23  *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 740 (Tex. App. 2017), *reh'g overruled*

24  (Aug. 8, 2017).  As such, "when a valid, express contract covers the subject matter of the parties'

25  dispute, there can [typically] be no recovery under a quasi-contract theory" such as unjust

26  enrichment. *Id.*

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1    In the Forbearance and Modification Agreement, the pre-payment fee was included as an

2    express provision agreed to by the ICPW Entities.[15]

3    The Complaint alleges that "Radians'" use of the Loan Agreement's acceleration and

4    sweeping provisions resulted in unjust enrichment to "Radians".  Plaintiff does not allege that the

5    Loan Agreement was breached, and Plaintiff does not attack the validity of any section of the

6    Loan Agreement.  In sum, Plaintiff's unjust enrichment claim is based entirely on RWHI's conduct

7    in performing the terms of the Loan Agreement.  RWHI's allegedly unjust conduct was

8    specifically permissible under the Loan Agreement Section 11.1: Remedies Upon Event of

9    Default:

10    If any Event of Default occurs and is continuing, then Bank may, without
      notice, exercise any one or more of the following rights and remedies, and
11    any other remedies provided in any of the Security Documents, as Bank in
      its sole discretion may deem necessary or appropriate: (a) declare the
12    Indebtedness or any part thereof to be forthwith due and payable,
      whereupon the same will become due and payable without presentment,
13    demand, protest, notice of default, notice of acceleration or of intention to
      accelerate, or other notice of any kind, all of which Borrower hereby
14    expressly waives, anything contained herein to the contrary
      notwithstanding, (b) reduce any claim to judgment, or (c) without notice of
15    default or demand, pursue and enforce any of Bank's rights and remedies
      under the Security Documents, or otherwise provided under or pursuant to
16    any applicable law or agreement; provided, however, if any Event of
      Default specified in Sections 10(g) or (h) shall occur, then the Indebtedness
17    will become due and payable concurrently therewith, and Bank's obligation
      to lend will immediately terminate hereunder, without any further action by
18    Bank and without presentment, demand, protest, notice of default, notice of
      acceleration or of intention to accelerate, or other notice of any kind, all of
19    which Borrower hereby expressly waives.

20    In light of Plaintiff admission in their Complaint that the ICPW Entities committed

21    "several defaults," it follows that RWHI at all times acted permissibly under the terms of the

22    agreed upon Loan Agreement.[16]  Because the valid Loan Agreement covers the subject matter of

23    the present dispute, Plaintiff may not recover unjust enrichment damages.

24

25

26

27    [15] *See* Forbearance and Modification Agreement dated August 1, 2017, [Childress Decl., Ex. 1 - Bankr. Dkt #6, pp.
      136-146]
28    [16] *See* Section III.E for further discussion of defaults.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1      In the end, Plaintiff's cause for unjust enrichment is both procedurally and substantively

2  defective.  This claim should be dismissed for failure to state a viable cause of action without

3  leave to amend.

4      **E.      Plaintiff's Objection to Claim and Fourth Claim for Relief for Avoidance and
          Recovery of Property Transfer Must Be Dismissed.**

5

6      Because all of Plaintiff's claims are legally deficient, Plaintiff is not entitled to have its

7  objection to claim sustained and to avoidance and recovery of property.  *See In re Whitley*, 463

8  B.R. 775, 786 (Bankr. M.D.N.C. 2012) (*citing In re Barnhart*, 2010 WL 724703, at *3 (Bankr.

9  N.D. W. Va. Feb. 26, 2010) (an objection to proof of claim which contains no facts to support

10  disallowance may be dismissed under Rule 12(b)(6)).

