SAMUEL R. MAIZEL (SBN 189301 )
   samuel.maizel@dentons.com
TANIA M. MOYRON (SBN 235736)
   tania.moyron@dentons.com
ARTHUR H. RUEGGER (NY Bar No. 1242031)
   arthur.ruegger@dentons.com (admitted *pro hac vice*)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5705
Telephone: (213) 623-9300; Facsimile: (213) 623-9924
Attorneys for the Official Committee of Equity Holders

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY

| | |
|---|---|
| In re:<br><br>ICPW LIQUIDATION CORPORATION, a California corporation,[1]<br><br>    _____ Debtor and Debtor in Possession. _____<br><br>In re:<br><br>ICPW LIQUIDATION CORPORATION, a Nevada corporation,[2]<br><br>    _____ Debtor and Debtor in Possession. _____<br><br>  Affects:<br><br>☒ Both Debtors<br><br>☐ ICPW Liquidation Corporation, a California corporation<br><br>☐ ICPW Liquidation Corporation, a Nevada corporation.<br><br>OFFICIAL COMMITTEE OF EQUITY HOLDERS of ICPW LIQUIDATION CORPORATION, a California corporation and of ICPW LIQUIDATION CORPORATION, a Nevada corporation,<br><br>        Objector and Plaintiff,<br>  - against -<br><br>RADIANS WAREHAM HOLDING, INC., RADIANS, INC. and SAFETY SUPPLY CORPORATION,<br><br>    Claimant and Defendants. | Lead Case No.: 1:17-bk-12408-MB<br>Jointly administered with:<br>1:17-bk-12409-MB<br><br>CHAPTER 11 Cases<br><br>Adv. Proc. No. 1:17-ap-01101-MB<br><br>**PLAINTIFF OFFICIAL COMMITTEE OF EQUITY HOLDERS OPPOSITION TO DEFENDANTS, RADIANS WAREHAM HOLDING, INC., ET AL., MOTION TO DISMISS (DKT. 5) (A) OBJECTION TO CLAIM NO. 20-1 IN CASE 1:17-BK-12408-MB AND CLAIM NO. 7-1 IN CASE 1:17-BK-12409-MB AND (B) COMPLAINT**<br><br>**Hearing:**<br>Date:  February 12, 2018<br>Time:  2:30 p.m.<br>Place: Courtroom "303"<br>       21041 Burbank Blvd.<br>       Woodland Hills, CA |

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

# TABLE OF CONTENTS

Page(s)

Preliminary Statement ............................................................................................................. 1

I.    FACTUAL ALLEGATIONS........................................................................................ 2

    A.    For Years, Radians Attempted Without Success To Acquire ICPW .................. 2

    B.    To Acquire ICPW, Radians Acquires Capital One's Secured Loan ...................... 3

II.    PROCEDURAL BACKGROUND ............................................................................. 6

III.    ARGUMENT ............................................................................................................. 7

Standards of Review ................................................................................................................ 7

POINT I.    THE COMPLAINT STATES A VALID CLAIM FOR DURESS........................ 7

POINT II.    THE COMPLAINT STATES A VALID CLAIM FOR BREACH OF THE
DUTY OF GOOD FAITH AND FAIR DEALING................................................. 13

POINT III.    THE UNJUST ENRICHMENT CLAIM IS VALID ................................................. 14

POINT IV.    FOR MULTIPLE REASONS, THE RELEASES CITED BY RADIANS
BAR NEITHER THE OBJECTION NOR THE COMMITTEE'S CAUSES
OF ACTION .............................................................................................................. 14

    A.    Radians Arguments Based on the Debtors' Releases Are a Collateral Attack
on the Final DIP Order ......................................................................................... 15

    B.    Relevant Precedent Is Contrary to Radians' Release Arguments......................... 16

    C.    Assuming *Arguendo* the Releases Are Not Unenforceable As a Matter of
Law, The Releases Should Be Voided Due to Radians' Coercion and
Duress, Or Avoided as Fraudulent Transfers Under 11 U.S.C. §
548(a)(1)(B)(ii)(II). ............................................................................................. 18

    D.    Assuming *Arguendo* the Releases Are Not Void or Avoided Under the
Above Principles, The Estate's Claims Survive as Having Accrued After
The Prepetition Releases. ...................................................................................... 19

POINT V.    THE COMMITTEE HAS STANDING TO BRING CLAIMS ON
BEHALF OF THE ESTATE .................................................................................... 20

POINT VI.    RADIANS' REMAINING ARGUMENTS SHOULD BE DENIED .................... 21

IV.    CONCLUSION.......................................................................................................... 22

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Communications Corp. v. Bank of America (In re Adelphia
    Communications Corp.),*
    330 B.R. 364 (Bankr. S.D.N.Y. 2005) ...................................................................18

*American Bank of Waco v. Waco Automotive,*
    818 S.W.2d 163 (Tex. Ct. App. 1991) ...................................................9, 10, 13

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ......................................7

*In re Atrium High Point Ltd. Partnership,*
    189 B.R. 599 (Bankr. M.D. N.C. 1995) ..............................................................17

*Bank of China v. Huang (In re Huang),*
    275 F.3d 1173 (9th Cir. 2002) ............................................................................17

*BBC Merchant Solutions, Inc. v. Jet Pay, LLC,*
    129 F. Supp. 3d 440 (N.D. Tex. 2015) ...............................................................20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) .....................................7

*Bischoff v. Rearick,*
    232 S.W.2d 174 (Tex. Civ. App. 1950) ..............................................................11

*Brown v. AVEMCO Inv. Corp.,*
    603 F.2d 1367 (9th Cir. 1979).............................................................1, 9, 10, 13

*Carroll v. Timmers Chevrolet, Inc.,*
    592 S.W.2d 922 (Tex. 1979)...............................................................................8

*In re Catwil Corp.,*
    175 B.R. 362 (Bankr. E.D. Cal. 1994) ...............................................................20

*Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),*
    671 F.3d 1011 (9th Cir. 2012).............................................................................17

*Deer Creek Ltd. v. N. Am. Mortg. Co.,*
    792 S.W.2d 198 (Tex. Ct. App. 1990) .................................................................8

*First Union Nat. Bank v. Richmont Capital Partners I, L.P.,*
    168 S.W.3d 917 (Tex. App. 2005) ......................................................................14

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Hayhoe v. Cole (In re Cole)*,
    226 B.R. 647 (B.A.P. 9th Cir. 1998)..................................................................17

*In re Intervention Energy Holdings*,
    553 B.R. 258 (Bankr. D. Del. 2016) ...............................................................17

*In re Jeff Benfield Nursery, Inc.*,
    565 B.R. 603 (Bankr. W.D. N.C. 2017).......................................................17, 18

*K.M.C. Co. v. Irving Trust Co.*,
    757 F.2d 752 (6th Cir.1985).............................................................................11

*Mendiondo v. Centinela Hosp. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)............................................................................7

*Minnesota Corn Processors, Inc. v. American Sweeteners, Inc.*
    *(In re American Sweeteners, Inc.)* 248 B.R. 271 (Bankr. E.D. Pa. 2000)..................17

*Mitchell v. C.C. Sanitation Co.*,
    430 S.W.2d 933 (Tex. Civ. App. 1968, writ refused NRE (Nov. 13, 1968)) ...........18

*In re Pease*,
    195 B.R. 431 (Bankr. D. Neb. 1996) .............................................................17

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014)..............................................................................7

*Rich & Willock, Inc. v. Ashton Development, Inc.*,
    157 Cal. App. 3d 1154, 204 Cal. Rptr. 86 (Ct. App. 1984) .............................11, 13

