SAMUEL R. MAIZEL (SBN 189301 )
TANIA M. MOYRON (SBN 235736)
ARTHUR H. RUEGGER (admitted *pro hac vice*)
samuel.maizel@dentons.com;
tania.moyron@dentons.com
arthur.ruegger@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300; Facsimile: (213) 623-9924
Attorneys for Trustee and Trust Board

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY

| | |
|---|---|
| In re:<br><br>ICPW LIQUIDATION CORPORATION, a California corporation,[1]<br><br>    Debtor and Debtor in Possession.<br><br>In re:<br><br>ICPW LIQUIDATION CORPORATION, a Nevada corporation,[2]<br><br>    Debtor and Debtor in Possession. | Lead Case No.:  1:17-bk-12408-MB<br>Jointly administered with:  1:17-bk-12409-MB; Chapter 11 Cases<br><br>Adv. Proc. No.: 1:17-ap-01101-MB<br><br>**AMENDED COMPLAINT FOR:**<br><br>**(1) DURESS; AND**<br><br>**(2) BREACH OF CONTRACT; AND** |
| MATTHEW PLISKIN, AS TRUSTEE OF THE TRUST CREATED UNDER THE JOINT PLAN OF LIQUIDATION DATED FEBRUARY 9, 2018,<br><br>    Objector and Plaintiff,<br><br> - against -<br><br>RADIANS WAREHAM HOLDING, INC.,<br><br>    Claimant and Defendant. | **AMENDED AND PARTIAL OBJECTION TO CLAIM NO. 20-1 IN CASE 1:17-BK-12408-MB AND CLAIM NO. 7-1 IN CASE 1:17-BK-12409-MB PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007; AND RELATED CLAIM FOR PARTIAL AVOIDANCE AND RECOVERY OF PROPERTY TRANSFER.** |

Matthew Pliskin, as Trustee of the Trust created under the Joint Plan of Liquidation dated February 9, 2018 ("<u>Plaintiff</u>", "<u>Objector</u>" or "<u>Trustee</u>"), pursuant to the *Memorandum of Decision*

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Re: Defendants' Motion to Dismiss Adversary Complai*n*t*, dated March 11, 2019 (Adv. Dkt. 49)[3] (the "Decision"), and the *Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Adversary Proceeding* (Adv. Dkt. 50) (the "Order"), as and for his Amended Complaint against Defendant Radians Wareham Holding, Inc. ("RWHI" or "Defendant"), and as and for his Amended Objection to RWHI's Claim No. 20-1 in case 1:17-bk-12408-MB and Claim No. 7-1 in case 1:17-bk-12409-MB, based upon knowledge as to his own actions and upon information and belief as to the other allegations, alleges as follows:

## I.    PARTIES

1.    On September 8, 2017, ICPW Liquidation Corporation (f/k/a Ironclad Performance Wear Corporation), a Nevada corporation ("ICPW NV"), and ICPW Liquidation Corporation (f/k/a Ironclad Performance Wear Corporation), a California corporation ("ICPW CA", and collectively with ICPW NV "ICPW" or the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court") (Lead Case No. 1:17-bk-12408-MB and 1:17-bk-12409-MB).    ICPW CA was a developer and manufacturer of high-performance task-specific industrial and athletic gloves with headquarters in Farmers Branch, Texas.    ICPW NV was the parent corporation of ICPW CA, with no operations or other business.    The above-referenced name changes occurred following an auction of the Debtors' assets in the Bankruptcy Court on October 30, 2017, as described further below.

2.    Objector and Plaintiff Matthew Pliskin was appointed Trustee of the Trust created under the joint plan of liquidation, dated February 9, 2018 (the "Plan").

3.    Defendant Radians Wareham Holding, Inc. (as previously defined "RWHI") is, on information and belief, a Nevada corporation, with offices at 5305 Distriplex Farms Drive, Memphis, Tennessee 38141.    On information and belief, RWHI is a direct or indirect subsidiary

---

[3] Unless otherwise noted, references to "Adv. Dkt." refer to entries on the docket of this adversary proceeding, and references to "Case Dkt." refer to entries on the docket of Bankruptcy Case No. 1:17-bk-12408-MB, *In re ICPW Liquidation Corporation, a California Corporation*.

of Safety Supply Corporation ("Safety Supply") and an affiliate of Radians, Inc.

## II.    THE RWHI CLAIM

4.    On October 20, 2017, RWHI filed identical proofs of claim in each of the two Debtor cases (Claim No. 20-1 in case 1:17-bk-12408-MB, and Claim No. 7-1 in case 1:17-bk-12409-MB, the "RWHI Claim"). The RWHI Claim sought $3,464,093.28, composed of $3,410,217.39 in principal; $15,481.89 in interest; and $38,394.00 in legal fees. Pursuant to orders approving certain bidding procedures and the sale of the Debtors' assets (Case Dkt. 71 and 177), RWHI was paid $5,343,988.19 (including a break-up fee in the amount of $500,000 (the "Break-up Fee")) upon the closing of the Debtors' sale as set forth in that *Statement of Sale Closing* (Case Dkt. 237).

## III.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. §502 and 28 U.S.C. §157(b)(2) .  This is a core proceeding under 28 U.S.C. §157(b)(2) (A), (B) and (O).

6.    Venue is proper in this Court under 28 U.S.C. §1409.

## IV.    PRIOR PROCEEDINGS

7.    Pursuant to the *Final Order: (I) Authorizing The Debtors To (A) Obtain Post-petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 And 364, And (B) Utilize Cash Collateral Pursuant To 11 U.S.C. §§ 361, 362, 363 and 364; (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 And 364; And (III) Granting Related Relief,* entered October 6, 2017 (Case Dkt. 87) (the "Final DIP Order"), paragraph kk, the Official Committee of Equity Holders of ICPW Liquidation Corporation, a Nevada Corporation (the "Equity Committee"), was granted standing, individually and on behalf of the Debtors' estates to, among other matters:

> object to, challenge, or seek to avoid the amount, validity, or enforceability of the Pre-Bankruptcy Secured Debt (or any portion thereof) or any of the liens and security interests created under the Pre-Bankruptcy Secured Debt and to bring any other claim that they have against Radians [Wareham Holding, Inc.] individually or on behalf of the Debtors' Estates [.]

8.    On December 5, 2017, the Equity Committee filed its *(1) Objection to Claim No.*

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA  90017-5704
(213) 623-9300

110688852\V-2

*20-1 in Case 1:17-BK-12408-MB and Claim No. 7-1 in Case 1:17-BK-12409-MB Pursuant to Federal Rule of Bankruptcy Procedure 3007; Complaint For: (2) Duress; (3) Breach of the Covenant of Good Faith and Fair Dealing;(3) Unjust Enrichment; and (4) Avoidance and Recovery of Property Transfer,* (Adv. Dkt. 1) (the "12/5/17 Complaint").