11  **IV.    Leave to Amend Is Futile And Should Not Be Granted.**

12      The provisions of the Final DIP Order in paragraph kk do not extend as wide as suggested

13  by Plaintiff.  As noted by Plaintiff in its Complaint, its standing is limited to object to, challenge,

14  or seek to avoid the amount, validity, or enforceability of the Pre-Bankruptcy Secured Debt (or

15  any portion thereof) or any of the liens and security interests created under the Pre-Bankruptcy

16  Secured Debt and to bring any other claim that they have against RWHI, individually or on behalf

17  of the Debtors' Estates.  [*See* Bankr. Dkt #87, ¶kk; Complaint, ¶3.]

18      Plaintiff attempts to couch the Complaint as an objection to the claims which RWHI filed

19  in each of the bankrupcies, but in the Complaint, Plaintiff does not dispute the amount, validity,

20  or enforceability of RWHI's claims.  *See In re QMect, Inc.*, 349 B.R. 620, 625 (Bankr. N.D. Cal.

21  2006) (standing to object to another creditor's claim).  Instead, in the Complaint, Plaintiff

22  impermissibly relies on claims for relief which have already been released by the Debtors.

23      The Court should dismiss the Complaint without leave to amend because any amendment

24  to allege additional claims against the Radian Defendants would be futile.  The deadline to pursue

25  any other claims against the Radians Defendants passed on December 5, 2017 and now is forever

26  barred.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**V.    RWHI Is Entitled to Indemnification for the Cost of Defending this Adversary Proceeding.**

Once the Complaint is dismissed, RWHI will be entitled to recovery under the indemnity clause in Section 6.11 of the Loan Agreement.  In Section 6.11, the ICPW Entities agreed as follows

> to "indemnify, defend, and hold harmless [RWHI] and its directors, officers, agents, attorneys, and employees (individually, an "Indemnitee" and collectively, the "Indemnitees") from and against any and all loss, liability, obligation, damage, penalty, judgment, claim, deficiency, and expense (including interest, penalties, attorneys' fees, and amounts paid in settlement) to which the Indemnitees may become subject arising out of this Agreement and the other Security Documents, other than those which arise by reason of the gross negligence or willful misconduct of [RWHI], BUT SPECIFICALLY INCLUDING ANY LOSS, LIABILITY, OBLIGATION, DAMAGE, PENALTY, JUDGMENT, CLAIM, DEFICIENCY, OR EXPENSE ARISING OUT OF THE SOLE OR CONCURRENT NEGLIGENCE OF [RWHI]. …The provisions of and undertakings and indemnifications set forth in this Section 6.11 shall survive (a) the satisfaction and payment of the Indebtedness and termination of this Agreement, and (b) the Release of any Liens held by [RWHI] on real property or the extinguishment of such Liens by foreclosure or action in lieu thereof.

[Childress Decl., Ex. 1 - Bankr. Dkt #6, Exh. 1, Section 6.11.]

RWHI's rights and remedies under the pre-petition Loan Documents and the DIP Agreement were specifically preserved in this Court's order approving the sale of assets.

[Childress Decl., Ex. 9 - Bankr. Dkt # 177, ¶11].  The sale order further provides:

> Until such time that the deadline for any claims to be asserted against Radians set forth in the Final DIP Order passes with no such claims asserted, or claims are asserted and are resolved to final order of the Court, [RWHI] valid and perfected Encumbrances in the Purchased Assets for any additional fees and expenses as referenced above shall attach to the net Purchase Price proceeds attributable to the Purchased Assets immediately upon receipt of such Purchase Price proceeds by the Debtors in the same order of priority, and with the same validity, force and effect, which such Encumbrances had against such Purchased Assets as of the filing of the Bankruptcy Cases, subject to any rights, claims and defenses the Debtors and their estates and/or the OCEH and OCUC may possess with respect thereto.

[emphasis added].

Plaintiff now seeks damages for duress, breach of the covenant of good faith and fair dealing, and unjust enrichment.  While RWHI disputes any liability, Plaintiff clearly has not

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   asserted a claim for gross negligence or willful misconduct by RWHI.  Therefore, the actions

2   which Plaintiff alleges in the Complaint remain subject to indemnification, and RWHI will be

3   entitled to an award of its fees and expenses.