*In re South East Financial Assocs., Inc.*,
    212 B.R. 1003 (Bankr. M.D. Fla. 1997) .......................................................17, 18

*In re Spaulding Composites Co.*,
    207 B.R. 899 (B.A.P. 9th Cir. 1997).................................................................20

*State National Bank of El Paso v. Farah Manufacturing Co.*,
    678 S.W.2d 661 (Tex. Ct. App. 1984) ........................................................ *passim*

*Stevens v. Lowder*,
    643 F.2d 1078 (5th Cir. 1981).........................................................................20

*Telltabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) .....................................7

*Texas Valla Real Estate I, Inc. v. City of Houston*,
    No. 14-10-00486-CV, 2011 WL 4449652 (Tex. App. Sept. 27, 2011) ....................20

*In re Tru Block Concrete Prods., Inc.*,
    27 B.R. 486 (Bankr. S.D. Cal. 1982) .............................................................17

- iii -

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

106358826\V-1

*Vaughan v. Crown Plumbing & Sewer Serv., Inc.*,
  523 S.W.2d 72 (Tex. Civ. App. 1975) ............................................................................... 11, 12

**Statutes**

11 United States Code
  § 105 ........................................................................................................................................ 6
  § 361 ........................................................................................................................................ 6
  § 362 ........................................................................................................................................ 6
  § 363 ........................................................................................................................................ 6
  § 364 ........................................................................................................................................ 6
  § 548(a)(1)(B)(ii)(II) ...................................................................................................... 18, 19

Texas Business and Commerce Code
  § 1-304 .............................................................................................................................. 13, 14
  § 1-309 .............................................................................................................................. 10, 13

Texas Civil Practice and Remedies Code Annotated
  § 33.0139(a)-(b) ...................................................................................................................... 8

Uniform Commercial Code
  § 1-203 .................................................................................................................................... 9

United States Bankruptcy Code
  Chapter 11 .......................................................................................................................... 5, 6

**Rules and Regulations**

Federal Rules of Bankruptcy Procedure
  Rule 7012 ............................................................................................................................... 7
  Rule 7015 ............................................................................................................................. 21

Federal Rules of Civil Procedure
  Rule 8(c)(1) .......................................................................................................................... 19
  Rule 12(b)(6) ........................................................................................................................ 7
  Rule 15(a)(2) ....................................................................................................................... 21

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

106358826\V-1

1    The Official Committee of Equity Holders (the "Committee", "Objector" or "Plaintiff") of

2    ICPW Liquidation Corporation (f/k/a Ironclad Performance Wear Corporation), a Nevada

3    corporation ("ICPW NV"), individually and on behalf of the estates of ICPW NV and ICPW

4    Liquidation Corporation (f/k/a Ironclad Performance Wear Corporation), a California corporation

5    ("ICPW CA", and together with ICPW NV "ICPW") by its undersigned counsel, as and for its

6    Opposition to the Defendants' Motion to Dismiss (the "Motion") and Memorandum of Law in

7    Support of Defendants' Motion to Dismiss the Committee's Objection to the Claim of Radians

8    Wareham Holding, Inc. in each of the above-captioned cases (Claim No. 20-1 in case 1:17-bk-

9    12408-MB, and Claim No. 7-1 in case 1:17-bk-12409-MB) and the Committee's Complaint, filed

10   December 5, 2017 (the "Complaint") against Defendants Radians Wareham Holding, Inc.,

11   Radians, Inc. and Safety Supply Corporation ("Defendants" or collectively, "Radians") filed

12   January 5, 2018 (Docket No. 5; "Radians Mem."), together with Defendants' other accompanying

13   pleadings, states as follows:

### Preliminary Statement

15   The Defendants raise a number of challenges to the Committee's Objection and

16   Complaint. As shown in more detail below, each of their challenges is deficient.

17   <u>Duress claim</u>. Defendants attacks on the Complaint's duress claim -- the principal attack

18   being Defendants' actions were permitted under the loan agreements -- have all been rejected by

19   controlling precedent, including *State National Bank of El Paso v. Farah Manufacturing Co.*, 678

20   S.W.2d 661 (Tex. Ct. App. 1984) (notwithstanding contractual authorization, duress claim can be

21   actionable based on the purpose, motive and manner of lender's actions).

22   <u>Good Faith & Fair Dealing</u>. Contrary to Defendants' challenge to the Committee's good

23   faith and fair dealing claim, well-settled Texas and Ninth Circuit precedent impose a duty of good

24   faith on lenders exercising acceleration and similar rights. *Brown v. AVEMCO Inv. Corp.*, 603

25   F.2d 1367, 1376 (9th Cir. 1979) (Texas law).

26   <u>Releases</u>. Defendants argue prepetition and post-petition releases bar all of the

27   Committee's claims (Radians Mem. at pp. 3-8). Defendants' contentions are without merit

28   because, among other reasons:

- 1 -

- The Court authorized the Committee to bring these claims in the Final DIP Order;

- Under the relevant precedent, the releases are not binding on the Committee;

- The releases are voidable under relevant state law due to Radians' coercion and duress, and avoidable under the Bankruptcy Code as fraudulent transfers; and

- The Committee's claims post-date the releases.

Committee Standing.    Contrary to Defendants' challenge, it is well settled an official committee (*e.g.*, the Committee here), with court approval has standing to bring claims on behalf of the debtors' estates.

Defendants remaining arguments for dismissal or other relief are equally meritless, as shown below.  The Motion should be denied in its entirety.

# I.    FACTUAL ALLEGATIONS

## A.    For Years, Radians Attempted Without Success To Acquire ICPW

1.    Founded in 1998, ICPW was a developer and manufacturer of high-performance task-specific gloves for a variety of end markets.  By 2017, ICPW offered over 160 different types of gloves, including industrial, mechanics, sporting and first responder uses.  The stock of ICPW NV was publicly traded, with approximately 85 million shares of common stock issued and outstanding.  At that time, ICPW's only structured debt was through a revolving credit line from Capital One, N.A. ("Capital One"), governed by a Revolving Loan and Security Agreement, first entered as of November 28, 2014 (as later amended, the "Loan Agreement"), and secured by ICPW's assets and property.  The Loan Agreement provided it was to be governed by the laws of the State of Texas (Section 13.6).  As of March 31, 2017, the balance ICPW owed Capital One under that line was $4,484,446.00. ICPW's main offices were in Farmers Branch, Texas. (Complaint ¶¶ 10 - 11)

2.    Radians, Inc. was founded in 1997 and, along with its parent Safety Supply Corporation and affiliate Radians Wareham Holding, Inc. (as defined above, collectively "Radians"), is a manufacturer of safety equipment and apparel, including eyewear, high-visibility apparel and high performance gloves, making Radians a competitor of ICPW.  Radians is headquartered in Memphis, Tennessee and is privately held.  For approximately the last ten years,

- 2 -

1   Radians has made no secret of its interest in acquiring ICPW itself or all or its glove brands.

2   ICPW, however, did not reciprocate that interest.   Over the following years, Radians has not

3   given up, and has communicated its interest in a combination to ICPW several times, only to be

4   rebuffed each time by ICPW (Complaint ¶¶ 12, 14).

5           3.      In May 2017, Radians decided to offer ICPW's shareholders twenty-seven and a

6   half cents (27.5¢) per share to acquire the entire ICPW company, but was rebuffed again by

7   several ICPW shareholders.   Frustrated, in late June, 2017 Radians, through Safety Supply

8   Corporation, prepared to go public with the offer.   At that point, however, ICPW was facing other

9   problems.   After receiving anonymous reports in late Spring, 2017, ICPW's board had authorized

10  an investigation into (the results of which confirmed) accounting irregularities directed by

11  ICPW's CEO and CFO, among others, which irregularities had resulted in certain revenue figures

12  being inflated in ICPW's financial statements.   On or about July 6, 2017, ICPW filed a Form 8-K

13  Report, dated June 29, 2017, disclosing the discovery of the irregularities, the termination of the

14  employment of ICPW's CEO and CFO, and the appointment of new individuals to those positions

15  (Complaint ¶¶ 15 - 16).