9.    The Court subsequently confirmed the Plan, which dissolved the Equity Committee and approved the Trustee succeeding the Equity Committee as plaintiff and objector in this adversary proceeding. The Court also entered an order approving the stipulation to substitute the Trustee as the Objector and Plaintiff herein (Dkt. No. 42).

10.    RWHI, and affiliated defendants, filed a motion to dismiss the 12/5/17 Complaint, which motion was denied in part and granted in part by the Decision and Order.

## V.    FACTUAL BACKGROUND

### A.    General Background

11.    Founded in 1998, ICPW was a developer and manufacturer of high-performance task-specific gloves for a variety of end markets. By 2017, ICPW offered over 160 different types of gloves, including industrial, mechanics, sporting and first responder uses. The operating ICPW entity was ICPW CA, which was a subsidiary of ICPW NV, the stock of which was publicly traded. As of April 7, 2017, ICPW NV had 85,646,354 shares of common stock issued and outstanding. ICPW's main offices were in Farmers Branch, Texas.

12.    By 2017, ICPW's only structured debt was through a revolving credit line for up to $8 million from Capital One, N.A. ("Capital One"), governed by a Revolving Loan and Security Agreement, first entered as of November 28, 2014 (Exhibit 1 hereto;[4] as later amended, the "Loan Agreement"), and secured by ICPW's assets and property. The Loan Agreement provided it was to be governed by the laws of the State of Texas (Section 13.5). As of March 31, 2017, the balance ICPW owed Capital One under that line was $4,484,446.00.

13.    Radians, Inc. was founded in 1997 and, along with its corporate parent Safety Supply and corporate affiliate RWHI, is a manufacturer of safety equipment and apparel,

---

[4] Revolving Loan And Security Agreement, dated as of November 28, 2014.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

including eyewear, high-visibility apparel and high-performance work gloves. Radians, Inc. is headquartered in Memphis, Tennessee. Safety Supply is privately held.

14.     In or around 2007 or 2008, representatives of ICPW and Radians, Inc. met and discussed in general terms whether the two businesses might benefit from a strategic transaction. While ICPW determined not to pursue the discussions, Radians Inc. remained interested in acquiring either ICPW's brands or the company itself. Over the following several years, Radians, Inc. communicated its interest in a combination to ICPW several times, but ICPW did not accept those invitations.

15.     In May 2017, Radians, Inc. and Safety Supply determined to take a more active pursuit of ICPW and prepared documentation to offer ICPW NV's shareholders twenty-seven and a half cents (27.5¢) per share for ownership of ICPW. Radians, Inc. and Safety Supply communicated this offer to several ICPW shareholders and representatives, but did not receive the desired response. Frustrated with the perceived lack of responsiveness on ICPW's part, in late June 2017, Safety Supply publicly announced their offer. Also during this time, ICPW's board of directors had engaged Craig-Hallum Capital Group LLC as a financial advisor to explore and evaluate potential strategic transactions.

**B.    July 2017**

16.     ICPW had problems at that point. In April and May, 2017, ICPW's board of directors had received anonymous whistleblower reports of accounting irregularities at ICPW, resulting in certain revenue figures being inflated in ICPW's financial statements. After an investigation confirmed the irregularities, on or about July 6, 2017, ICPW filed a Form 8-K Report, dated June 29, 2017 (<u>Exhibit 2</u> hereto),[5] disclosing the discovery of the irregularities, the termination of the employment of ICPW's then-CEO and CFO, and the appointment of new individuals to those positions.

17.     The disclosure of the financial misstatements did nothing to discourage Radians, Inc.'s and its affiliates' interest in acquiring ICPW. Indeed, days later, on July 10, 2017, Radians,

---

[5] Form 8-K for Ironclad Performance Wear Corporation, a Nevada corporation, dated June 29, 2017.

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA  90017-5704
(213) 623-9300

Inc.'s CEO Mike Tutor wrote ICPW's Chairman Vane Clayton, stating Radians, Inc. and Safety Supply did not want to wait for the financial reports to be restated, and stated Radians, Inc. and Safety Supply were willing to consider increasing the 27.5¢ share offer if that would facilitate an expeditious agreement as to the acquisition (Exhibit 3 hereto).[6]

18.    At the same time, Radians, Inc. found another approach to acquiring ICPW.  In early July 2017, following ICPW's public disclosure of the financial misstatements and dismissal of top management, Radians, Inc. learned that ICPW's bank, Capital One, might be interested in selling its secured loan.  On or about July 7, 2017, Radians contacted Capital One to express an interest in purchasing the ICPW loan (Exhibit 4 hereto).[7]

19.    In the months leading up to July 2017, for various reasons, ICPW's business had struggled, resulting in several defaults under the line with Capital One.  Faced with these defaults, Capital One had uniformly responded as a responsible bank.  Specifically, in or about November, 2016, February, 2017 and April, 2017, ICPW notified Capital One that it expected to miss the Debt Service Coverage Ratio covenant (the "DSCR Covenant") under the Loan Agreement.  In each instance, Capital One agreed to waive the default and modify the Loan Agreement.  Indeed, on April 11, 2017, Capital One agreed to replace the DSCR Covenant with a 12-month trailing adjusted EBITDAS covenant, and in May, 2017, extended the loan maturity date to July, 2018.  Thus, Capital One had demonstrated it was willing to work with ICPW through financial difficulties.

20.    Unknown to ICPW, however, on July 8, 2017, Radians, Inc., Safety Supply, a newly-formed affiliate, RWHI (collectively, the "Radians Group"), and Capital One began discussing the sale of ICPW's loan and within four days had reached an agreement, so that drafting started on the sale agreement.  Among the Radians Group's initial questions was whether the loan documents contained a "lockbox," allowing the lender to control ICPW's bank account (Exhibit 5 hereto,[8] see 7/11/17 M. Tutor email).  Capital One confirmed there was a lockbox

---

[6] Email thread, most-recent (top) email dated 7/11/17 at 2:15:33 pm, bates numbers 05267-05268.

[7] Email dated 7/7/17 at 4:31 pm, bates number 000583.

[8] Email thread, most-recent (top) email, dated 7/12/17, at 1:43:50 pm.

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

account, but stated Capital One did not sweep and had not implemented springing dominion of ICPW funds (Id., 7/11/17 Diffenderffer email). Making the sale easier was the above-noted fact that the Radians Group cared little about the uncertainties presented by the misstatements in ICPW's financial statements. The Radians Group expressly waived any recourse against and related representations from Capital One on that topic.