4     RWHI remains entitled to assert an amended secured claim against the net Purchase Price

5   to recoup any loss, liability, obligation, damage, penalty, judgment, claim, deficiency, and expense

6   (including interest, penalties, attorneys' fees, and amounts paid in settlement) from the ICPW

7   Entities and/or the bankruptcy estates under Section 6.11 of the Loan Agreement.

8    Furthermore, as provided in the Court approved DIP Agreement, the ICPW
    Entities "acknowledge[d] and agree[d] that Borrowers are indebted to

9    Lender for repayment of the Obligations evidenced by the Revolving Loan,
    including all accrued interest thereon. Borrowers further acknowledge[d]

10    that they are responsible for all fees, expenses and charges as allowed under
    the Pre-Petition Loan Documents.

11

12   [*See* Childress Decl., Ex. 1 - Bankr. Dkt #6, Exh. 7, Section 5.2.]  The pre-petition Loan

13   Agreement provided that the ICPW Entities would pay reasonable attorneys' fees and costs

14   incurred by RWHI in collecting or attempting to collect the revolving line of credit, together with

15   any renewals, extensions, or modifications thereof, whether by suit or otherwise.  [*See* Childress

16   Decl., Ex. 1 - Bankr. Dkt #6, Exh. 2, ¶8.]  Therefore, RWHI will be entitled to amend its proof of

17   claim to include any additional fees, expenses or other charges incurred in defending this action.

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1

### CONCLUSION

2       The Complaint should be dismissed because (1) Plaintiff lacks standing to pursue the

3   claims asserted in the adversary complaint, (2) to the extent Plaintiff has standing, the claims

4   asserted were released by Debtors both pre-petition and post-petition, (3) the allegations in the

5   Complaint fail to state a claim for (a) duress, (b) breach of the covenant of good faith and fair

6   dealing and (c) unjust enrichment, and (d) Plaintiff fails to assert a viable claim which would

7   entitle it to avoidance and recovery of property.  Finally, RWHI is entitled to amend its proof of

8   claim to include any additional fees, expenses and other charges incurred in defending this action.

9   Dated:  January 5, 2018                    BRYAN CAVE LLP

10

11                                             By: _/s/Sharon Z. Weiss_____
                                               Sharon Z. Weiss
12                                             Attorneys for Radians Wareham Holding, Inc.,
                                               Radians, Inc. and Safety Supply Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Bryan Cave LLP, 120 Broadway, Suite 300, Santa Monica, CA 90401-2386.

A true and correct copy of the foregoing document entitled: **DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS: (1) OBJECTION TO CLAIM NO. 20-1 IN CASE 1:17-BK-12408-MB AND CLAIM NO. 7-1 IN CASE 1:17-BK-12409-MB PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007;**

**COMPLAINT FOR: (2) DURESS; (3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; (3) UNJUST ENRICHMENT; AND (4) AVOIDANCE AND RECOVERY OF PROPERTY OF THE ESTATE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 5, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Ron Bender - rb@lnbyb.com

Cathrine M. Castaldi - ccastaldi@brownrudnick.com

Monica Y. Kim - myk@lnbrb.com, myk@ecf.inforuptcy.com

Samuel R. Maizel - samuel.maizel@dentons.com

Krikor J. Meshefejian - kjm@lnbrb.com

Tania M Moyron - tania.moyron@dentons.com, chris.omeara@dentons.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On January 5, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA  91367

☒ Service information continued on attached page

**3.  SERVED BY EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 01/05/2018 | Geri Anderson | /s/ Geri Anderson |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY U.S. MAIL**:

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA  90017

Dentons US LLP
Attn: Samuel Maizel & Tania Moyron
601 South Figueroa St., Suite 2500
Los Angeles, CA  90017-5704

Brown Rudnick LLP
Attn: Cathrine M. Castaldi
2211 Michelson Dr., 7th Fl.
Irvine, CA  92612

Ron Bender
Monica Y. Kim
Krikor J. Meshefejian
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.