16          4.      None of this discouraged Radians, however.   Indeed, four days later on July 10,

17  2017, Radians CEO Mike Tutor wrote ICPW's Chairman Vane Clayton, stating Radians did not

18  want to wait for the financial reports to be restated, and stated Radians was willing to consider

19  increasing its 27.5¢/share offer if that would facilitate an agreement as to the acquisition

20  (Complaint ¶ 17 ).

21          **B.      To Acquire ICPW, Radians Acquires Capital One's Secured Loan**

22          5.      In July, 2017, Radians discovered a new approach to acquiring ICPW.   Prior to

23  ICPW's public disclosure of the financial misstatements and dismissal of top management,

24  Radians learned that ICPW's bank, Capital One, might be interested in selling its secured loan.

25  Following up on that information, on or about July 7, 2017, Radians contacted Capital One to

26  express an interest in purchasing the Ironclad loan.   Capital One's relationship with ICPW had

27  been, at least up to that point, a good one, but for various reasons, over the prior months ICPW's

28  business had struggled, resulting in several non-monetary defaults under the line with Capital

- 3 -

1    One.  Faced with these defaults, Capital One had uniformly responded as a responsible bank.

2    Specifically, in or about November, 2016, February, 2017 and April, 2017, ICPW notified Capital

3    One that ICPW expected to miss the Debt Service Coverage Ratio covenant (the "DSCR

4    Covenant") under the Loan Agreement.  In each instance, Capital One agreed to waive the default

5    and modify the Loan Agreement.  Indeed, in the last instance on April 11, 2017, Capital One

6    agreed to replace the DSCR Covenant, and in May, 2017 extended the loan maturity date to July,

7    2018.  Thus, Capital One had demonstrated, and ICPW had come to expect, Capital One was

8    willing to work with ICPW through operating or financial difficulties (Complaint ¶¶ 18 - 19).

9         6.    Unknown to ICPW's Board of Directors, however, on July 8, 2017, Radians and

10   Capital One began discussing the sale of ICPW's loan to Radians, and within four days had

11   reached an agreement so that drafting started on the sale agreement.  None of the Radians entities

12   or their managers had ever before acted as a commercial lender, but Radians did not plan on

13   being a commercial lender for long.  In fact, the timing could not have been better from Radians'

14   perspective:  the misstatements in ICPW's public financial statements could present grounds for a

15   default under the Loan Agreement;  a default could open a path to seize ICPW's assets for less

16   than the price offered days before, and that seizure would at the same time eliminate a competitor.

17   That opportunity led Radians to care little about the uncertainties presented by the misstatements

18   in Ironclad's financial statements.  Not surprisingly, Radians expressly waived any recourse

19   against and related representations from Capital One on any aspect of the ICPW loan (Complaint

20   ¶¶ 20 - 21).

21        7.    On July 25, 2017, Radians Wareham Holding, Inc. purchased the ICPW loan from

22   Capital One at par value, with Radians, Inc. wiring to Capital One an amount equivalent to the

23   outstanding balance under the loan.  The next day, July 26, 2017, in pursuit of its predatory

24   behavior, counsel to Radians sent ICPW a letter declaring ICPW in default under the loan due to

25   the previously disclosed misstated financial reports, accelerating the loan and demanding

26   immediate payment in full of the $3,688.195.22 outstanding balance.  Radians knew ICPW had

27   no means by which to pay the loan, as ICPW's last public financial statements showed a cash

28   balance under $300,000.00 (Complaint ¶¶ 21 - 22).

- 4 -

8.    Over the next four weeks, ICPW tried to negotiate with Radians to allow ICPW to continue operations and to try to refinance the loan, but Radians did not allow that to happen. Two one-week forbearances -- one signed August 1st, the other signed August 14th -- were all that Radians was willing to extend.  This was despite the fact that ICPW told Radians ICPW needed, at a minimum, 2 to 3 weeks to arrange refinancing.  At the time, ICPW was in negotiations with a number of prospective lenders (both to replace and to supplement the existing Radians' debt).  Finally, on August 24, 2017, Radians started sweeping all the cash in ICPW's bank accounts.  Radians knew this cash-sweeping would shut down ICPW, because ICPW could not operate without the cash Radians was taking.  The cash sweep was intended to force ICPW to shut down, to file a bankruptcy and turn over its assets to Radians.  Radians' actions in accelerating the loan, agreeing only to unworkable one-week forbearances and sweeping ICPW's bank accounts, were strictly for Radians' own commercial advantage as a buyer of the business. Radians' actions were predatory, unjust, oppressive and in bad faith (Complaint ¶¶ 23 - 25).

9.    Left with no funds to operate and no other alternative, ICPW advised Radians that ICPW intended to file for bankruptcy protection.  As part of that process, ICPW negotiated with Radians agreements to auction ICPW's assets wherein Radians was the stalking horse bidder in bankruptcy (Complaint ¶ 26).

10.    ICPW CA and ICPW NV filed for protection under chapter 11 of the United States Bankruptcy Code on September 8, 2017.  Per order of the Bankruptcy Court, ICPW's assets were sold at auction on October 30, 2017, for approximately $25.25 million.  Radians was not the winning bidder.  Indeed, Radians did not increase its bid over the stalking horse bid, preferring to walk away with its Break-up Fee.  As part of the sale following the auction, the Ironclad name was property of the winning bidder, and the Debtors' names were changed to ICPW Liquidation Corporation(s) (Complaint ¶ 27)

11.    Radians' actions have damaged the estates of ICPW CA and ICPW NV and the shareholders of ICPW NV.  In addition, Radians' action have damaged the estates and the Committee at least to the extent the estates and the Committee has been obliged to incur the time and expense of this litigation.  Had Radians not acted in the above improper manner, the ICPW

- 5 -

1    entities would not have been forced into bankruptcy and would have been able to negotiate a

2    refinancing of the Radians debt or a sale of ICPW's assets on terms more favorable than those

3    realized in the bankruptcy auction.

4    **II.    PROCEDURAL BACKGROUND**

5        12.    As noted above, on September 8, 2017, ICPW CA and ICPW NV (together,

6    "ICPW" or the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United

7    States Bankruptcy Code in the United States Bankruptcy Court for the Central District of

8    California, San Fernando Valley Division (the "Bankruptcy Court") (Lead Case No.: 1:17-bk-

9    12408-MB and 1:17-bk-12409-MB).

10        13.    Objector Committee is an official committee appointed on September 20, 2017 by

11    a *Notice of Appointment of Official Committee of Equity Holders*, filed in the Bankruptcy Court

12    by the Office of the United States Trustee for the Central District of California.    There are

13    currently three members of the Committee.

14        14.    Pursuant to the *Final Order: (I) Authorizing The Debtors To (A) Obtain*

15    *Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 And 364, And (B) Utilize Cash*

16    *Collateral Pursuant To 11 U.S.C §§ 361, 362, 363 And 364; (Ii) Granting Adequate Protection*

17    *Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; And (Iii) Granting Related Relief*, entered

18    October 6, 2017 (Docket No. 87, the "Final DIP Order") para. kk, Committee has standing

19    individually and on behalf of the Debtors' estates to, among other matters:

20            object to, challenge, or seek to avoid the amount, validity, or
            enforceability of the Pre-Bankruptcy Secured Debt (or any portion
21            thereof) or any of the liens and security interests created under the
            Pre-Bankruptcy Secured Debt and to bring any other claim that
22            they have against Radians [Wareham Holding, Inc.] individually or
            on behalf of the Debtors' Estates [. . . .]
23

24        15.    On October 20, 2017, Radians Wareham Holding, Inc. filed identical proofs of

25    claim in each of the two Debtor cases (Claim No. 20-1 in case 1:17-bk-12408-MB, and Claim No.