21.    None of the Radians Group entities or their managers had ever before acted as a commercial lender.

22.    On July 25, 2017, RWHI purchased the ICPW loan from Capital One, with Radians, Inc. wiring an amount to Capital One equivalent to the outstanding balance under the loan. At that time, as RWHI and its affiliates well knew, ICPW was in a precarious financial situation, for reasons including:

    a.  after entering the Loan Agreement in November, 2014, the availability of funding from Capital One had allowed ICPW to operate with relatively low liquidity, even through periods of reduced cash flow;

    b.  Capital One had uniformly funded ICPW's requests for advances under the loan, even after grounds for a default existed;

    c.  it was not until after RWHI's acquisition of the loan that ICPW had any reason to believe the prompt funding from Capital One might not continue;

    d.  July 2017, similar to previous periods during the same time of the year, was one of ICPW's low-cash-flow periods[9], as earlier that month ICPW had told Capital One ICPW needed $250,000 "for bi-weekly payroll and outstanding AP [accounts payable] checks" which Capital One had stated could be advanced following a

---

[9] The July time frame historically was a low cash period because it was at the tail end of ICPW's "building period," as opposed to its "selling period." Specifically, in preparation for fall and the end-of-the-year holidays, ICPW sold the majority of its product in the first half of the year (the "selling period"), and then spent the middle part of the year "building" the product and shipping it to customers in time for the fall and holiday season. As such, ICPW was required to spend money paying vendors (factories, shipping companies, etc.) for the "building" of the product during the July time frame, recognizing that it wouldn't collect the money from these customers until the product was received by them (in the fall and end-of-the-year).

110688852\V-2

simple email request (<u>Exhibit 6</u> hereto);[10]

e.  by July 25, 2017, ICPW's funding needs were so desperate ICPW advised Capital One that $200,000 was needed immediately, i.e., that same day (Exhibit 6 hereto); and

f.  as of July 25, 2017, ICPW was effectively out of money.

**C.    The 7/26 Default Letter**

23.    The  day after RWHI purchased the ICPW loan from Capital One, on July 26, 2017, counsel to Radians sent ICPW a letter, among other things, (i) stating RWHI had retained that counsel "to proceed with collection efforts against [ICPW]" (p. 2), (ii) declaring ICPW in default under the loan due to the previously disclosed misstated financial reports, (iii) accelerating the loan, (iv) demanding immediate payment of the $3,688,195.22 outstanding balance in full, (v) threatening to cut off ICPW's funding by stating no additional funding is called for under the loan, (vi) threatening to exercise additional remedies if the loan is not immediately repaid in full, (vii) threatening that such additional remedies included taking possession of and selling RWHI's collateral  (<u>Exhibit 7</u> hereto,[11] the "<u>7/26 Default Letter</u>").  Radians knew ICPW had no means by which to pay the loan, for reasons that include ICPW's last public financial statements showing a cash balance under $300,000.

24.    The 7/26 Default Letter was the first notice ICPW received that the loan from Capital One was sold to RWHI.

25.    The 7/26 Default Letter's declaration of a default and acceleration immediately withdrew ICPW's only source of essential, emergency funding, effectively threatening ICPW with immediate financial and operational suffocation.  The 7/26 Default Letter also threatened to continue that deprivation and threatened to exercise additional remedies, such as taking possession of and selling RWHI's collateral, consisting of ICPW's assets.  RWHI's default

[10] Email thread, most-recent (top) email, dated 7/25/17, at 3:58:59 pm, bates numbers 000218-221.

[11] Cover email dated 7/26/17 at 11:16 am, with attached 7/26/17 Letter from Baker Donelson, bates numbers 003380 - 003386.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

110688852\V-2

declaration, acceleration and related threats in the 7/26 Default Letter were in bad faith, unjust and oppressive, and thus illegal, for reasons that include:

    a. <u>Not Acting Like A Reasonable Lender</u>.  RWHI acquired the loan, not to protect the debt, preserve the security or some other act of a reasonable lender; rather, RWHI's purpose was to accelerate without notice the well-secured loan of a financially vulnerable borrower, and thereby coerce ICPW into paying the debt (which RWHI knew ICPW could not do) or forfeiting ICPW's business and assets to RWHI, all for RWHI's benefit and to ICPW's detriment;

    b. <u>Loan Not At Risk</u>.  RWHI knew the loan and the collateral were secure, as one month earlier RWHI's corporate parent Safety Supply had offered $23.5 million for ICPW's stock (27.5 cents times 86.6 million shares), a sum roughly six times the loan principal;

    c. <u>Refinancing Would Take Time</u>.  At the time RWHI acquired the loan, RWHI knew ICPW did not have the funds to pay the principal without obtaining refinancing from another lender, and consequently RWHI made certain not to permit ICPW enough time to obtain that refinancing;

    d. <u>Imminent Shutdown</u>.  RWHI also knew that, without funds to operate, ICPW had little choice but to accept quick funding from RWHI on RWHI's terms, in order to avoid shutting down operations with the resulting destruction of ICPW's business relationships with customers, suppliers and employees;

    e. <u>RWHI's Action Served Only Its Own Commercial Benefit</u>.  RWHI's actions made no sense as a lender, proving RWHI's motives in accelerating the loan were for its own non-lender commercial advantage, i.e., to force ICPW to turn over ICPW's business, brands and assets.

26.    The 7/26 Default Letter was the first public action by RWHI against ICPW, but just the beginning of a wrongful corporate assault, satisfying the following:

    a. <u>Threat To Take Action Without Legal Right</u>.  For the reasons set forth above, RWHI's acceleration of the loan demanding immediate payment, while

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

9

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

threatening to withhold further funds from a vulnerable borrower with no alternative financing, was in bad faith and therefore unlawful, and outside the actions RWHI had any legal right to take;

    b.   Threat Destroyed ICPW's Free Agency.  As RWHI's notice of default and acceleration gave ICPW no time to refinance, ICPW's only choice was to succumb to RWHI's terms for rescinding the default, or to close the business, thus destroying ICPW's free agency;

    c.   RWHI's Threat Overcame ICPW's Free Will, Forcing Unconscionable Forbearance Terms To Which ICPW Had No Obligation To Agree.  As detailed below, left with no alternative but to shut down, ICPW agreed to unconscionable terms in a forbearance agreement that ICPW otherwise would not have entered—including an impossible one-week forbearance and, most significantly, a Deposit Account Control Agreement—that gave RWHI control of ICPW's finances and ultimately led to a bankruptcy filing resulting in less consideration for the ICPW estates;

    d.   Threat Caused an Imminent Restraint.  RWHI's default declaration and acceleration demanding immediate payment were both sudden and imminent, as ICPW had no funds to repay the loan, no time to find refinancing, and little or no liquidity with which to continue to operate; and

    e.   ICPW Had No Present Means of Protection.  Without immediate funding to continue operations for the weeks necessary either to refinance the loan or to prepare a bankruptcy petition and related papers, ICPW had no protection and no choice but to surrender to RWHI's terms for rescinding the default and funding operations.