26    7-1 in case 1:17-bk-12409-MB, the "Claim").    The Claim sought $3,464,093.28, composed of

27    $3,410,217.39 in principal; $15,481.89 in interest; and $38,394.00 in legal fees.    Pursuant to

28    orders approving certain bidding procedures and the sale of the Debtors assets (Docket Nos. 71

- 6 -

and 177), Radians Wareham Holding, Inc. was paid $5,343,988.19 (including a break-up fee in the amount of $500,000 (the "Break-up Fee") upon the closing of the Debtors sale as set forth in that *Statement of Sale Closing* (Docket No. 237)

## III.

## ARGUMENT

### Standards of Review

16.    As the standards governing motions under Federal Rule of Civil Procedure 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012) are well known and not disputed here, only a brief summary is warranted.    The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.,* 768 F.3d 938, 945 (9th Cir. 2014).    Further, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Telltabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).    Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).    The motion should be denied if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

## POINT I.

### THE COMPLAINT STATES A VALID CLAIM FOR DURESS

17.    Radians' attack on the Committee's first cause of action,[3] for duress, starts with

---

[3]    As Radians' arguments related to the releases and standing pertain, at best, to only a portion of the Committee's claims and Objection, those arguments are discussed below.

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
106358826\V-1

1    quotes from the Complaint and from the leading case in this area of Texas law, *State National*

2    *Bank of El Paso v. Farah Manufacturing Co.,* 678 S.W.2d 661 (Tex. Ct. App. 1984) (*see* Radians

3    Mem. at pp. 11 - 14).  Before addressing the duress claim itself, however, Radians argues that two

4    of the defendants, Safety Supply Corporation and Radians, Inc., should be dismissed from the

5    case because it was Defendant Radians Wareham Holding, Inc. that purchased the loan from

6    Capital One, accelerated the loan and undertook whatever other actions are allegedly improper

7    (Radians Mem. at p. 14).

8         18.    These arguments by Radians are misleading, because not all the relevant actions

9    were undertaken by Radians Wareham Holding, Inc.   For example, it was Safety Supply

10   Corporation that prepared to make a public announcement in June 2017 of the offer to buy all of

11   ICPW NV shares at 27.5 cents/share (Complaint ¶ 15).  Similarly, Radians, Inc. was the entity

12   that wired the funds to purchase the Capital One loan (Complaint ¶ 21).  All defendants acted

13   together related to ICPW, for the benefit of common ownership and under the orders of common

14   management (Complaint ¶ 13).   All the defendants should answer for their coordinated

15   misconduct, either as co-conspirators[4] or for the percentage of responsibility attributed to their

16   respective conduct with respect to each cause of action.[5]

17        19.    As to the substance of the duress claim, Radians makes essentially three

18   arguments: one, that Radians had the legal right to threaten, or do, everything complained of

19   (Radians Mem. at pp. 14 - 18); two, that Radians was not responsible for ICPW's financial

20   distress, as required under *Deer Creek Ltd. v. N. Am. Mortg. Co.,* 792 S.W.2d 198 (Tex. Ct. App.

21   1990) (Radians Mem. at pp. 13, 18-19); and three, that ICPW had a means of protection against

22   Radians (Radians Mem. at p. 19).[6]  Each of these points is without merit.

23        20.    The starting point for understanding the duties Radians faced under Texas law as a

24   _____

25   [4]       A civil conspiracy imposes joint and several liability on each conspirator for the actual damages resulting
from that conspiracy, *Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 925 (Tex. 1979).

26   [5]       Tex. Civ. Prac. & Rem. Code Ann. § 33.0139(a)-(b).
     [6]       Radians also argues (Radians Mem. at p. 19) that ICPW cannot show the "fifth" point from *Farah*: "[w]here
27   a demand made is wrongful or unlawful, and it is necessary for the party making such demand to resort to the courts
to enforce same, there is no duress, . . . ." As Radians argues related to the "fourth" point from *Farah* the ICPW had
28   a means of protection in the bankruptcy court, this "fifth" point is duplicative here of that fourth point and needs no
separate analysis.

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
106358826\V-1

lender with security rights such as acceleration and cash-sweeping (or "blocked accounts") was summarized by the Ninth Circuit in *Brown v. AVEMCO Investment Corp.*, 603 F.2d 1367 (9th Cir. 1979):

> Acceleration clauses are designed to protect the creditor from actions by the debtor which jeopardize or impair the creditor's security. They are not to be used offensively, e.g., for the commercial advantage of the creditor. Acceleration is a harsh remedy with draconian consequences for the debtor. Acceleration is a matter of equity and the courts, including those of Texas, have historically been careful to evaluate the fairness of acceleration in the particular facts of a case. As the Texas Court of Civil Appeals stated in *Parker v. Mazur*, 13 S.W.2d 174, 175 (Tex. Civ. App. 1928), courts of equity "will scan very closely the enforcement of so hard and rigorous a contract."

> In performing their equitable duties, Texas court have long required that acceleration be reasonable in light of the facts. . . . They would not permit enforcement of acceleration clauses when the debtor's default was due to the debtor's accident or mistake or to the creditor's own fraudulent or inequitable conduct. . . . Nor would they permit acceleration when the facts made its use unjust or oppressive. . . .

> The provisions of the U.C.C. impose similar requirements on acceleration in the transactions it governs. The U.C.C. requirements are harmonious with the older equitable tests of reasonableness. Section 1-203 of the U.C.C. imposes an obligation of good faith on the performance or enforcement of every contract or duty within the Code. Section 1-208 further defines and applies the good faith obligation to options to accelerate at will and requires that the accelerating party "in good faith believes that the prospect of payment or performance is impaired."

*Brown v. AVEMCO Inv. Corp.*, 603 F.2d at 1376 (citations omitted) ("the creditor accelerated not out of a reasonable fear of security impairment but rather from an inequitable desire to take advantage of a technical default," 603 F.2d at 1379); *see also American Bank of Waco v. Waco Automotive*, 818 S.W.2d 163, 172 (Tex. Ct. App. 1991).

21.    The U.C.C. provision referenced in *Brown* above is now found in Section 1-309, "Option to Accelerate at Will", of the Texas Business and Commerce Code, and provides in pertinent part:

> A term providing that one party or that party's successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or when the party "deems itself insecure," or words of similar import, means that the party has power to do so only if that party in

- 9 -

good faith believes that the prospect of payment or performance is impaired. . . . .

22.    As the *Brown* court noted, the good faith and other obligations imposed by the U.C.C. are simply the statutory application of longstanding equitable principles of good faith to acceleration clauses, 603 F.2d at 1376.

23.    Building on *Brown v. AVEMCO*, the U.C.C. provision on good faith, and other Texas authority, the court in *Farah* faced the situation where the lender used a "management change" clause to threaten to declare a default and terminate the loan, bankrupting the debtor, if the debtor allowed a former officer to return to management, 678 S.W.2d at 681. The *Farah* court made a number of observations, including:

> Even where an insecurity clause is drafted in the broadest possible terms, the primary question is whether the creditor's attempt to accelerate stemmed from a reasonable, good-faith belief that its security was about to become impaired. . . . Acceleration clauses are not to be used offensively such as for commercial advantage of the creditor. They do not permit acceleration when the facts make it unjust or oppressive.
>         . . .
>         . . . Duress may be evidenced when a threatening party acts oppressively to further his own economic interests. . . .
> **The question of duress frequently turns on the motive upon which a claim is based.** . . .
> Economic duress (business coercion) may be evidenced by forcing victim to choose between distasteful and costly situations, i.e., bow to duress or face bankruptcy, loss of credit rating, or loss of profits from a venture. . . .
> 678 S.W.2d at 685 and 686 (citations omitted; emphasis added).