**D.    RWHI's Coercion After The 7/26 Default Letter**

27.    As detailed below, over the next four weeks, ICPW tried to persuade RWHI to allow ICPW to continue operations and to try to refinance the loan, but RWHI did not allow that

110688852\V-2

to happen. Instead, RWHI adamantly threatened to seize its collateral (ICPW's property) and withhold even the minimal funding ICPW needed to continue operations for the next weeks, unless ICPW agreed to terms that (i) gave RWHI complete control over ICPW's finances, (ii) prevented ICPW from obtaining financing to pay off the loan, and (iii) virtually guaranteed ICPW's demise as a going concern.

28.    At various times throughout the weeks after the 7/26 Default Letter, RWHI or its affiliates, made offers to purchase ICPW's stock.

29.    July 26. On the same day RWHI delivered the 7/26 Default Letter, ICPW called RWHI and described ICPW's funding needs, which had been desperate beginning no later than July 20 when ICPW requested funding from Capital One. RWHI threatened to withhold any funding until ICPW, among other actions, provided certain bank account information and signed a Deposit Account Control Agreement (or DACA)—an agreement that allows the lender without notice to the borrower to take exclusive control of the subject bank account and the funds therein—that was still being prepared (Exhibit 8 hereto).[12]

30.    July 27. The next day, ICPW emailed RWHI with a request for $400,000 and asking for confirmation when the funds had been wired (Exhibit 9 hereto).[13] RWHI responded by, among other items, referencing the DACA being drafted (Id.). After ICPW replied that ICPW had made commitments to its suppliers that required funding that same day, RWHI repeated its threat that there would be no funding unless and until the parties reached a new "Modification Agreement" (Id.).

31.    July 28. On July 28, 2017, RWHI forwarded a draft Forbearance Agreement (the "7/28 Draft Forbearance Agreement") and draft DACA (Deposit Account Control Agreement) (the "8/1 Draft DACA") to ICPW, repeating the threat that no funding would be forthcoming under the Loan Agreement unless and until the new agreements were signed (Exhibit 10 hereto).[14]

---

[12] Email dated July 26, 2017 at 4:45:43 pm, bates number 007676.

[13] Email thread, the most-recent (top) email dated 7/27/17 at 2:43:26 pm, bates numbers 007697-7698.

[14] Cover email dated 7/28/17 at 11:38 am, with attachments, bates numbers 003172 - 3193.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110688852\V-2

The terms of the proposed agreements are further proof of RWHI's bad faith. Specifically, among the terms in the 7/28 Draft Forbearance Agreement were:

    a. RWHI would forbear for <u>three days</u> (in fact, one business day) until July 31, 2017 (§ 7);

    b. No later than 5:00 p.m. Central Time on the third day, ICPW must pay the entire principal, accrued interest and the new advance (§§ 7(b) - 9);

    c. If ICPW does not make a full payment on that third day, ICPW will cooperate in its own liquidation (§ 15);

    d. ICPW is required to execute any additional documents RWHI requests, including the proposed DACA, and provide RWHI with any documents RWHI requested (§ 12);

    e. ICPW must grant RWHI a broad release of any claims (§ 13); and

    f. To add insult to injury, ICPW must acknowledge not only the loan agreements, but also that RWHI had no obligation to make additional advances, and that ICPW had no claims or defenses to RWHI's claims under the loan agreements (§§ 5 and 6);.

32.    Under the circumstances facing ICPW, the terms of the proposed 8/1 Draft DACA similarly reflected RWHI's bad faith. Those terms included:

    a. ICPW agrees to deposit into its regular business-revenue bank account at Capital One (Account No. 4670100567, hereinafter, the "<u>DACA Account</u>") any and all funds ICPW receives (§ 1(a));

    b. If and when RWHI provides Capital One with notice, for any or for no reason, Capital One will provide RWHI with exclusive control of that DACA Account and its funds (§ 1(b)).

33.    <u>July 31</u>. After the RWHI representative leading the administration of the ICPW loan, Ruth Tutor, inquired about ICPW's position on the proposed Forbearance Agreement and DACA, an ICPW representative attempted to involve another RWHI representative, Mike Tutor, in dealing with the forbearance and funding issues. Later that day, Ruth Tutor admonished ICPW that she, not Mike Tutor, was handling the loan issues, and threatened ICPW again that no

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA 90017-5704
(213) 623-9300

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

funding would be coming unless ICPW executed the Forbearance Agreement and DACA (Exhibit 11 hereto).[15]

34.   Later that day, counsel to ICPW emailed counsel to RWHI stating ICPW understood the parties discussed entering a default waiver and rescission of the acceleration and offering to help with the drafting.  RWHI counsel promptly corrected ICPW's counsel, stating RWHI has not agreed to waive the default, and had no present intention to do so (Exhibit 12 hereto).[16]

35.   August 1.  At midday on August 1, ICPW submitted a request that RWHI fund $250,000 per the Loan Agreement; to which RWHI responds that there will be no funding unless the proposed agreements are signed (Exhibit 13 hereto).[17]

36.   Either late on August 1 or early August 2, faced with no option other than to shut the business down, ICPW surrendered to RWHI's continuing threats and coercion, and signed a Forbearance And Modification Agreement, dated August 1, 2017 (Exhibit 14 hereto) (the "8/1 Forbearance Agreement", and a Deposit Account Control Agreement (Springing - Lockbox) (the "8/1 DACA"), dated as of August 1, 2017 (Exhibit 15 hereto).

37.   Given the absence of any bargaining power on the part of ICPW, the 8/1 Forbearance Agreement contained many of the unconscionable terms RWHI had first proposed in the 7/28 Draft Forbearance Agreement, including:

> a.   Instead of the three days proposed under the 7/28 Draft Forbearance Agreement, RWHI's forbearance was extended to (an equally unworkable) seven days (§ 8);
>
> b.   By 12:00 Noon Central Time on August 7, 2017, ICPW was obliged to pay the entire principal, accrued interest and the new advance (§§ 8 and 16);
>
> c.   If ICPW did not make a full payment (principal, interest and the new advance) by noon on that seventh day, ICPW will cooperate in its own liquidation (§ 16);
>
> d.   ICPW was required to execute any additional edits RWHI requested to the 8/1

---

[15] Email thread, most-recent (top) email dated 7/31/17 at 3:03 pm, bates numbers 003195-3196.

[16] Email thread, most recent (top) email dated 7/31/17at 5:56 pm, bates numbers 001944-1947

[17] Email thread, most recent (top) email dated 8/1/17 at 2:15 pm, bates number 003197.