24.    Other cases reflect similar views. *See, e.g., American Bank of Waco,* 818 S.W.2d at 170 - 173 (bank did not act in good faith when bank accelerated note two weeks after renewal when debtor was in no worse financial shape); *Vaughan v. Crown Plumbing & Sewer Serv., Inc.,* 523 S.W.2d 72, 76 (Tex. Civ. App. 1975) (evidence that "[note]holder has exercised the optional right of acceleration, not for the purpose of protecting his debt or preserving the security, but for the purpose or coercing the maker to pay the entire debt or forfeit his property, is relevant to these equitable considerations"); *Bischoff v. Rearick,* 232 S.W.2d 174, 176 (Tex. Civ. App. 1950) (acceleration clause may not be used unjustly or oppressively); *see also K.M.C. Co. v. Irving*

- 10 -

*Trust Co.,* 757 F.2d 752, 759 - 761 (6th Cir.1985) (under New York law, where line of credit agreement included "blocked account" mechanism giving lender access to all borrower's deposits, failure to advance additional funds without giving borrower time to refinance with another lender was not in good faith); *Rich & Willock, Inc. v. Ashton Development, Inc.,* 157 Cal. App. 3d 1154, 204 Cal. Rptr. 86 (Ct. App. 1984).

25.    Here, there can be no question a claim for duress has been adequately alleged where:

- Defendants had stated publicly for years they were interested in acquiring ICPW or its assets (Complaint ¶ 14);
- Defendants had never, in their history, dealt with a commercial loan (Complaint ¶ 21);
- Knowing of the misstated financial reports and the default that could provide, Defendants acquired ICPW's secured loan in a matter of days (Complaint ¶¶ 17, 21);
- Defendants knew the assets were worth at least five (5) times the loan amount outstanding, so there was no risk to recovery of the loan principal (Complaint ¶¶ 15, 17 and 22);
- The acquisition happened without ICPW's Board's knowledge; without any representations, warranties or recourse from the predecessor lender; and without any concern on Radians' part with the misstatements in the financial reports (Complaint ¶¶ 17 - 18, 20);
- The day after acquiring the ICPW loan, Defendants declared a default and accelerated the maturity of the loan, knowing ICPW had no means to pay that principal (Complaint ¶ 22);
- When ICPW asked for at least 2 - 3 weeks time to refinance the loan, Radians would only agree to unworkable one-week forbearances, well aware that ICPW would not be able to find that refinancing within those one-week periods (Complaint ¶ 23);
- Knowing this would shut ICPW operations down, or force ICPW into bankruptcy, on August 24, 2017 Radians started sweeping ICPW bank accounts (Complaint ¶ 24).

26.    These actions were strictly for Radians' own commercial advantage, and were predatory, unjust, oppressive and in bad faith (Complaint ¶ 25), thus constituting a classic example of duress under Texas law as shown by the authorities cited above. *Farah,* 678 S.W.2d at 685, 686 ("The question of duress frequently turns on the motive upon which a claim is based").

27.    These Texas authorities also reject all of Radians arguments for dismissal of the duress claim. Thus, Radians first argument, that Radians' actions were within the terms of the

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
106358826\V-1

agreement (Radians Mem. at pp. 14 - 18), was soundly rejected by the *Farah* decision, where

the lender State National argued the same point: that duress cannot be based on threats to enforce

contractual rights, 678 S.W.2d at 684. The *Farah* court disagreed, noting even where exercise of

the acceleration option falls within the terms of the contract, it is the purpose, motive and manner

of the acceleration that control:

> [E]xercise of an optional right of acceleration, not for the **purpose**
> of protecting the debt or preserving the security, but for the **purpose** of
> coercing the maker to pay the entire debt or forfeit his property, was
> relevant to the equitable considerations to be made [citing *Vaughan v.*
> *Crown Plumbing*]
>      The question of duress frequently turns on the **motive** upon which
> a claim is based.
>      678 S.W.2d at 685, 686 (emphasis added).

28.    Therefore, Radians first argument for dismissal of the duress claim must be

rejected.

29.    Radians' next argument is that a only the party that caused the ICPW entities'

financial distress can be liable on a duress claim (Radians Mem. at pp. 13, 18 - 19). The lender in

*Farah* made the same mistaken argument (State National's "fourth reason"; 678 S.W.2d at 686),

and the *Farah* court explained why the argument did not work there and does not work here. In

*Farah*, as here, the plaintiffs were not complaining the lender caused any financial distress that

pre-dated the defendants' action. There as here, the plaintiffs are only seeking a remedy for the

distress caused by the lenders, not for any pre-existing condition, 678 S.W.2d at 686 - 687.

Thus, this Radians argument fails.

30.    Radians' final attack on the duress claim -- among Radians' most ironic -- states a

victim of duress must have no present means of protection, and ICPW had the protection of the

bankruptcy court (Radians Mem. at p. 19). *Farah* again disposes of this argument as it was the

<u>threat</u> of bankruptcy -- one of the "distasteful and costly situations" the lender in *Farah* raised --

that constituted the actionable duress, 678 S.W.2d at 686, 687 *see also Rich v. Whillock,* 157 Cal.

App. 3d at 1159, 204 Cal. Rptr. at 89 ("[A] reasonably prudent person subject to such [coercive]

act may have no reasonable alternative but to succumb when the only other alternative is

- 12 -

1    bankruptcy or financial ruin"). There is also a factual reason to reject this Radians argument:
2    once Radians started the cash-sweep of ICPW's bank accounts, as a practical matter ICPW was
3    out of options.  Without access to its cash, ICPW had neither the funds nor the time to obtain
4    court intervention before its customers and vendors rebelled and its operations shut down.

5       31.    Accordingly, all of Radians arguments for dismissal of the duress claim are
6    without merit, and the Motion as it relates to this claim should be denied.

7                                         **POINT II.**

8              **THE COMPLAINT STATES A VALID CLAIM FOR**
              **BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
9

10      32.    Radians' challenges the Complaint's Second Cause of Action, for Breach of the
11   Covenant of Good Faith and Fair Dealing, citing a number of cases stating that under Texas law,
12   unless the contract involves a "special relationship" there is no duty of good faith and fair dealing,
13   and the lender-borrower relationship is not such a relationship (Radians Mem. at pp. 19 - 21).
14   Radians goes on to say that Section 1-304 of the Texas Business and Commercial Code is also
15   unavailing because the Complaint does not specify the term of the loan agreement that was not
16   exercised in good faith (Radians Mem. at pp. 21 - 22).

17      33.    For reasons already discussed above, Radians arguments fail.  There is abundant
18   precedent recognizing Texas law imposes a duty of good faith on any lender exercising
19   acceleration rights, such as Radians did here. *Brown v. AVEMCO Investment Corp.,* 603 F.2d
20   1367, 1376 (9th Cir. 1979); *American Bank of Waco v. Waco Automotive,* 818 S.W.2d 163, 172
21   (Tex. Ct. App. 1991).  Moreover, Radians relies on the wrong section of the Texas Business and
22   Commercial Code.  The relevant section is Section 1-309, "Option to Accelerate at Will",
23   discussed above, that expressly imposes a duty of good faith on the lender considering the
24   exercise of acceleration rights or rights to additional collateral (such as sweeping bank accounts).
25   Even if Section 1-304 of the Texas code were needed here, the terms Radians exercised in bad
26   faith (the acceleration and bank-account sweeping provisions) are identified throughout the
27   Complaint (*e.g.,* Complaint ¶¶ 22, 24, 25, 31, 38 and 43).  For all these reasons, Radians
28   challenge to the Second Cause of Action must be denied.