110688852\V-2

DACA and provide RWHI with any documents RWHI requested (§ 13);

e. ICPW executed a broad release of any claims against RWHI (§ 14); and

f. ICPW acknowledged not only the loan agreements, but also that RWHI had no obligation to make additional advances, and that ICPW had no claims or defenses to RWHI's claims under the loan agreements (§§ 5 and 6).

(Exhibit 14 hereto).

38.    Similarly, the 8/1 DACA (Exhibit 15 hereto) contained the same unconscionable terms proposed in the 7/28 Draft DACA: ICPW must deposit all funds and other receipts into the DACA Account at Capital One; and RWHI has the right, for any reason or no reason, to give notice to Capital One and thereby gain immediate and exclusive control of all funds in or coming into the DACA Account (§1(a) and (b))(Exhibit 15 hereto).

39.    <u>August 2</u>.  On August 2, after execution of the 8/1 Forbearance Agreement and the 8/1 DACA, Radians, Inc. wired $250,000 to the DACA Account at Capital One.

40.    <u>August 4 & 7</u>.  On August 4, counsel to ICPW wrote RWHI counsel attaching a draft First Amendment to Forbearance And Modification Agreement, proposing an amendment to the 8/1 Forbearance Agreement, extending the forbearance period to ten (10) days after ICPW NV files amended Form 10-K's and Form 10-Q's with restated financials (Exhibit 16 hereto).[18] Three days later, on the morning of August 7, ICPW counsel wrote to follow up on the August 4 proposal, and to suggest the subject of additional advances to ICPW, which counsel understood had been discussed by the parties, also be addressed in the amendment (Exhibit 16 hereto).

41.    <u>August 7</u>.  The first forbearance period expired at noon Central Time.

42.    <u>August 9</u>.  On August 9, RWHI counsel sent ICPW another default letter, much like the 7/26 Default Letter: (i) stating ICPW acknowledged in the 8/1 Forbearance Agreement that events of default had occurred under the Loan Agreement; (ii) stating the forbearance period set out in the 8/1 Forbearance Agreement expired August 7; (iii) accelerating the loan; (iv)

---

[18] Email thread, most-recent (top) email dated 8/7/17 at 11:18 a.m., and attached First Amendment to Forbearance And Modification Agreement, bates numbers 003504, 003499 - 3503).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

demanding immediate payment of the $3,967,447.26 outstanding balance in full; (v) threatening to cut off ICPW's funding by stating no additional funding is called for under the loan; (vi) threatening to exercise additional remedies if the loan is not immediately repaid in full; (vii) threatening that such additional remedies included taking possession of and selling RWHI's collateral; (viii) stating that pursuant to the 8/1 DACA, RWHI had sent the requisite notice to Capital One; (ix) threatening to exercise its rights to exclusive control of the DACA Account and its funds pursuant to the 8/1 DACA; and (x) warning ICPW that ICPW had no rights to the DACA Account funds without RWHI's consent (Exhibit 17 hereto) (the "8/9 Default Letter").[19]

43.    In advising ICPW that RWHI had given Capital One notice under the 8/1 DACA and taken exclusive control of the DACA Account, RWHI was threatening ICPW that ICPW was out of business, unless RWHI decided otherwise.

44.    August 11.  On or about August 11, ICPW and RWHI met in Memphis where the subject, among other things, of an additional forbearance was discussed.

45.    August 14.  On August 14, RWHI counsel wrote ICPW counsel stating the parties had met and agreed to a further one-week forbearance, and attaching a draft Forbearance Agreement (the "8/14 Draft Forbearance Agreement") (Exhibit 18 hereto).[20] This 8/14 Draft Forbearance Agreement contained terms similar to the prior forbearance agreements, including specifically:

   a.  A one-week forbearance period, to August 21 (§ 7(b));

   b.  At 5:00 p.m. Central Time on August 21, the entire amount of principal, accrued interest and fees, totaling $3,977,268.09, was due and payable, at which time RWHI could exercise all of its remedies under the agreements (§ 8);

   c.  If full payment is not made by the August 21 deadline, ICPW will cooperate in its own liquidation (§ 14);

[19] Cover email dated 8/9/17 at 4:50 pm, and attached 8/9/17 Baker Donelson letter, bates numbers 003505-3511.

[20] Cover email dated 8/14/17 at 1:44 pm, and attached draft Forbearance Agreement, bates numbers 003527-3537.

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

d.  ICPW must acknowledge RWHI has no obligation to make any further advances, and no additional advance was being made contemplated (§ 5); and

e.  A release (§ 12).

46.  That same day, ICPW counsel protested to RWHI counsel that the parties had discussed a two-week forbearance which was the minimum time needed to get a refinancing arranged; stating that a one-week forbearance would not be enough time (Exhibit 19, hereto).[21] RWHI counsel responded the next day that one week was all RWHI was willing to permit (Exhibit 19). ICPW counsel stated ICPW management would try to persuade RWHI management that at least two weeks was needed (Id.)

47.  August 15.  ICPW was unable to persuade RWHI to grant the two-week forbearance period, and lacking any bargaining power or other alternatives, ICPW signed the Forbearance Agreement dated August 14, 2017 (Exhibit 20 hereto) (the "8/14 Forbearance Agreement"). The 8/14 Forbearance Agreement tracked the language discussed above in the 8/14 Draft Forbearance Agreement, including:

a.  A one-week forbearance period, to August 21 (§ 7(b));

b.  At 5:00 p.m. Central Time on August 21, the entire amount of principal, accrued interest and fees, totaling $3,977,268.09, was due and payable, at which time RWHI could exercise all of its remedies under the agreements (§ 8);

c.  If full payment is not made by the August 21 deadline, ICPW will cooperate in its own liquidation (§ 14);

d.  ICPW must acknowledge RWHI has no obligation to make any further advances, and no additional advance was being made contemplated (§ 5); and

e.  A release was again given (§ 12).

(Exhibit 20)

48.  August 20.  In the days prior to August 20, ICPW had started discussions with a number of prospective lenders, both to replace and to supplement the existing debt to RWHI.  On

---

[21] Cover email and most-recent (top) email dated 8/15/17 at 3:01 pm, with attached proposed Forbearance Agreement, bates numbers 003585-3600.