- 13 -

## POINT III.

### THE UNJUST ENRICHMENT CLAIM IS VALID

34.    The Complaint's third cause of action seeks return of the pre-payment fee and Break-up Fee on unjust enrichment grounds.  Radians seeks dismissal of this claim on several grounds.  First, Radians argues the Break-up Fee was approved in the Bidding Procedures Order entered September 25, 2017 (Docket No. 68), and this claim is simply a collateral attack on that Order (Radians Mem. at pp. 23 - 24).   Then Radians argues that the Committee is merely complaining about a "bad bargain" that claims for unjust enrichment do not reach (Radians Mem. at p. 24).  Finally, Radians argues the pre-payment fee was bargained for in the prepetition forbearance agreements and justified by ICPW's default under the loan agreement (Radians Mem. at p. 25).

35.    The answer to all these arguments is contained in Radians' own Memorandum and authorities:  "A claim for unjust enrichment will lie where 'one party has obtained a benefit from another by fraud, **duress, or the taking of an undue advantage**,' " (Radians Mem. at p. 24, quoting *First Union Nat. Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 931 (Tex. App. 2005) (emphasis added). As set forth in the Complaint, ICPW had no ground to resist Radians' prepetition demands, including those that became part of the Bidding Procedures Motion and other agreements the Debtors asked this Court to accept.  Both the pre-payment fee and the Break-up Fee were obtained by Radians' duress, and they should be recovered for the benefit of the estates. The Motion as addressed to this claim should be denied.

## POINT IV.

### FOR MULTIPLE REASONS, THE RELEASES CITED BY RADIANS BAR NEITHER THE OBJECTION NOR THE COMMITTEE'S CAUSES OF ACTION

36.    Radians' first argument for dismissal is that the prepetition releases in the various forbearance agreements entered between Radians and ICPW, and even the petition-date release contained in the Debtor-In-Possession Credit Agreement and Agreement for the Use of Cash Collateral, dated September 8, 2017 (the "DIP Agreement") bar the Committee's Objection and Complaint (*see* Radians Mem. at pp. 3 - 8).  As detailed below, for multiple reasons Radians'

- 14 -

reliance on these releases do not preclude the Objection or the causes of action in the Complaint.[7]

**A.    Radians Arguments Based on the Debtors'**
**Releases Are a Collateral Attack on the Final DIP Order**

37.    As the Final DIP Order acknowledged, the Committee filed an Objection (Docket No. 86), to the Debtors' final financing motion (Final DIP Order p.4), and vigorously objected to any effort to compromise the Committee's or the estates' rights to bring any appropriate claims against Radians.  In exchange for the Committee withdrawing its objection, the Committee (and Creditors Committee) was given that protection in paragraph kk of the Final DIP Order, titled: "Challenge Rights of Official Committee of Unsecured Creditors and the Official Committee of Equity Holders."  That paragraph provides:

> On or before the date that is sixty (60) days from the date of the entry of this Final Financing Order (the "Lookback Period"), the Official Committee of Unsecured Creditors and the Official Committee of Equity Holders shall have standing individually and on behalf of Debtors' Estates to object to, challenge, or seek to avoid the amount, validity, or enforceability of the Pre-Bankruptcy Secured Debt (or any portion thereof) or any of the liens and security interests created under the Pre-Bankruptcy Secured Debt and *to bring any other claim that they have against Radians, individually or on behalf of the Debtors' Estates* (separately and collectively, a "Challenge").  If no such action, objection or other Challenge is commenced by either the Official Committee of Unsecured Creditors or the Official Committee of Equity Holders within the Lookback Period, the Pre-Bankruptcy Secured Debt will be deemed and adjudicated finally and indefeasibly as valid and enforceable, the liens and security interests created under the Pre-Bankruptcy Secured Debt in the Collateral securing the Pre-Bankruptcy Secured Debt will be deemed and adjudicated finally and indefeasibly as valid, enforceable and perfected liens and security interests in that Collateral, and any affirmative claim(s) or cause(s) of action of any kind against Radians with respect to the Pre-Bankruptcy Secured Debt, or otherwise, and the liens and security interests securing the Pre-Bankruptcy Secured Debt, or any payment received by Radians will be forever barred.  *As provided in this Final Financing Order, the Debtors have waived and released, and shall be forever barred from asserting, any right to object to, challenge or seek to avoid, the amount, validity, or enforceability of the Pre-Bankruptcy Secured Debt or the liens and security interests in the Collateral securing the Pre-Bankruptcy Secured Debt.*  Except as otherwise may have been

---

[7]    Radians does not explain (or even argue) how any release bars the Committee's Objection, and consequently the argument related to the releases will be treated as limited only to the causes of action in the Complaint.

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
106358826\V-1

1   determined by the Court in the proceedings referenced above, and subject
    to further Order of the Court, in the event any payment made to, or other
2   amount or value received by Radians from or for the account of any of the
    Debtors is avoided, rescinded, set aside or must otherwise be returned or
3   repaid by Radians, whether in the Cases or any other proceedings, the
    indebtedness repaid shall be allowed as a claim in accordance with
4   existing law. Any of Radians' claims, liens, rights, and remedies under the
    Loan Documents which survive such action shall be reinstated and fully
5   preserved. (emphasis added)

6       38.    The above provision protected the Committee's right, during the Lookback Period,

7   to "bring any . . . claim that they have against Radians, either individually or on behalf of the

8   Debtors' Estates ...."(emphasis added).    Period.    The Debtors, in contrast, had "waived and

9   released, and shall be forever barred from asserting any ... challenge ... to ...  the Pre-

10  Bankruptcy Secured Debt . . . ."

11      39.    While the Debtors were prepared to release their claims against Radians (at least

12  related to the Pre-Bankruptcy Secured Debt), the Committees were not.   Having specifically

13  agreed that the Committees were not bound by the release, could challenge Radians' claims and

14  assert any other claims the Committees or the estates had (provided they do so within 60 days),

15  Radians' arguments now that the Committee is somehow bound by the Debtors' releases is

16  nothing other than a breach of their agreement and a collateral attack on the Final DIP Order.

17  Radians' position is without merit and should be rejected.

18      **B.    Relevant Precedent Is Contrary to Radians' Release Arguments**

19      40.    Moreover, Radians' cited cases do not stand for the ultimate proposition advanced

20  by Radians:   that a Committee whose standing is expressly protected by a DIP Order somehow

21  lost that standing because debtor's management gave away those rights.

22      41.    On the contrary, while the courts use different rationales reaching this result, the

23  courts have refused to hold debtors' prepetition releases (or prepetition waivers or agreements)

24  binding on a committee that was not a party or objected to the debtors' release, waiver or

25  agreement.  One line of decisions holds the release or other prepetition agreement may be binding

26

27

28

- 16 -

on the debtor, but not on an objecting (or absent) committee or creditors.[8]  *Minnesota Corn Processors, Inc. v. American Sweeteners, Inc. (In re American Sweeteners, Inc.)* 248 B.R. 271, 276-77 (Bankr. E.D. Pa. 2000) (mutual release binds debtor, but not objecting third parties or non-parties).[9]  Another line of cases takes a broader view that all prepetition agreements to waive the benefits of bankruptcy are unenforceable in their entirety, being "void as against public policy," *see, e.g., In re Intervention Energy Holdings,* 553 B.R. 258, 263 (Bankr. D. Del. 2016), quoting *In re Tru Block Concrete Prods., Inc.,* 27 B.R. 486, 492 (Bankr. S.D. Cal. 1982).[10]  Yet still another line of cases holds the prepetition debtor lacks capacity to act on behalf of the debtor-in-possession, *see, e.g., In re Pease,* 195 B.R. 431, 433 (Bankr. D. Neb. 1996) (prepetition waiver of the automatic stay not enforceable against a debtor-in-possession).