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

August 20, ICPW called RWHI and advised that, while refinancing the loan was still being pursued, ICPW had engaged bankruptcy counsel (Exhibit 21 hereto).[22]

49.    August 21.    The next day, August 21, ICPW asked if RWHI would extend the forbearance period to allow for ICPW to make a public filing, but RWHI said there was no plan to extend the forbearance beyond 5:00 p.m. Central Time that day (Exhibit 22 hereto).[23]    Later that day, ICPW management introduced RWHI counsel to ICPW's bankruptcy counsel, raising the possibility of RWHI cooperating on a pre-arranged ICPW bankruptcy where RWHI could act a DIP lender and stalking-horse bidder in an auction (Exhibit 23 hereto).[24]

50.    August 24.    After several emails from RWHI's counsel inquiring as to the status of ICPW's efforts, ICPW sent RWHI a copy of a partially-executed term sheet with JGB Management Inc. outlining the terms of a proposed refinancing of ICPW's debt to RWHI (Exhibit 24 hereto.)[25] Several hours later, RWHI counsel wrote ICPW bankruptcy counsel rejecting the terms sheet as not executed by the lender, and stating RWHI will no longer forbear (Exhibit 25 hereto).[26]

51.    Later that same August 24, RWHI counsel sent ICPW another default letter, much like the 8/9 Default Letter: (i) stating ICPW acknowledged in the 8/1 Forbearance Agreement that events of default had occurred under the Loan Agreement; (ii) stating the forbearance period set out in the 8/14 Forbearance Agreement expired August 21st; (iii) accelerating the loan; (iv) demanding immediate payment of the $3,944,045.93 outstanding balance in full; (v) threatening to cut off ICPW's funding by stating no additional funding is called for under the loan; (vi) threatening to exercise additional remedies if the loan is not immediately repaid in full; (vii) threatening that such additional remedies included taking possession of and selling RWHI's collateral; (viii) stating that pursuant to the 8/1 DACA, RWHI had sent the requisite notice to

---

[22] Email dated 8/21/17 at 11:17 am, bates number 003648.

[23] Email thread, the most recent (top) email dated 8/21/17 at 3:11 pm, bates numbers 007913-7914,

[24] Email thread, most recent (top) email dated 8/21/17 at 4:32 pm, bates numbers 003335-03336.

[25] Cover email dated 8/24/17 at 11:45 pm, with attached tem sheet, bates numbers 003656-3658.

[26] Cover email dated 8/24/17 at 1:52 pm, with attached term sheet, bates numbers 003659-3661.

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Capital One; (ix) threatening to exercise its rights to exclusive control of the DACA Account and its funds pursuant to the 8/1 DACA; and (x) warning ICPW that ICPW had no rights to the DACA Account funds without RWHI's consent (Exhibit 26 hereto) (the "8/24 Default Letter").[27]

52.     That afternoon, pursuant to RWHI's notice, Capital One gave exclusive control of the DACA Account to RWHI and began to wire funds from the Account to RWHI, *i.e.,* Capital One followed RWHI's instructions to "sweep" the DACA Account.  In giving that notice, RWHI knew ICPW could not operate without the cash RWHI was taking.  After August 24, RWHI refused to stop the cash sweep, intending to force ICPW to shut down and turn over its assets to RWHI, or at least coerce ICPW to give RWHI favorable terms in any bankruptcy process.

53.     That night, ICPW's bankruptcy counsel wrote to RWHI counsel, attaching a draft term sheet for a DIP loan and stalking-horse bidding procedures, and stating ICPW needed $100,000 of the swept funds to be returned to ICPW first thing the next morning to cover issued and outstanding checks and credit card charges (Exhibit 27 hereto).[28]

54.     On August 25, RWHI wired ICPW certain funds, and over the following days ICPW and RWHI discussed and negotiated regarding a DIP agreement and an Asset Purchase Agreement (or APA).  RWHI refused, however, to release its exclusive control of ICPW's essential financial resource, the DACA Account.

55.     August 30.  On August 30, ICPW and RWHI entered a Second Forbearance Agreement, which had a number of terms similar to earlier forbearance agreements (such as references to the prior loan documents, acknowledgements as to ICPW's default, no further RWHI duty to make advances and a ICPW release of RWHI) (Exhibit 28 hereto; the "8/30 Forbearance Agreement").  The 8/30 Forbearance Agreement, however, contained the following significant differences from the prior forbearance agreements:

     a.  A reference to the anticipated filing of voluntary cases for protection under Chapter 11 of the Bankruptcy Code on or before Friday, September 1, 2017

---

[27] Cover email dated 8/24/17 at 3:40 pm, with attached 8/24 Default Letter, bates numbers 003662-3668.

[28] Cover email dated 8/24/17 at 10:58 pm, with attached term sheet, bates numbers 003671-3674.

(Recital ¶ Q);

b.   The parties signed a letter of intent for DIP financing, cash collateral consent and the stalking-horse terms (Recital ¶ R);

c.   RWHI's forbearance was to extend until September 1, the anticipated bankruptcy petitions filing date (§ 7);

d.   RWHI agreed to advance $519,958.00 to cover pre-bankruptcy expenses (§ 9).

56.    Over the next days, the parties remained in negotiations on the DIP agreement and APA.  RWHI continued to sweep the DACA Account.  The 9/1 target filing date came and went and, as the first couple of days of September passed, ICPW warned it was running low on cash.

57.    <u>September 8</u>.  In the morning of September 8, RWHI swept $160,000 from the DACA Account.  That afternoon, the ICPW Debtors filed voluntary petitions for protection under the Bankruptcy Code.  That evening, RWHI advised Capital One it was releasing the cash sweep hold on the DACA Account.

58.    Pursuant to an order entered by  the Bankruptcy Court, ICPW's assets were sold at auction on October 30, 2017, for approximately $25,250,000. RWHI was not the winning bidder, but received its $500,000 Break-up Fee.  As part of the sale following the auction, the Ironclad name was property of the winning bidder, and the Debtors' names were changed to ICPW Liquidation Corporation(s).

**E.    RWHI's Bad Faith**

59.    Multiple RWHI actions detailed above demonstrate bad faith, including:

a.   After years of seeking to acquire ICPW, seeking that goal indirectly by acquiring ICPW's debt and immediately declaring a default;

b.   In acquiring ICPW's loan, RWHI had no concern with the need for ICPW to restate certain financial information;

c.   After the loan acquisition, immediately accelerating the payment obligation, when RWHI knew ICPW had no means of making or refinancing that payment;

d.   After the loan acquisition, immediately accelerating the payment obligation, when

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

19

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

RWHI knew there was no threat to the loan's security, having offered to pay <u>more than six times</u> the debt for ICPW's stock only months before;

e.  Using the acceleration term not to protect the debt or preserve the security, but instead to coerce ICPW to forfeit its property;

f.  Withholding funding under the credit line to strangle ICPW's operations and finances;

g.  Using the acceleration and threat of withholding funding for operations to coerce ICPW into unconscionable forbearance agreements; that served no purpose of protecting the debt or preserving the security, but rather tightened RWHI's stranglehold on ICPW's finances;

h.  Insisting on forbearance periods of mere days, thus assuring ICPW could not refinance the loan in such a short time period;

i.  Coercing ICPW into signing the 8/1 DACA, which handed RWHI control of ICPW's bank account, and thus ICPW's business;

j.  Only allowing a one-week forbearance period in the 8/1 and 8/14 Forbearance Agreements, particularly after ICPW pleaded that ICPW needed a minimum of <u>two weeks</u> to secure refinancing;

60.     RWHI's above-listed actions, including accelerating the loan, agreeing only to unworkable one-week forbearances, coercing the 8/1 DACA and sweeping ICPW's DACA Account, were strictly for RWHI's own commercial advantage.  RWHI's' actions were unjust, oppressive and in bad faith.