42.    The closest authority uncovered to date in the Ninth Circuit favors (and cites to) this broader view, recognizing prepetition waivers of the protections in bankruptcy are void as against public policy.  *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),* 671 F.3d 1011, 1026 (9th Cir. 2012) quoting *Bank of China v. Huang (In re Huang),* 275 F.3d 1173, 1177 (9th Cir. 2002) and citing *Pease, supra,* 195 B.R. 431; *see also Hayhoe v. Cole (In re Cole),* 226 B.R. 647, 651-53 (B.A.P. 9th Cir. 1998).

43.    The above authority establishes that prepetition agreements such as the releases at issue here are either void as contrary to public policy or, at best, not enforceable against non-consenting third parties such as the Committee here.  In addition, as more fully discussed below, Radians cannot rely upon releases -- obtained through and as part of the very same predatory, unjust, oppressive and bad faith action forming the basis of the Complaint -- to shield itself from this Complaint.  The Complaint sets forth ample grounds as to why those releases should be avoided (*see* Complaint ¶¶ 22 - 25).  In the face of such misconduct, Radians' argument is akin to

---

[8]    As noted in the Final DIP Order, both the Official Committee of Unsecured Creditors and the Official Committee of Equity Holders (the latter defined above as the "Committee") objected to the Debtors' motion for approval of the DIP Agreement and related relief (Final DIP Order p. 4, citing Docket Nos. 85 and 86).

[9]    *See also In re South East Financial Assocs., Inc.,* 212 B.R. 1003, 1005 (Bankr. M.D. Fla. 1997) (prepetition waiver not binding on third parties; if waiver adversely affects creditors, unlikely to be enforced); *In re Atrium High Point Ltd. Partnership,* 189 B.R. 599, 607-08 (Bankr. M.D. N.C. 1995) (debtor's prepetition waiver of automatic stay binding against the debtor, but not against creditors).

[10]    *See also In re Jeff Benfield Nursery, Inc.,* 565 B.R. 603, 608-099 (Bankr. W.D. N.C. 2017) (prepetition waiver of automatic stay unenforceable as a matter of public policy)

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
106358826\V-1

1    a bank robber making the teller sign a release, and then later citing the release as a defense in a

2    suit for the stolen proceeds.  Consequently, particularly absent any authority to support Radians'

3    argument, the Motion should be dismissed to the extent it relies on the prepetition releases.

4         44.    Furthermore, to the extent Radians relies on the Debtors' release contained in the

5    DIP Agreement (Radians Mem. at p.8), this Court should deny the Motion as contrary to well-

6    settled law.  Such provisions in DIP financing agreements are commonplace but only approved

7    when, as here, some entity has the right to assert claims without being subject to such agreement.

8    *See, e.g., Adelphia Communications Corp. v. Bank of America (In re Adelphia Communications*

9    *Corp.),* 330 B.R. 364, 383-84 & nn. 59 and 60 (Bankr. S.D.N.Y. 2005).

10        45.    Consequently, to the extent Radians' Motion is based on arguments concerning the

11   releases, whether prepetition or post-petition, the Motion should be denied.

12   **C.    Assuming *Arguendo* the Releases Are Not Unenforceable As a Matter of
         Law, The Releases Should Be Voided Due to Radians' Coercion and Duress,**
13       **Or Avoided as Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B)(ii)(II).**

14        46.    It is well-settled that prepetition agreements such as the releases in the prepetition

15   forbearance agreements are voidable if produced by coercion or fraud, *In re South East Financial*

16   *Assocs., Inc.* 212 B.R. 1003, 1005 (Bankr. M.D. Fla. 1997); *Mitchell v. C.C. Sanitation Co.,* 430

17   S.W.2d 933, 936 (Tex. Civ. App. 1968, writ refused NRE (Nov. 13, 1968)).

18        47.    The Complaint contains ample descriptions of the coercion and duress Radians

19   used to extract the forbearance agreements including the releases contained therein (*e.g.,*

20   Complaint ¶¶ 22 - 25).  That coercion and duress is sufficient to have the releases declared void.

21   Particularly given the lack of significant consideration received by ICPW for such releases,[11] this

22   Court should hold the releases void and unenforceable.

23        48.    As an argument raising releases is an affirmative defense (Fed. R. Civ. P. 8(c)(1)),

24   the Committee has no obligation in the Complaint to include allegations showing the coercion

25   and duress that can void any releases.  Moreover, what is already alleged, including the unilateral

26   action to sweep ICPW's bank accounts of all cash, making it impossible for ICPW to operate, is

27

28   [11] *See In re Jeff Benfield Nursery, Inc.,* 565 B.R. 603, 609 (Bankr. W.D. N.C. 2017) (lack of significant consideration
     received by debtor for waiver buttressed holding such waiver was unenforceable as a matter of law)

- 18 -

106358826\V-1

1  more than sufficient to void those releases.  If this Court does not deny Radians' Motion related to

2  the releases as a matter of law, the Committee requests leave to submit any necessary pleadings

3  and to provide such proof as the Court directs or permits, at the appropriate juncture, to have the

4  releases declared void as a result of Radians' coercion and duress.

5      49.    Alternatively, the releases should be avoided as fraudulent transfers under 11

6  U.S.C. § 548(a)(1)(B)(ii)(II).  That section provides in pertinent part:

7          The trustee may avoid any transfer . . .of an interest of the debtor in
           property,  or any obligation . . . incurred by the debtor, . . . if the
8          debtor voluntarily or involuntarily . . . received less than a
           reasonably equivalent value in exchange for such transfer or
9          obligation; and  . . . was engaged in  . . . a transaction, or was about
           to engage in . . . a transaction, for which any property remaining
10         with the debtor was an unreasonably small capital . . . .

11      50.    There is no question that, no later than August 24, 2017, when Radians started

12  sweeping ICPW's bank accounts leaving ICPW with no cash whatsoever except for whatever

13  amount Radians extended ICPW, ICPW had only an "unreasonably small capital."  Moreover,

14  there should be little dispute that both the pre-August-24th forbearance agreements and releases,

15  and the post-August-24th transactions, provided ICPW with less than reasonably equivalent

16  value.  Consequently, Section 548 provides another potential ground for avoiding any releases

17  that are not invalid as a matter of law under the above principles.

18      **D.    Assuming *Arguendo* the Releases Are Not Void or
            Avoided Under the Above Principles, The Estate's Claims**
19      **<u>Survive as Having Accrued After The Prepetition Releases.</u>**

20      51.    As alleged in the Complaint, the Estates' most significant injury resulted from

21  ICPW being forced to file for bankruptcy and ultimately surrender ownership of ICPW's assets in

22  an auction overseen by the Court (Complaint ¶¶ 28, 33, 40, 44).  That injury occurred upon the

23  closing of the sale of those assets, but no earlier than upon execution and effectiveness of the

24  Asset Purchase Agreement, on or about the Petition Date, September 8, 2017.

25      52.    Similarly, at least payment of the Break-up Fee occurred well after the Petition

26  Date.

27      53.    The claims at issue here under Texas law accrue at the time the injury occurs.