61.     RWHI's actions have damaged the estates of ICPW CA and ICPW NV and the shareholders of ICPW NV.  Had RWHI not acted in the above improper manner, the ICPW entities would not have been forced into bankruptcy and would have been able to negotiate a refinancing of the RWHI debt or a sale of ICPW's assets on terms more favorable than those realized in the bankruptcy auction.

## VI.     CAUSES OF ACTION AGAINST RWHI

### A.     First Cause of Action:  Duress

20

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

62.     Paragraphs 1 through 61 are incorporated herein by reference in support of each of the claims and causes of action.  All conditions precedent to these claims and causes of action have been performed or have occurred.  To the extent that the claims are governed by state law, the law of Texas governs.

63.     RWHI's actions as a lender to ICPW constituted improper use of the Loan Agreement's acceleration and later the 8/1 DACA under Texas law for RWHI's own commercial advantage over the ICPW entities, now known as ICPW Liquidation Corporation, a California corporation and ICPW Liquidation Corporation, a Nevada corporation.  RWHI's actions were unjust, oppressive and designed to further RWHI's own economic interests at the expense of the ICPW entities. The elements of a claim for Duress are amply satisfied in this case.

64.     *(1) Threats of Acts RWHI Had No Legal Right To Do*.  Having accelerated the loan in bad faith, RWHI's breached the Loan Agreement with ICPW, and consequently had no legal right to make the following threats:

a.  The 7/26 Default Letter threat to withhold funding under the Loan Agreement;

b.  The 7/26 Default Letter threat to seize and sell its collateral under the Loan Agreement (i.e., ICPW's property and assets);

c.  The 7/26 Default Letter threat to exercise additional remedies if the loan was not immediately repaid in full;

d.  The 7/26 threat to withhold funding until ICPW delivered certain bank account information and signed a DACA;

e.  The 7/27 threat to withhold funding until ICPW signed a new agreement;

f.  The 7/28 Draft Forbearance Agreement threat to withhold funding until ICPW signed the forbearance agreement that provided only one business day of forbearance, required execution of a DACA and contained multiple concessions and acknowledgements;

g.  The 8/1 Forbearance Agreement threat that if the loan was not repaid in full by August, RWHI would sweep the DACA Account (of necessity shutting down ICPW's business) and would liquidate ICPW;

21

h.   The 8/9 Default Letter threat to withhold funding under the Loan Agreement;

i.   The 8/9 Default Letter threat to seize and sell its collateral under the Loan Agreement (i.e., ICPW's property and assets);

j.   The 8/9 Default Letter threat to exercise additional remedies if the loan was not immediately repaid in full;

k.   The 8/9 Default Letter threat to sweep the DACA Account and liquidate ICPW;

l.   The 8/14 Draft Forbearance Agreement threat to withhold funding, sweep the DACA Account and liquidate ICPW unless the loan was repaid in full by August 21;

m.   The 8/14 Forbearance Agreement's repeated threat to withhold funding, sweep the DACA Account and liquidate ICPW unless the loan was repaid in full by August 21;

n.   The 8/24 Default Letter threat to withhold funding, sweep the DACA Account and liquidate ICPW unless the loan was repaid immediately;

o.   The threat to sweep the DACA Account and liquidate ICPW, that arose from maintaining control of the DACA Account from August 24th to September 8th;

65.   *(2) Threats Destroyed ICPW's Free Agency*.  The threats detailed above destroyed ICPW's free agency because, beginning with the 7/26 Default Letter and continuing to the filing of the petitions on September 8, ICPW had no choice but to surrender to RWHI's demands. ICPW faced:  little if any liquidity; immediate payroll obligations and already-delivered payment checks to suppliers; no time to seek re-financing; no readily available alternative source of financing; and later because of the 8/1 DACA the possibility ICPW's only financial resource (the DACA Account) would be taken without notice.  ICPW lacked any semblance of free agency.

66.   *(3) RWHI's Threats Overcame ICPW's Free Will, Causing ICPW To Do What ICPW Otherwise Would Not Have Done And What ICPW Was Not Legally Bound To Do*. RWHI's threats overcame ICPW's free will because, as detailed above, ICPW had no choice but to surrender to RWHI's demands.   RWHI's coercion caused ICPW to enter into the unconscionable 8/1 and 8/14 Forbearance Agreements that contained damaging concessions and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110688852\V-2

other damaging terms that ICPW would not otherwise have accepted and that ICPW was not legally bound to accept.

67. The acts caused by RWHI's coercion that damaged ICPW most severely, however, were signing the 8/1 DACA and the circumstances surrounding seeking the protection of Chapter 11 of the Bankruptcy Code. The 8/1 DACA deprived ICPW of its only financial resource, effectively transferring control of ICPW to RWHI. That transfer of control contributed to ICPW's recognition that trying to continue outside of bankruptcy was hopeless. Moreover, given ICPW's financial vulnerability to RWHI, even the terms of bankruptcy protection were impacted by RWHI. ICPW would not have signed the 8/1 DAC, would not have filed for bankruptcy protection, and would not have faced RWHI's prominent role in that bankruptcy, but for RWHI's threats and coercion as detailed above.

68. (4) <u>Imminent Restraint</u>. RWHI's continual threats detailed above presented imminent restraints to ICPW because RWHI was: threatening to withhold ICPW's funding needed immediately to cover commitments to employees and suppliers; threatening to seize and sell ICPW's business if ICPW did not immediately repay a loan ICPW had no means to repay; and, after entering the 8/1 DACA, threatening to shut down ICPW's operations immediately and without notice by giving Capital One notice RWHI was taking control of the DACA Account and its funds. RWHI repeatedly and continuously "held a gun to the head" of ICPW. ICPW faced "sudden death," that could scarcely have been more-imminent or a more serious restraint.

69. (5) <u>No Means of Protection</u>. As described above, ICPW had no choices other than to surrender to RWHI's threats and demands. ICPW had no alternative financial resources and was not allowed by RWHI the time to secure alternative financing. Ultimately, even though ICPW was a valuable, solvent company, ICPW sought the only protection available: the protection of the Bankruptcy Code.