28  *Texas Valla Real Estate I, Inc. v. City of Houston,* No. 14-10-00486-CV, 2011 WL 4449652, at

- 19 -

*5 (Tex. App. Sept. 27, 2011) (duress claim for improper payment accrues when the payment is made, *i.e.* "when the injury occurs"). Here, as noted above, that injury occurred upon the closing of the sale following the auction of ICPW's assets, but certainly no earlier than the Petition Date, September 8, 2017.

54.     As the last of the relevant releases[12] was executed on August 25, 2017, and the releases expressly only purport to cover matters <u>prior</u> to those releases (*see* Radians Mem. at pp. 5 - 6), the claims accrued after the releases and are therefore not barred.

55.     Consequently, for all the above reasons, Radians Motion as based on the releases should be denied.

## POINT V.

## THE COMMITTEE HAS STANDING
## TO BRING CLAIMS ON BEHALF OF THE ESTATE

56.     Radians also makes the argument (Point II., Radians Mem. at pp. 9 - 10) that, assuming all Estate claims are dismissed based on the above arguments related to the releases, the only claims remaining are those the Committee could bring on its own behalf, which Radians argues are none.  Specifically, citing non-bankruptcy cases holding shareholders cannot sue for injury to their corporation,[13] Radians argues the Committee is merely comprised of ICPW NV shareholders, and therefore lacks standing to bring any non-Estate claims on its own behalf.

57.     The simple answer here is the Committee is only pursuing claims on behalf of the Debtors' Estates. There can be no dispute that, with the bankruptcy court's authority, official committees such as the Committee here have standing to pursue these claims.  *See In re Spaulding Composites Co.,* 207 B.R. 899, 903 (B.A.P. 9th Cir. 1997); *In re Catwil Corp.,* 175 B.R. 362, 364 (Bankr. E.D. Cal. 1994). Here, with Radians' agreement and the terms of the Final DIP Order, the Committee's standing is beyond dispute.

---

[12]     As shown above, the release contained in the DIP Agreement is not a bar to the Committee's or Estate's claims.

[13]     Radians Mem. at p.10, citing *Stevens v. Lowder,* 643 F.2d 1078 (5th Cir. 1981) and *BBC Merchant Solutions, Inc. v. Jet Pay, LLC,* 129 F. Supp. 3d 440 (N.D. Tex. 2015).

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
106358826\V-1

## POINT VI.

## RADIANS' REMAINING ARGUMENTS SHOULD BE DENIED

58.    Radians' remaining requests are all without merit and can be addressed summarily.

59.    <u>Request to Dismiss the Committee's Objection and Fourth Claim</u>.  Radians asks the Court to dismiss the Committee's Objection to Radians' Claim and the Committee's fourth claim for avoidance and recovery of transferred property, on the ground that all of the Committee's other claims are legally deficient, so there is nothing to support the Objection and fourth claim (Radians Mem. at p. 26).  This argument fails for at least two reasons.  One, as demonstrated above, the Committee's other claims should survive this Motion, and those claims support the Objection and recovery rights.  Two, even assuming for the sake of argument there were technical flaws in the claims that could not be corrected with an amended complaint, the factual allegations remain and support the Objection and recovery rights.  Radians' attack on the Objection and fourth cause of action should be denied.

60.    <u>Request to Deny Leave to Amend</u>.  Radians' next argument asks this Court to deny the Committee any leave to amend on the ground that the Final DIP Order set December 5, 2017 as the deadline to bring any such claims and -- without stating the reason -- amendment would be futile (Radians Mem. at p. 26).  This request is baseless, as the Committee met the December 5th deadline, and leave to amend is freely granted, *see* Fed. R. Civ. P. 15(a)(2) (made applicable by Fed. R. Bankr. P. 7015) ("The court should freely give leave when justice so requires.")

61.    <u>Request for Indemnity for Legal Expenses</u>.  Radians' final point is not so much a request as a conditional statement that, based on the prepetition Loan Agreement and this Court's approval of the asset purchase agreement, if and when the Committee's Objection and claims are dismissed or otherwise resolved, Radians believes it is entitled to be indemnified for its legal expenses in responding to this Complaint (Radians Mem. at pp. 27 - 28).  There is no need for the Court to address this point, and it would be premature for the Committee to discuss the point at any length.  The Committee points out, however, that no such indemnity is enforceable if Radians' conduct is either "gross negligence or willful misconduct" (Section 6.11 of the original Capital One loan agreement).  Such willful misconduct is pleaded repeatedly in the Complaint.

- 21 -

1

2
                                    **IV.**

3
                             **CONCLUSION**

4
        For all the foregoing reasons, the Committee requests the Court deny the Radians

5
Defendants' motion to dismiss in its entirety.

6
Dated: January 29, 2018                         DENTONS US LLP

7

8
                                        By:    */s/ Arthur H. Ruegger*

9
                                             ARTHUR H. RUEGGER
                                             SAMUEL R. MAIZEL

10
                                             TANIA M. MOYRON
                                             Attorneys for Official Committee of   Equity

11
                                             Security Holders

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF COMMITTEE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
106358826\V-1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 601 South Figueroa Street, Suite 2500, Los Angeles, CA  90017:

A true and correct copy of the foregoing document entitled (*specify*):  **PLAINTIFF OFFICIAL COMMITTEE OF EQUITY HOLDERS OPPOSITION TO DEFENDANTS, RADIANS WAREHAM HOLDINGS, INC., ET AL., MOTION TO DISMISS (DKT. 5) (A) OBJECTION TO CLAIM NO. 20-1 IN CASE 1:17-BK-12408-MB AND CLAIM NO. 7-1 IN CASE 1:17-BK-12409-MB AND (B) COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **January 29, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Tania M Moyron     tania.moyron@dentons.com, chris.omeara@dentons.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov
- Sharon Z. Weiss     sharon.weiss@bryancave.com, raul.morales@bryancave.com;geri.anderson@bryancave.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **January 29, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **January 29, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY PERSONAL DELIVERY**
Hon. Martin R. Barash
US Bankruptcy Court
Central District of California
21041 Burbank Blvd., Suite 342/Ctrm. 303
Woodland Hills, CA  91367

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 29, 2018 | Christina O'Meara | /s/Christina O'Meara |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**SERVED BY U.S. MAIL:**

| | | |
|---|---|---|
| **Secured Creditor**<br>Radians Wareham Holding, Inc.<br>Attn:  Mike Tutor, CEO<br>5305 Distriplex Farms<br>Memphis, TN  38141 | **Counsel to Radians Wareham Holdings**<br>E. Franklin Childress, Jr.<br>Baker, Donelson, Bearman, Caldwell & Berkowitz, PC<br>165 Madison Ave, Suite 2000<br>Memphis, Tennessee 38103 | |
| Brown Rudnick LLB<br>Attn:  Catherine M. Castaldi<br>2211 Michelson Dr., 7th Floor<br>Irvine, CA  92612 | Ron Bender<br>Monica Y. Kim<br>Krikor J. Meshefejian<br>Levene, Neale, Bender, Yoo & Brill LLP<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA  90067 | |
| **Equity Holders - SERVED BY EMAIL** | | |
| Patrick W. O'Brien<br>301 Whitmore Lane<br>Lake Forest, IL  60045-4707<br>**Email:  obrien.pat@me.com** | Ronald Chez<br>1524 N. Astor Street<br>Chicago, IL  60610<br>**Email:  rlchez@rcn.com** | Scott Jarus<br>938 Duncan Avenue<br>Manhattan Beach, CA  90266<br>**Email:  scott.jarus@verizon.net** |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

106305615\V-1