70. RWHI's actions were not in good faith, but rather were intended to harm ICPW for RWHI's own commercial benefit. RWHI's improper actions were essential parts of a chain of events that coerced ICPW to sign the 8/1 DACA and to file petitions for bankruptcy protection, and ultimately to surrender ICPW's business and assets.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

23

71.     RWHI's improper actions proximately caused injury to the estates of ICPW CA and ICPW NV by foreclosing the opportunity to obtain financing or achieve strategic transactions on terms more favorable than those resulting from the auction process.

72.     As a result of RWHI's improper actions, the estates of ICPW CA and ICPW NV have suffered damage.

**B.     Second Cause of Action:  Breach of Contract.**

73.     Paragraphs 1 through 72 are incorporated herein by reference in support of each of the claims and causes of action.  All conditions precedent to these claims and causes of action have been performed or have occurred.

74.     ICPW and RHWI were parties to the Loan Agreement after Capital One sold its interests as the banker in that Agreement to RWHI.

75.     The Loan Agreement provisions included the right of the banker, upon a default by the borrower, to accelerate the payment of all or some of the outstanding principal, interest, costs and fees due (Exhibit 1, § 11.2).

76.     Such acceleration clauses are designed to protect the creditor from actions by the borrower which jeopardize or impair the creditor's security.  Under Texas law, acceleration cannot be used offensively, for the commercial advantage of the creditor.  Acceleration must be reasonable and fair under the circumstances, and cannot be used where it would be unjust or oppressive. As Section 1-309 of the Texas Business and Commerce Code provides:  a "party . . . may accelerate payment . . . only if that party in good faith believes that the prospect of payment or performance is impaired."

77.     RWHI did not believe, and could not in good faith have believed, that the prospect of ICPW's payment or performance was impaired.    RWHI used the acceleration clause in the Loan Agreement in an unjust, unfair and oppressive manner, for its own commercial advantage to the detriment of ICPW.

78.     The covenant of good faith and fair dealing governing acceleration clauses under Texas law requires the parties not do anything that will have the effect of destroying or injuring

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

24

110688852\V-2

the right of the other party to receive the benefits of the contract.

79.    RWHI's actions deprived ICPW of the benefits of the Loan Agreement, improperly invoking the acceleration provision, and contrary to the standards of conduct established while Capital One held the loan, for RWHI's own commercial advantage to the detriment of ICPW.

80.    RWHI's actions in implementing the acceleration clause in an unfair, unjust and oppressive manner were in breach of the Loan Agreement.

81.    RWHI's actions in implementing the acceleration clause were a critical part in the chain of events that coerced ICPW to, among other damaging actions, sign the 8/1 DACA and file petitions for protection under Chapter 11 of the Bankruptcy Code. RWHI's actions were unjust, oppressive and designed to further RWHI's own economic interests at the expense of the ICPW entities.

82.    RWHI's breach of the Loan Agreement forced the ICPW entities to file petitions for bankruptcy protection.

83.    RWHI's breach proximately caused injury to the estates of ICPW CA and ICPW NV by foreclosing the opportunity to obtain financing or achieve strategic transactions on terms more favorable than those resulting from the auction process.

84.    As a result of RWHI's breach of the Loan Agreement, the estates of ICPW CA and ICPW NV (now known as ICPW Liquidation Corporation, a California corporation and ICPW Liquidation Corporation, a Nevada corporation) have suffered damage.

## VII.    AMENDED AND PARTIAL OBJECTION TO CLAIM

85.    Paragraphs 1 through 84 are incorporated herein by reference in support of this Partial Objection to Claim.

86.    Plaintiff brings this Partial Objection under 11 U.S.C. § 502(b)(1) and Fed. R. Bankr. P. 3007, objecting to the interest and fees RWHI charged during the period after RWHI materially breached the Loan Agreement (starting July 26, 2017) and seeks disallowance of the interest and fees in such Claim attributable to that period.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

110688852\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

87.     On October 20, 2017, RWHI filed identical proofs of claim in each of the two Debtor cases (Claim No. 20-1 in case 1:17-bk-12408-MB, and Claim No. 7-1 in case 1:17-bk-12409-MB, the "Claim"). The Claim sought $3,464,093.28, composed of $3,410,217.39 in principal; $15,481.89 in interest; and $38,394.00 in legal fees.   Pursuant to orders approving certain bidding procedures and the sale of the Debtors' assets (Case Dkt. 71 and 177), RWHI was paid $5,343,988.19 (which included a break-up fee of $500,000.00) upon the closing of the Debtors sale as set forth in the *Statement of Sale Closing* (Case Dkt. 237).

88.     As detailed above, RWHI materially breached the Loan Agreement by, among other actions, accelerating the payment of principal, interest and fees by ICPW.  RWHI's breach relieves ICPW from performance thereafter under the Loan Agreement.  Therefore, ICPW should not have been responsible for interest charged or legal fees incurred thereafter.

89.     ICPW therefore objects to the Claim and asks that the Claim be disallowed to the extent it included interest and fees attributable to the period after July 26, 2017, in an amount to be determined.

90.     All conditions precedent to these claims and causes of action have been performed or have occurred.

91.     For the reasons set forth above, to the partial extent described above, the transfer of property in the form of the payment based on Radians' Claim should be avoided and recovered for the benefit of the Debtors' estates.

92.     Pursuant to 11 U.S.C. §§ 549 and 550, the Committee is entitled, to the partial extent described above, to avoid and recover that transfer and payment for the benefits of the Debtors' estates.

93.     RWHI is liable to the Committee for any amount of the Claim disallowed and the related transfer avoided.

## VIII.   CONCLUSION AND PRAYER

WHEREFORE, on the basis of the foregoing, Plaintiff respectfully requests a judgment or orders against the Defendant as follows:

110688852\V-2

1    (a)    an order awarding actual damages to Plaintiff against Defendant;

2    (b)    an order (i) disallowing the Claim in part, (ii) avoiding the Claim in part pursuant

3  to 11 U.S.C. §549, and (iii) and directing repayment to the Debtors' estates of the amounts

4  disallowed, pursuant to 11 U.S.C. §550;

5    ( c )    an order awarding the reasonable and necessary costs and attorneys' fees incurred

6  in bringing and prosecuting this action and objection; and

7    (d)    such other and further relief as the Court deems appropriate.

8    Dated: April 26, 2019        Respectfully submitted,

9                DENTONS US LLP

10    By:    */s/   Tania M. Moyron*
            Samuel R. Maizel

11            Tania M. Moyron
            Arthur H. Ruegger

12
            Attorneys for Matthew Pliskin, Plaintiff and

13            Objector as Trustee of the Trust Created Under the
            Joint Plan of Liquidation, dated February 9, 2018

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

27

110688852\V-2