# EXHIBIT 11

## Childress, Frank

| | |
|---|---|
| **From:** | Ruth Tutor <rtutor@radians.com> |
| **Sent:** | Monday, July 31, 2017 3:03 PM |
| **To:** | Jim McAlister (jimm@ironclad.com) |
| **Cc:** | Geoff Greulich (geoffg@ironclad.com); Childress, Frank |
| **Subject:** | FW: Forbearance Agreement and Deposit Account Control Agreement |

Jim,

Thanks for the call. Just to reconfirm what we discussed, I wanted to drop you an email.

The borrowing base is due today. You were going to calculate it to the best of your knowledge and send a signed borrowing base along with your backup so that we can review it in detail to assure its conformance with all of the tenants of the loan documents.

Execution of the Forbearance Agreement and DACA is required for us to advance any additional funds on the loan.

Conversations with Mike Tutor this morning were focused on a meeting that they were planning for later this week. He is not involved in administering the loan. I am handling the loan matters.

Please let me know if I can clarify anything else and I look forward to getting the borrowing base this afternoon.

Regards,

Ruth

Ruth Tutor
Radians, Inc.


**From:** Ruth Tutor
**Sent:** Monday, July 31, 2017 12:57 PM
**To:** 'Jim McAlister' <jim.mcalister@ironclad.com>; Geoff Greulich <geoffg@ironclad.com>
**Cc:** Frank Childress <fchildress@bakerdonelson.com>
**Subject:** RE: Forbearance Agreement and Deposit Account Control Agreement

Jim,

I am touching base to see when to expect the executed Forbearance Agreement and DACA. I have the accounting team on standby to process the funding wire.

Ruth

Ruth Tutor
Radians, Inc.


**From:** Jim McAlister [mailto:jim.mcalister@ironclad.com]
**Sent:** Friday, July 28, 2017 12:26 PM

1

003195

**To:** Ruth Tutor <rtutor@radians.com>; Geoff Greulich <geoffg@ironclad.com>
**Cc:** Mike Tutor <mst@radians.com>; Frank Childress <fchildress@bakerdonelson.com>
**Subject:** RE: Forbearance Agreement and Deposit Account Control Agreement

Ruth,
Thanks for sending the draft documents. We will review over the weekend.
Regards,
Jim

---

**From:** Ruth Tutor [mailto:rtutor@radians.com]
**Sent:** Friday, July 28, 2017 11:38 AM
**To:** Geoff Greulich; Jim McAlister
**Cc:** Mike Tutor; Frank Childress
**Subject:** Forbearance Agreement and Deposit Account Control Agreement

Geoff, Jim,

Attached are the draft agreements to be executed. The Deposit Account Control Agreement is the standard form we received from Capital One. Most of the variables have been added, but we will need the lock box address filled in.

Once the documents are executed, we will countersign and fund the $250,000.00 per the Agreement. We are prepared to complete all today.

Please feel free to call me if you have any questions.

Regards,

Ruth

Ruth Tutor
Radians, Inc. | 5305 Distriplex Farms Dr | Memphis TN 38141
Direct 901.266.2522 | Mobile 901.828.3757 | Toll Free 877.723.4267
rtutor@radians.com | www.radians.com

E-MAIL CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it.

003196

# EXHIBIT 12

| From: | Childress, Frank </O=BDBC/OU=MEMPHIS/CN=RECIPIENTS/CN=EFC> |
|-------|------------------------------------------------------------|
| Sent: | Monday, July 31, 2017 5:46 PM |
| To: | 'Louis A. Wharton' <lwharton@stubbsalderton.com>; Jackson, Mary Ann <mjackson@bakerdonelson.com> |
| Cc: | 'Scott Alderton' <salderton@stubbsalderton.com>; 'John McIlvery' <jmcilvery@stubbsalderton.com> |
| Subject: | RE: Ironclad -- Non-Disclosure Agreement |

Louis please feel free to call me now. Radians has not agreed to enter into a waiver of the default and at this point does not intend to do so.
Regards,
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
Direct: 901.577.2147
Fax: 901.577.0845
Mobile: 901.340.5505
E-mail: fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson – One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

**From:** Louis A. Wharton [mailto:lwharton@stubbsalderton.com]
**Sent:** Monday, July 31, 2017 5:43 PM
**To:** Childress, Frank; Jackson, Mary Ann
**Cc:** Scott Alderton; John McIlvery
**Subject:** RE: Ironclad -- Non-Disclosure Agreement

Frank,
We understand that the parties have discussed entering into a waiver with respect to the current defaults and rescission of the debt acceleration to avoid an 8-K filing by Ironclad. We're happy to prepare a draft to the extent you haven't already started that work. In addition, please let us know where things stand on the NDA. Thanks.
Louis

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Monday, July 31, 2017 9:16 AM
**To:** Louis A. Wharton <lwharton@stubbsalderton.com>
**Cc:** Scott Alderton <salderton@stubbsalderton.com>; John McIlvery <jmcilvery@stubbsalderton.com>; Jackson, Mary Ann <mjackson@bakerdonelson.com>
**Subject:** RE: Ironclad -- Non-Disclosure Agreement

Thanks,
We will call John's number at 9:30 your time.
Regards,
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years
in a Row!**

**From:** Louis A. Wharton [mailto:lwharton@stubbsalderton.com]
**Sent:** Monday, July 31, 2017 11:12 AM
**To:** Childress, Frank
**Cc:** Scott Alderton; John McIlvery; Jackson, Mary Ann
**Subject:** RE: Ironclad -- Non-Disclosure Agreement

Frank,
We're available before 11 or from and after noon PST.  Please let us know what time works for you.  You
can give either John or me a call.
Regards,
Louis

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Monday, July 31, 2017 8:57 AM
**To:** Louis A. Wharton <lwharton@stubbsalderton.com>
**Cc:** Scott Alderton <salderton@stubbsalderton.com>; John McIlvery <jmcilvery@stubbsalderton.com>;
Jackson, Mary Ann <mjackson@bakerdonelson.com>
**Subject:** RE: Ironclad -- Non-Disclosure Agreement

Thank you for your email of yesterday. We would like to discuss with you or John and you if available
this morning. Please let me know if you are available this morning  and Mary Ann Jackson and I will give
you a call.
Thanks
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and
Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for
Seven Years in a Row!**

**From:** Louis A. Wharton [mailto:lwharton@stubbsalderton.com]
**Sent:** Sunday, July 30, 2017 3:31 PM
**To:** Childress, Frank
**Cc:** Scott Alderton; John McIlvery
**Subject:** RE: Ironclad -- Non-Disclosure Agreement

Frank,
We understand that Radians would like to commence substantive discussions with Ironclad early
next week. To facilitate those discussions attached please find a revised draft of the NDA
without the standstill provisions, which we believe addresses Radians' articulated concerns with
the NDA. Please let us know if you have any other comments at your earliest convenience.
Otherwise we would appreciate it if you would obtain and provide an executed copy from
Radians for countersignature by Ironclad.
Regards,
Louis

**From:** John McIlvery
**Sent:** Wednesday, July 26, 2017 3:32 PM
**To:** fchildress@bakerdonelson.com
**Cc:** Scott Alderton <salderton@stubbsalderton.com>; Louis A. Wharton
<lwharton@stubbsalderton.com>
**Subject:** Ironclad -- Non-Disclosure Agreement

Frank,

Attached is a draft of the NDA that was provided to Radians in connection with Project Monitor.
As we discussed, my understanding is that Radians acknowledges the need for an NDA but is not
prepared to sign the form provided.

Please provide us with your comments to the attached.

Regards,

John

| V-card | Bio | Website |
| --- | --- | --- |

**John McIlvery**
Partner
Public Securities Group Chair
jmcilvery@stubbsalderton.com

**Stubbs Alderton & Markiles, LLP**
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403

1453 3rd Street Promenade, Suite 310
Santa Monica, CA 90401

Bus: 818.444.4502
Fax: 818.444.6302
Mobile: 626.705.0758

The information contained in this
e-mail message is intended only
for the personal and confidential
use of the recipient(s) named
above. This message may be an
attorney-client communication
and/or work product and as such
is privileged and confidential. If
the reader of this message is not
the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have
received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If
you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this
communication (including in any attachments and, if this communication is by email, then in any part of the same series of emails), such
advice was not intended or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be

used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

# EXHIBIT 13

**Childress, Frank**

| | |
|---|---|
| From: | Ruth Tutor <rtutor@radians.com> |
| Sent: | Tuesday, August 01, 2017 2:15 PM |
| To: | Jim McAlister; Angela Hall |
| Cc: | Geoff Greulich; Childress, Frank |
| Subject: | RE: Emailing - Radians Funding Request Form (080117).pdf |

Jim,

If we get the agreements executed, we will be able to fund this amount as indicated in the agreement.

Ruth Tutor
Radians, Inc.

**From:** Jim McAlister [mailto:jim.mcalister@ironclad.com]
**Sent:** Tuesday, August 01, 2017 1:31 PM
**To:** Ruth Tutor <rtutor@radians.com>; Angela Hall <ahall@radians.com>
**Cc:** Geoff Greulich <geoff.greulich@ironclad.com>
**Subject:** Emailing - Radians Funding Request Form (080117).pdf

Ruth and Angela,
Please find our request form for $250,000 in funding on the LOC attached.
Regards,
Jim

003197

# EXHIBIT 14

## FORBEARANCE AND MODIFICATION AGREEMENT

THIS **FORBEARANCE AND MODIFICATION AGREEMENT** ("Agreement") is made and entered into as of the 1ˢᵗ day of August, 2017 (the "Effective Date"), by and among **RADIANS WAREHAM HOLDING, INC.,** a Nevada corporation (the "Lender" or "Radians"), and **IRONCLAD PERFORMANCE WEAR CORPORATION,** a California corporation ("Ironclad California") and **IRONCLAD PERFORMANCE WEAR CORPORATION,** a Nevada corporation ("Ironclad Nevada" individually, collectively, and interchangeably with Ironclad California, the "Borrowers") The Borrowers, together with Radians are collectively referred to as the "Parties".

### RECITALS

A. On or about November 28, 2014, Capital One, National Association, a National Banking Association, provided Borrowers with a revolving credit facility (the "Revolving Loan"). Pursuant to that certain General Assignment and Assumption of Loan Documents and that certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement with Capital One, National Association, Radians is the owner and holder of the Loan Documents (as defined below) relating to the Revolving Loan.

B. The Revolving Loan is evidenced by the following described documentation:

  i. That certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, and the Sixth Modification Agreement dated May 10, 2017 ("the Loan Agreement").

  ii. That certain Second Amended and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal amount of $8,000,000.00 (the "Note").

  iii. That certain UCC-1 Financing Statement filed by Capital One, National Association with the California Secretary of State on December 18, 2014, under Document No. 14-7441632305 affecting the Collateral (as defined in the Loan Agreement) more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No. 62925880003.

  iv. That certain UCC-1 Financing Statement filed by Capital One, National Association with the Nevada Secretary of State on December 12, 2014, under Document No. 2014031733-1 affecting the Collateral more particularly described

on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No.2017020461-7.

    v.    That certain Warehouse Waiver and Consent dated March 31, 2015, executed by Advantage Media Services, Inc. in favor of Capital One, National Association.

    vi.    That certain Landlord Waiver and Consent dated April 2, 2015, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association.

    vii.    That certain Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement dated March 7, 2015 with accompanying exhibits referenced therein.

    viii.    That certain General Assignment and Assumption of Loan Documents.

    ix.    That certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement.

C. The Note and the Loan Agreement, together with all documents evidencing, or referring, or relating to the Revolving Loan are hereinafter collectively referred to as the "Loan Documents".

D. The balance owing on the Note as of July 26, 2017, is an amount of $3,688,195.22 (the "Obligations"). Interest continues to accrue on the Obligations from and after July 26, 2017, as provided in the Note.

E. By letter of July 26, 2017 (the "July 26 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations

F. By letter of August 1, 2017, as inducement to enter into this Agreement, Radians notified Borrowers that without waiving the occurrence of Events of Default, the July 26 Letter was rescinded as of July 26, 2017.

G. As a result of the occurrence of Events of Default, Lender has certain rights and remedies under the Loan Documents. Borrowers have requested that Lender forbear in the exercise of its remedies under the Loan Documents for a period of time specified herein to satisfy the Obligations in full and for Lender to advance additional funds under the Note.

H. Lender is willing to forbear from the exercise of its rights and remedies under the Loan Documents as a result of the occurrence of Events of Default and to advance additional funds under the Note, but only on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals, the covenants

4815-2429-2172 v8
2921440-000019 08/02/2017

herein set forth and confirmed, the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, Borrowers and Lender agree as of the Effective Date as follows:

1. <u>Acknowledgement of Recitals</u>. Borrowers and Lender acknowledge and agree that the foregoing "Recitals" are true, correct, and complete.

2. <u>Acknowledgement of Obligations by Borrowers</u>. Borrowers acknowledge and agree that Borrowers are indebted to Lender for repayment of the Obligations, including all accrued interest accrued thereon. Borrowers further acknowledge that they are responsible for all fees, expenses and charges as allowed under the Loan Documents. Borrowers hereby reaffirm and ratify the terms of the Loan Documents, as amended herein, and acknowledge that they are enforceable in accordance with their terms.

3. <u>Acknowledgement of Security Interests</u>. Borrowers acknowledge the validity and enforceability of the security interests in the Collateral granted in favor of Lender under the Loan Documents executed by Borrowers.

4. <u>Acknowledgement of Events of Default</u>. Borrowers acknowledge that in accordance with Sections 10(b) and (c) of the Loan Agreement, Events of Default have occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

5. <u>Acknowledgment of Termination of Requirement to Make Further Advances Under the Note</u>. Borrowers acknowledge that in accordance with Section 2.2 of the Loan Agreement, as Events of Default have occurred and are continuing, Radians is not required to make further advances under the Loan.

6. <u>Acknowledgement of Lack of Defenses</u>. Borrowers acknowledge that as of the Effective Date each has no defense, counterclaim, offset, cross complaint, claim or demand of any kind or nature whatsoever (collectively, the "Borrower Claims") that can be asserted to reduce or eliminate all or any part of its liability to repay any of the Obligations to Lender or seek affirmative relief for damages of any kind or nature from Lender, which Borrower Claims arise out of or are related to the Loan Documents or, more generally, Borrowers' relationship with Lender. To the extent that any such Borrower Claims exist as of the Effective Date, Borrowers acknowledge and agree that they have been fully, forever and irrevocably released pursuant to Paragraph 14 hereto.

7. <u>Modification of Second Amended and Restated Revolving Line of Credit Note and Loan Agreement</u>. The Second Amended and Restated Revolving Line of Credit Note and the Loan Agreement are hereby modified by adding the following provision:

> <u>Prepayment Fee</u>. In the event the Revolving Loan is repaid in conjunction with financing obtained by Borrowers from a financial or lending institution or other source, or in connection with the acquisition of any or both Borrowers, or any assets of either or both

Borrowers, by a third party other than Radians and/or its affiliates, then as a component necessary to satisfy the Revolving Loan, Borrowers shall pay to Radians a prepayment fee of One Hundred and Twenty Thousand ($120,000.00) Dollars (the "Prepayment Fee"). To the extent the Revolving Loan is repaid and thereafter Radians and/or its affiliates are a party to a transaction under which the Borrowers, or the assets of Borrowers, are acquired by Radians and/or its affiliates, Borrowers shall receive a credit for the Prepayment Fee paid to Radians.

**8. Forbearance.**

(a)    Lender will forbear from exercising any remedies available to it under the Loan Documents from the Effective Date through and including the Forbearance Termination Date, as further defined below (the "Forbearance Period"), and will not seek collection of the Obligations from Borrowers, except as set forth herein, initiate or join in filing any involuntary bankruptcy petition with respect to Borrowers under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") or otherwise file or participate in any involuntary insolvency, reorganization, moratorium, receivership, or other similar proceedings initiated against Borrowers under the laws of the United States other than in response to protect its interest as a secured creditor; provided, however, that the Forbearance Period shall terminate and Lender shall be permitted to enforce or exercise any remedies available to it under the Loan Documents if: (i) Borrowers materially breach, default, or fail to perform any obligation or agreement contained in this Agreement; (ii) any case or other proceeding is instituted by or against the Borrowers under any state or federal law relating to the bankruptcy of debtors, including without limitation, the Bankruptcy Code; (iii) any Event of Default other than any existing Event of Default occurs under any of the Loan Documents as modified by this Agreement and all of the other documents executed in connection herewith; (iv) Borrowers fail to meet any deadline established under this Agreement for providing required payment, confirmation or documentation; or (v) any of the acknowledgments, warranties or representations of the Borrowers set forth herein shall be untrue or inaccurate in any material respect as of the date made. Each of the foregoing events is hereinafter referred to as a "Terminable Event."

(b)    Subject to the termination set forth in Paragraph 8(a), and unless otherwise agreed to in writing by Lender, the Forbearance Period will terminate at 12:00 o'clock Noon Central Time on August 7, 2017 (the "Forbearance Termination Date").

**9. Actions Authorized Upon a Terminable Event or the Occurrence of the Forbearance Termination Date.** Upon the occurrence of a Terminable Event or the Forbearance Termination Date, Lender may exercise any and all rights and remedies available to Lender provided in the Loan Documents or this Agreement.

**10. Advance Under the Note.** Upon compliance with the Conditions Precedent and execution of this Agreement, Radians shall advance an additional sum of $250,000.00 under the Note to Borrowers which shall become a component of the Obligations.

**11. Adequate Consideration.** Borrowers each hereby acknowledge and agree that Lender's agreed forbearance, advancement of additional funds under the Note, and extended time for

4816-2429-2172 v3
2921440-000019 08/02/2017

repayment of the Obligations constitutes full and adequate consideration for the execution and delivery by Borrowers of this Agreement. Borrowers materially benefit by the forbearance, modification, and agreements of Lender contained in this Agreement. Borrower stipulates that it has the authority and authorization to execute this Agreement.

12. **Liens Unaffected.** Nothing in this Agreement shall adversely affect, invalidate, discharge, release, or impair any security or the Collateral (including, without limitation, the liens and security interests granted in the Loan Documents held by the Lender or the indebtedness secured thereby or the priority of the security interests of such security, which priority of the security interests shall remain unaffected and unimpaired).

13. **Conditions Precedent.** As conditions precedent to Lender's obligation to forbear hereunder and to make the additional advance under the Note, Borrower agree as follows:

      (a)     To comply with the provisions and conditions of this Agreement;

      (b)     Borrowers shall execute this Agreement;

      (c)     Borrowers shall provide to Lender any and all existing documents reasonably requested by Lender relating to the operation of Borrowers' business; and

      (d)     Borrowers shall continue to use the Lockbox as required under the Loan Agreement and shall execute and immediately forward to Lender, the Deposit Account Control Agreement ("DACA") attached hereto as Exhibit A. To the extent that upon submission to Capital One, National Association ("Bank") additional edits to the DACA are required by the Bank, the parties agree to negotiate in good faith to enter into a revised DACA (the "Revised DACA") acceptable to all parties. Upon agreement, Borrowers and Bank will promptly execute the Revised DACA and immediately thereafter forward it to Lender.

14. **Release of Lender.**

      (a)     Except with respect to Lender's obligations set forth in this Agreement, in consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrowers, and each of their respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Borrowers or any of their respective heirs, successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for,

upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions thereunder or related thereto.

        (b)     Borrowers understand, acknowledge and agree that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

        (c)     Borrowers agree that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

        (d)     Upon full payment and satisfaction of the Obligations, Borrowers shall thereupon automatically be fully, finally and forever released and discharged from any further claim, liability, or obligation in connection with the Revolving Loan and this Agreement, and Lender shall return and mark the Note as "Paid in Full" and release any and all security with respect to the Obligations. This Paragraph 14 shall survive termination of this Agreement.

    15. **Remedies Cumulative; No Waiver**.  The execution, delivery and performance of this Agreement by Lender and the acceptance by Lender of the performance of Borrowers hereunder (a) shall not constitute a waiver or release by Lender of any Event of Default that may now or hereafter exist, (b) shall not constitute a novation of any of the Loan Documents, as amended, and, (c) except as expressly provided in this Agreement, shall be without prejudice to, and is not a waiver or release of, Lender's rights at any time in the future to exercise any and all rights conferred upon Lender by any of the Loan Documents or otherwise at law or in equity, including but not limited to the right to institute collection proceedings against Borrowers and/or to exercise any right against any other person or entity not a party to this Agreement.

    16. **Cooperation Upon Default**. Upon the expiration of the Forbearance Period including any mutually agreed upon extensions thereof without Borrowers having made a lump sum payment to Lender in order to satisfy in full the Obligations due and owing to Lender or the occurrence of a Terminable Event, Borrowers also shall, if requested by Lender, assist Lender in the orderly liquidation of the Collateral securing the Obligations (the "Turnover of Assets"). In implementing the Turnover of Assets, Borrowers agree as follows:

        (a)     Borrowers will cooperate with Lender in the consensual and orderly liquidation of the Collateral securing any of the Obligations.

        (b)     Borrowers acknowledge that they have received commercially reasonable, timely, and accurate notice of an Event of Default, and Borrowers agree that such notice satisfies all requirements of notice under the Loan Documents and applicable law.

    17. **Representations and Warranties**. To induce Lender to enter into this Agreement and as partial consideration for the terms and conditions contained herein, Borrowers represent and

warrant, each and all of which shall survive the execution and delivery of this Agreement and all of the other documents executed in connection herewith, that all corporate actions required to be taken by Borrowers for the authorization, execution, delivery and performance of this Agreement and any other documents contemplated hereby have been taken. This Agreement is, and any documents executed pursuant hereto will be legal, valid, and binding obligations of the party or parties thereto, enforceable against each such party in accordance with their respective terms, subject only to bankruptcy, insolvency, reorganization, moratorium and other laws or equitable principles affecting creditors' rights generally.

18. **Counsel.** Borrowers acknowledge that they have read and understand this Agreement, that they have had the ability to consult with an attorney of their own choosing before signing this Agreement, have been afforded an opportunity to deliberate as to whether to enter into this Agreement, that they understand the terms and effects of this Agreement, and that they execute this Agreement voluntarily.

19. **Construction.** This Agreement shall be liberally construed in order to effectuate the rights, benefits, and remedies of each party, as expressed herein, and neither the express language herein nor any principles of interpretation shall be impaired or adversely affected by the language of any prior discussion, form or draft of this Agreement. This Agreement has been the subject of negotiations by the parties, and this Agreement shall not be construed against any party merely because of such party's involvement in its initial preparation and negotiation. Except as modified by this Agreement, the Loan Documents shall remain in full force and effect.

20. **Governing Law.** This Agreement is governed by the laws of the State of Texas. The Parties agree that the Choice of Forum; Consent to Service of Process and Jurisdiction provisions set forth in Section 13.6 of the Loan Agreement shall apply to this Agreement.

21. **Counterparts. Facsimile.** This Agreement may be executed and delivered (including by facsimile or Portable Document Format (pdf) transmission) in one or more counterparts, all of which will be considered one and the same agreement and will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties. Facsimile or pdf transmission of any signed original document or retransmission of any signed facsimile or pdf transmission will be deemed the same as delivery of an original. At the request of any party, the other parties will confirm facsimile or pdf transmission by signing a duplicate original document.

[Signature Page Follows]

4816-2429-2172 v3
2921440-000019 08/02/2017

**IN WITNESS WHEREOF**, the Parties have executed this Agreement to be effective as of the Effective Date.

**BORROWER:**

**IRONCLAD PERFORMANCE WEAR CORPORATION**, a California corporation

By: _____
L. Geoffrey Greulich, CEO

**BORROWER:**

**IRONCLAD PERFORMANCE WEAR CORPORATION**, a Nevada corporation

By: _____
L. Geoffrey Greulich, CEO

**RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation

By: _____
Ruth Tutor, CFO

4816-2429-2172 v8
2321440-000019 08/02/2017

**IN WITNESS WHEREOF**, the Parties have executed this Agreement to be effective as of the Effective Date.

**BORROWER:**

**IRONCLAD PERFORMANCE WEAR CORPORATION**, a California corporation

By: _____
　　　L. Geoffrey Greulich, CEO

**BORROWER:**

**IRONCLAD PERFORMANCE WEAR CORPORATION**, a Nevada corporation

By: _____
　　　L. Geoffrey Greulich, CEO

**RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation

By: _____
　　　Ruth Tutor, CFO

4816-2429-2172 v3
2921440-000019 08/02/2017

Case 1:17-ap-01101-MB    Doc 55-2    Filed 04/26/19    Entered 04/26/19 16:03:45    Desc
Exhibits 11 - 28    Page 21 of 136
Case 1:17-bk-12409-MB    Claim 7-1 Part 19    Filed 10/20/17    Desc Exhibit 17    Page
19 of 117
Case 1:17-bk-12408-MB    Doc 6    Filed 09/11/17    Entered 09/11/17 15:31:11    Desc
Main Document    Page 145 of 309

STATE OF TEXAS
COUNTY OF Dallas

    Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared L. Geoffrey Greulich, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of IRONCLAD PERFORMANCE WEAR CORPORATION, the within named bargainor, a California corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

    WITNESS my hand and seal at office, on this the 2nd day of August, 2017

                          Notary Public

My Commission Expires:

May 17, 2020

STACY METZLER
Notary Public, State of Texas
Comm. Expires 05-17-2020
Notary ID 130663860

STATE OF TEXAS
COUNTY OF Dallas

    Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared L. Geoffrey Greulich, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of IRONCLAD PERFORMANCE WEAR CORPORATION, the within named bargainor, a Nevada corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

    WITNESS my hand and seal at office, on this the 2nd day of August, 2017.

                          Notary Public

My Commission Expires:

May 17, 2020

STACY METZLER
Notary Public, State of Texas
Comm. Expires 05-17-2020
Notary ID 130663860

4816-2429-2172 v9
2921440-000019 08/02/2017

STATE OF TENNESSEE
COUNTY OF SHELBY

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **Ruth Tutor**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the _____CFO_____ of **RADIANS WAREHAM HOLDING, INC.**, the within named bargainor, a Nevada corporation, and that she as such_____CFO_____, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such_____CFO_____.

WITNESS my hand and seal at office, on this the 2nd day of August, 2017.

_____
Notary Public

My Commission Expires:

9.4.19

# EXHIBIT 15

## DEPOSIT ACCOUNT CONTROL AGREEMENT
(Springing - Lockbox)

This **DEPOSIT ACCOUNT CONTROL AGREEMENT** (the "*Agreement*") dated as of August 1, 2017, by and among **CAPITAL ONE, NATIONAL ASSOCIATION**, having an address at 5718 Westheimer, Suite 600, Houston, Texas 77057 ("*Bank*"), **IRONCLAD PERFORMANCE WEAR CORPORATION**, a California corporation and **IRONCLAD PERFORMANCE WEAR CORPORATION**, a Nevada corporation, having an address at 1920 Hutton Court, Suite 300, Farmers Branch, Texas, 75234 (collectively, "*Debtor*"), and **RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation, having an address at 5305 Distriplex Farms Dr., Memphis, Tennessee 38141 (together with its successors and assigns, hereinafter referred to as "*Secured Party*").

### WITNESSETH:

A.    Secured Party is making loans, advances and other extensions of credit from time to time to Debtor pursuant to that certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, and the Sixth Modification Agreement dated May 10, 2017 by and between Secured Party and Debtor (as amended and otherwise in effect from time to time, the "*Loan Agreement*").

B.    All capitalized terms used but not otherwise defined in this Agreement shall have the meanings ascribed to such terms in the Loan Agreement.

C.    Bank acknowledges that, as of the date hereof, it maintains, in the name of Debtor, the deposit account identified in Section 1(a) of this Agreement (the "*Account*"). The Account is a "deposit account" as defined in Section 9-102 of the Uniform Commercial Code of the State of New York (the "*UCC*"). In addition to the terms and conditions of this Agreement, the Account is governed by the terms and conditions of any deposit account agreements and other related agreements that Debtor has with Bank, including without limitation all agreements concerning banking products and services, treasury management documentation, account booklets containing the terms and conditions of the Account, signature cards, fee schedules, disclosures, specification sheets and change of terms notices (collectively, with all applicable services descriptions and/or agreements, the "*Deposit Agreements*"). The provisions of this Agreement shall supersede the provisions of the Deposit Agreements only to the extent the provisions herein are inconsistent with the Deposit Agreements, and in all other respects, the Deposit Agreements shall remain in full force and effect.

D.    As security for the payment and performance of the Indebtedness under the Loan Agreement, Debtor hereby confirms to Bank that Debtor has granted to

*Springing Deposit Account Control Agreement*

- 1 -

Secured Party a security interest pursuant to the Loan Agreement in the following (collectively, the *"Account Collateral"*): (a) the Account, and (b) the Items. The term *"Items"* means, collectively, all checks, drafts, instruments, certificates of deposit, cash and other items at any time received for deposit in the Account (subject to specific instructions in effect for processing items), wire transfers of funds, automated clearing house (*"ACH"*) entries, credits from merchant card transactions and other electronic funds transfers or other funds deposited in, credited to, or held for deposit in or credit to, the Account.

  E.  The parties desire to enter into this Agreement in order (i) to establish "control" (as defined in Section 9-104 of the UCC) in the Account, (ii) to set forth their relative rights and duties with respect to the Account Collateral and (iii) to set forth the services that Bank will provide with respect to the Account.

  NOW THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

  Section 1.  Duties of Bank. (a) The Account. Bank has established and maintains the Account entitled as follows:

    Name: Ironclad Performance Wear Corporation
    Account No.: 4670100567
    ABA No.: 111901014

Bank shall receive and process any Items presented by Debtor or any of its respective agents pursuant to the next paragraph in accordance with the terms of this Agreement. Bank shall also receive and process all items sent directly to the Bank at United States P.O. Box 47073, Houston, TX 77210-7073 (the "Lockbox"), or via wire transfer to ABA#111901014, Account No.: 4670100567 by purchasers of Inventory or other Collateral (as defined in the Loan Agreement) made payable to the Debtor or some such similar designation as Bank in its sole discretion may determine.

Debtor hereby agrees to deposit with the Bank within one (1) Business Day of receipt, all Items received directly by Debtor which are not otherwise forwarded to Bank.

  (b)  Control. Bank will comply with withdrawal and entitlement orders originated by Debtor concerning the Account until such time as Secured Party delivers a written notice to Bank (in the form of attached Exhibit A) that Secured Party is thereby exercising exclusive control over the Account (such notice, a *"Notice of Exclusive Control"*). After Bank receives a Notice of Exclusive Control and has had a reasonable period of time to act upon it (but in any event not to exceed two (2) Business Days after receipt thereof as described in Section 8), it will cease complying with withdrawal or entitlement orders and all other directions concerning the Account originated by Debtor.

  (c)  No Debtor Rights. Debtor agrees that it shall have no right to issue withdrawal, payment, transfer, delivery, disposition or other instructions or any other right or ability to control, access, pick up, withdraw or transfer, deliver or dispose of Items or funds

*Springing Deposit Account Control Agreement*

from the Account without Secured Party's prior written consent with respect thereto from and after the receipt by Bank of a Notice of Exclusive Control. From and after the time that Bank receives a Notice of Exclusive Control and has had a reasonable period of time to act upon it (but in any event not to exceed two (2) Business Days after receipt thereof as described in Section 8), Bank will comply with any instructions from Secured Party directing the disposition of funds in the Account without the need for any further authorization of Debtor.

        (d)     Amendment and Termination of Instructions. After Bank receives a Notice of Exclusive Control and has had a reasonable period of time to act upon it (but in any event not to exceed two (2) Business Days after receipt thereof as described in Section 8), only the Secured Party (without the need for any further authorization for Debtor) may amend or terminate the authorizations and instructions set forth above by written notice to Bank, and Bank shall not honor any amendments or other changes to the instructions set forth herein with respect to the Account received from Debtor.

        (e)     Security Interest in Items. Debtor and Bank hereby agree that all proceeds of all Items deposited in the Account from time to time, together with all other funds received by Bank in the Account via wire transfer, ACH, merchant card transactions and other electronic funds transfers, or otherwise, shall be held for the benefit of and subject to the security interest granted to Secured Party by Debtor.

        (f)     Returned Items. Bank hereby waives any and all rights it may have at law or otherwise to set off, or make any claim, against the Account, except Bank expressly reserves all of Bank's present and future rights (whether described as rights of setoff, banker's lien, chargeback or otherwise, and whether available to Bank under law or any other agreement between Bank and Debtor concerning the Account or otherwise) with respect to (i) any item deposited to the Account and returned unpaid, or with respect to which Bank fails to receive final settlement, whether for insufficient funds or for any other reason, including but not limited to the claim of a forged instrument; (ii) any item subject to a claim against Bank of breach of transfer or presentment warranty under the UCC; (iii) any ACH entry credited to the Account and returned unpaid or subject to an adjustment entry under applicable clearing house rules, whether for insufficient funds or for any other reason; (iv) any credit to the Account from a merchant card transaction, against which a contractual demand for chargeback has been made; (v) any credit to the Account made in error; and (vi) Bank's usual and customary charges for services rendered in connection with the Account including the payment of Bank's fees and expenses for maintenance of the Account. Items, entries, and transactions described in clauses (i) through (v) of this subsection (f) are hereinafter collectively referred to as *"Returned Items."* Returned Items will be re-deposited the first time and if any Returned Items are returned unpaid a second time for whatever reason such Returned Items shall be debited to the Account under advice and returned to Debtor.

        (g)     Available Funds. Debtor agrees that withdrawals or transfers from the Account will not at any time exceed the available funds in the Account, as determined by Bank's current availability schedule and subject to Bank's right to place holds for uncollected funds pursuant to Federal Reserve Regulation CC. In all instances, Debtor shall

*Springing Deposit Account Control Agreement*

remain liable to Bank for all Returned Items.

(h)    Monthly Report; System Access. Debtor authorizes Bank, and Bank agrees (without requiring Debtor's further authorization or instruction), to send or make available via Bank's internet banking system or otherwise, at least a monthly report to Debtor and Secured Party containing information specifying the amount deposited into the Account for the previous month.

Section 2.    Fees and Charges. (a) To compensate Bank for performing the herein-described services, Debtor agrees to pay the fees owed to Bank. Bank shall debit the Account under advice on a monthly basis for its reasonable and customary fees and charges relating to the Account and shall include its fees in the monthly report required pursuant to Section 1(h). Debtor agrees to pay Bank, upon demand, all costs and expenses, including reasonable attorneys' fees and disbursements, incurred by Bank in the preparation, negotiation and administration of this Agreement (including any amendments hereto or additional instruments or agreements required hereunder); and Debtor authorizes Bank to charge the Account for such costs and expenses.

(b) Debtor agrees to pay Bank for all Returned Items and for all service charges, returned check fees and any other charges to which Bank may be entitled for servicing and maintaining the Account (collectively with Returned Items, the *"Charges"*) and authorizes Bank to charge other accounts maintained with Bank by Debtor for such Charges. In the event that there are insufficient collected funds on deposit in such other accounts to pay the Charges, Debtor and Secured Party agree that Bank may debit the Account the amount of such Charges. With respect to any Returned Item, if Debtor fails to repay Bank in accordance with this section, then Secured Party shall repay Bank the amount of such Returned Item within ten (10) Business Days of receipt of written demand for such payment, provided that (i) such demand is received within ninety (90) days of the date such Returned Item was credited to the Account, and (ii) Secured Party or its designee received the proceeds of such Returned Item.

Section 3.    Indemnification. Bank shall not be liable for any claims, suits, actions, costs, damages, liabilities or expenses (*"Liabilities"*) in connection with the subject matter of this Agreement other than Liabilities caused by the gross negligence or willful misconduct of Bank, and Debtor and Secured Party and their respective successors and assigns hereby agree to indemnify and hold harmless Bank and the directors, officers, employees and agents of Bank and the successors and assigns of Bank from and against any and all Liabilities, legal fees, law suits or legal proceedings, including, without limitation, reasonable fees and disbursements of legal counsel incurred by Bank in any action or proceeding between Debtor or Secured Party and Bank or between Bank and any third party or otherwise, without regard to the merit or lack of merit thereof, arising from or in connection with any acts or omissions taken by Bank or any director, officer, employee or agent of any of them, as applicable, in connection with this Agreement. Notwithstanding anything to the contrary contained herein, Bank shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that Bank's gross negligence or willful misconduct was the primary cause of any loss to Debtor or Secured Party. Bank may execute any of its powers or perform any of its

*Springing Deposit Account Control Agreement*

- 4 -

duties hereunder directly or through agents or attorneys and may consult with counsel, accountants and other skilled persons to be selected and retained by it at the cost and expense of Debtor. Nothing contained herein shall be deemed to prohibit Bank from complying with its customary procedures in the event that it is served with any legal process with respect to the Account.

The parties hereto agree that Bank's sole responsibility to Secured Party, Debtor or any third party for errors made by Bank in processing any Deposits shall be to process a correcting entry in the next regularly scheduled processing of the work after receipt of notification from Secured Party, Debtor or any third party of such error or after discovery of such error by Bank, as the case may be, unless such error was due to Bank's gross negligence or willful misconduct. Bank shall not be liable for any damage or loss resulting from any delay or failure of performance arising out of the acts or omissions of any third parties, including, but not limited to, various communication services, courier services, the Federal Reserve System, any other bank or any third party who may be affected by funds transactions, fire, mechanical, computer or electrical failures or other unforeseen contingencies, strikes or other causes beyond the reasonable control of Bank. In no event shall Bank be liable for lost profits or consequential, special, direct (except for those direct damages attributable to Bank's gross negligence or willful misconduct), indirect or punitive damages, even if Bank has been advised of the possibility of the foregoing.

Section 4.   Successors and Assigns; Assignments.   (a)   This Agreement shall bind and inure to the benefit of and be enforceable by Bank, Debtor and Secured Party and their respective successors and assigns.

(b)  Any corporation into which Bank in its individual capacity may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which Bank in its individual capacity shall be a party, or any corporation to which substantially all the corporate trust business of Bank in its individual capacity may be transferred, shall be *"Bank"* under this Agreement without further act.

Section 5.   Termination. This Agreement shall continue in effect until Secured Party has notified Bank in writing that this Agreement, or its security interest in the Account Collateral, is terminated. Upon receipt of such notice, the obligations of Bank hereunder with respect to the operation and maintenance of the Account after the receipt of such notice shall terminate. Bank reserves the right, unilaterally, to terminate this Agreement, such termination to be effective upon thirty (30) Business Days' written notice to Secured Party and Debtor.

Section 6.   Complete Agreement. This Agreement and the instructions and notices required or permitted to be executed and delivered hereunder set forth the entire agreement of the parties with respect to the subject matter hereof, and, subject to Section 7 below, supersede any prior agreement and contemporaneous oral agreements of the parties concerning its subject matter.

Section 7.   Amendments; Other Agreements. This Agreement may be

*Springing Deposit Account Control Agreement*

amended from time to time in writing by all parties hereto. This Agreement is supplemented by the terms and conditions of the Deposit Agreements, and to the extent the terms of such Deposit Agreements conflict with this Agreement, the specific terms of this Agreement shall control; provided, however, that this Agreement shall not alter or affect any mandatory arbitration provision currently in effect between Bank and Debtor pursuant to the Deposit Agreements.

        Section 8.    Notices. All notices and requests required or permitted under this Agreement (a "*Notice*") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by notice to the other party):

If to Bank:

**Capital One, National Association**
**Deposit Control Agreements Commercial Service Gateway**
**275 Broadhollow Rd**
**Melville, NY 11747**

With a copy to:

**Capital One, National Association**
**265 Broadhollow Road**
**Melville, NY  11747 Attn: Legal Dept.**

If to Debtor:
**IRONCLAD PERFORMANCE WEAR CORPORATION**
**1920 Hutton Court, Suite 300**
**Farmers Branch, Texas  75234**
**Attn: James McAlister, CFO**

If to Secured Party:
**RADIANS WAREHAM HOLDING, INC.**
**5305 Distriplex Farms Dr.**
**Memphis, Tennessee 38141**
**Attn:  Ruth Tutor, CFO**

A Notice shall be deemed to have been given: (i) if sent by hand delivery, upon delivery, (ii) if sent by facsimile, upon receipt, or (iii) if sent by overnight courier, upon receipt.

For general inquiries of Bank, please contact the Capital One Control Services unit at 1-855-675-1212 or via e-mail at depositcontrol@capitalone.com.

        Section 9.    Governing Law and Venue.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Any action or proceeding arising out of or concerning this Agreement shall be heard by a judge sitting without a jury and

*Springing Deposit Account Control Agreement*

shall be heard exclusively in state court of the State of New York. Bank, Debtor and Secured Party hereby submit to the exclusive jurisdiction of the state courts of the State of New York for the purposes of all legal proceedings arising out of or relating to this Agreement or the transactions contemplated hereby. Bank, Debtor, and Secured Party irrevocably waive, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum. New York shall be deemed to be Bank's "jurisdiction" within the meaning of Section 9-304 of the UCC.

Section 10. Certain Matters Affecting Bank. Bank may rely and shall be protected in acting or refraining from acting upon any notice (including but not limited to electronically confirmed facsimiles of such notice) believed by it to be genuine and to have been signed or presented by the proper party or parties. The duties and obligations of Bank set forth in this Agreement shall be determined solely by the express provisions of this Agreement, Bank shall not be liable except for the performance of such party's duties and obligations as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against Bank.

Section 11. Interpleader. If at any time Bank, in good faith, is in doubt as to the action it should take under this Agreement, Bank shall have the right to commence an interpleader action at Debtor's sole cost and expense and to take.no further action except in accordance with joint instructions from Secured Party and Debtor or in accordance with the final order of the court in such action.

Section 12. No Precedent in Negotiation. Each of Secured Party and Debtor respectively agrees that it shall not cite or refer to this Agreement as a precedent in any negotiation of any other account agreement to which Secured Party, Debtor or any of their respective affiliates and Bank shall be party.

Section 13. Headings. The section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

Section 14. Counterparts. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier, facsimile machine, portable document format ("*PDF*") or other electronic means shall be as effective as delivery of a manually executed counterpart of this Agreement. The effectiveness of any such documents and signatures shall, subject to Applicable Laws, have the same force and effect as manually signed originals and shall be binding on Debtor, Bank and Secured Party. Secured Party may also require that any such documents and signatures be confirmed by a manually signed original thereof; provided, however, that the failure to request or deliver the same shall not limit the effectiveness of any facsimile document or signature. No party may raise the use of a telecopier, facsimile machine, PDF or other electronic means, or the fact that any signature was transmitted through the use of a telecopier, facsimile machine, PDF or other electronic means, as a defense to the enforcement of this Agreement.

*Springing Deposit Account Control Agreement*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in several counterparts (each of which shall be deemed an original) as from the date first above written.

BANK:

CAPITAL ONE, NATIONAL ASSOCIATION

By: _____

Name: RICK RODMON

Title: SVP

-Signature page to

**8-1**        *Springing Deposit Account Control Agreement-*

**DEBTOR:**

**IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation**

By: _____
    L. Geoffrey Greulich, CEO

**IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation**

By: _____
    L. Geoffrey Greulich, CEO

S-2

*-Signature page to*

*Springing Deposit Account Control Agreement-*

**SECURED PARTY:**

RADIANS WAREHAM HOLDING,
INC., a Nevada corporation

By: _____

Ruth Tutor, CFO

## EXHIBIT A

Secured Party's Letterhead

To:  **Capital One, National Association**
     **Deposit Control Agreements**
     **Commercial Service Gateway**
     **275 Broadhollow Rd**
     **Melville, NY 11747**


Re:  Account No_____- Notice of Exclusive

Control Attention: Cash Management Manager

    Reference is made to the Deposit Account Control Agreement dated as of August 1, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "Agreement") by and among Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation (collectively, "Debtor"), the undersigned Secured Party and you regarding the above-described account (the "Account"). In accordance with Section 1 of the Agreement, we hereby give you notice of our exercise of control of the Account and we hereby instruct you to transfer daily all funds in the Account as permitted under the Agreement to our account as follows:

    Secured Party's Name:
    Secured Party's
    Address:

    ABA No.:
    Account Name:
    Account No.:
    Reference:

                 **SECURED PARTY:**


                 By: _____
                 Name:
                 Title:

# EXHIBIT 16

**Childress, Frank**

| | |
|---|---|
| From: | Louis A. Wharton <lwharton@stubbsalderton.com> |
| Sent: | Monday, August 07, 2017 11:18 AM |
| To: | Childress, Frank |
| Subject: | RE: Amendment to Ironclad Forbearance Agreement |
| Attachments: | Ironclad-Radians First Amendment to Forbearance and Modification Agreeme....docx |

| | |
|---|---|
| Importance: | High |

Frank,
Just wanted to follow up on the attached.  While the Amendment does not reference additional advances I believe the parties discussed that possibility on Thursday.  Perhaps we can address that issue in the Amendment as well.
Looking forward to your comments.
Regards,
Louis

**From:** Louis A. Wharton
**Sent:** Friday, August 4, 2017 6:49 PM
**To:** Childress, Frank <fchildress@bakerdonelson.com>
**Subject:** Amendment to Ironclad Forbearance Agreement

Frank,
Per my voicemail attached please find a draft of the First Amendment to Forbearance and Modification Agreement.  Please let me know if you have questions or comments.
Regards,
Louis



| V-card | Bio | Website |
|---|---|---|

**Louis A. Wharton**
Partner
lwharton@stubbsalderton.com

**Stubbs Alderton & Markiles, LLP**
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403

1453 3rd Street Promenade, Suite 300
Santa Monica, CA 90401

Bus: 818.444.4509
Fax: 818.444.6309
Mobile: 323.842.4839

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

003504

### FIRST AMENDMENT TO
### FORBEARANCE AND MODIFICATION AGREEMENT

THIS **FIRST AMENDMENT TO FORBEARANCE AND MODIFICATION AGREEMENT** ("Amendment") is made and entered into as of the 7th day of August, 2017 (the "Effective Date"), by and among **RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation (the "Lender" or "Radians"), and **IRONCLAD PERFORMANCE WEAR CORPORATION**, a California corporation ("Ironclad California") and **IRONCLAD PERFORMANCE WEAR CORPORATION,** a Nevada corporation ("Ironclad Nevada" individually, collectively, and interchangeably with Ironclad California, "Borrowers"), and amends that certain Forbearance and Modification Agreement dated August 1, 2017, among Radians and Borrowers (the "Agreement"). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Agreement.

### RECITALS

The Parties desire to amend the Agreement to provide a further forbearance by Lender from the exercise of its rights and remedies under the Loan Documents as a result of the occurrence of Events of Default.

### AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals, the covenants herein set forth and confirmed, the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, Borrowers and Lender agree as of the Effective Date as follows:

1. **Acknowledgement of Recitals**.  Borrowers and Lender acknowledge and agree that the foregoing "Recitals" are true, correct, and complete.

2. **Amendment of Section 8(b) of the Agreement**.  Section 8(b) of the Agreement is hereby amended in its entirety to read as follows:

"(b)  Subject to the termination set forth in Paragraph 8(a), and unless otherwise agreed to in writing by Lender, the Forbearance Period will terminate at 12:00 o'clock Noon Central Time on the tenth (10[th]) business day following the date on which Ironclad Nevada files with the Securities and Exchange Commission amendments to its Annual Reports on Form 10-K for the fiscal years ended December 31, 2016 and 2015, and Quarterly Reports on Form 10-Q for the fiscal quarters ended March 31, 2017 and March 31, June 30 and September 30, 2016, restating the financial statements originally included in such reports (the "Forbearance Termination Date")."

3. **Adequate Consideration**. Borrowers each hereby acknowledge and agree that Lender's agreed forbearance and extended time for repayment of the Obligations constitutes full and adequate consideration for the execution and delivery by Borrowers of this Amendment. Borrowers materially benefit by the forbearance and agreements of Lender contained in this

003499

Amendment. Borrowers stipulate that they have the authority and authorization to execute this Amendment.

4. **Liens Unaffected**. Nothing in this Amendment shall adversely affect, invalidate, discharge, release, or impair any security or the Collateral (including, without limitation, the liens and security interests granted in the Loan Documents held by Lender or the indebtedness secured thereby or the priority of the security interests of such security, which priority of the security interests shall remain unaffected and unimpaired).

5. **Representations and Warranties**. To induce Lender to enter into this Amendment and as partial consideration for the terms and conditions contained herein, Borrowers represent and warrant, each and all of which shall survive the execution and delivery of this Amendment and all of the other documents executed in connection herewith, that all corporate actions required to be taken by Borrowers for the authorization, execution, delivery and performance of this Amendment and any other documents contemplated hereby have been taken. This Amendment is, and any documents executed pursuant hereto will be legal, valid, and binding obligations of the party or parties thereto, enforceable against each such party in accordance with their respective terms, subject only to bankruptcy, insolvency, reorganization, moratorium and other laws or equitable principles affecting creditors' rights generally.

6. **Counsel**. Borrowers acknowledge that they have read and understand this Amendment, that they have had the ability to consult with an attorney of their own choosing before signing this Amendment, have been afforded an opportunity to deliberate as to whether to enter into this Amendment, that they understand the terms and effects of this Amendment, and that they execute this Amendment voluntarily.

7. **Construction**. This Amendment shall be liberally construed in order to effectuate the rights, benefits, and remedies of each party, as expressed herein, and neither the express language herein nor any principles of interpretation shall be impaired or adversely affected by the language of any prior discussion, form or draft of this Amendment. This Amendment has been the subject of negotiations by the parties, and this Amendment shall not be construed against any party merely because of such party's involvement in its initial preparation and negotiation. Except as modified by the Agreement, as amended by this Amendment, the Loan Documents shall remain in full force and effect.

8. **Governing Law**. This Amendment is governed by the laws of the State of Texas. The Parties agree that the Choice of Forum; Consent to Service of Process and Jurisdiction provisions set forth in Section 13.6 of the Loan Agreement shall apply to this Amendment.

9. **Counterparts, Facsimile**. This Amendment may be executed and delivered (including by facsimile or Portable Document Format (pdf) transmission) in one or more counterparts, all of which will be considered one and the same agreement and will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties. Facsimile or pdf transmission of any signed original document or retransmission of any signed facsimile or pdf transmission will be deemed the same as delivery of an original. At the request of any party, the other parties will confirm facsimile or pdf transmission by signing a duplicate original document.

4839-8229-6652, v. 1

**IN WITNESS WHEREOF**, the Parties have executed this Amendment to be effective as of the Effective Date.

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation**

By: _____
      **L. Geoffrey Greulich, CEO**

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation**

By: _____
      **L. Geoffrey Greulich, CEO**

**RADIANS WAREHAM HOLDING, INC., a Nevada corporation**

By: _____
      **Ruth Tutor, CFO**

4839-8229-6652, v. 1

STATE OF TEXAS
COUNTY OF _____

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION**, the within named bargainor, a California corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the _____ day of August, 2017.


_____
Notary Public

My Commission Expires:


_____

STATE OF TEXAS
COUNTY OF _____

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION,** the within named bargainor, a Nevada corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the _____ day of August, 2017.


_____
Notary Public

My Commission Expires:


_____

4839-8229-6652, v. 1

003502

STATE OF TENNESSEE
COUNTY OF SHELBY

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **Ruth Tutor**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the _____ of **RADIANS WAREHAM HOLDING, INC.,** the within named bargainor, a Nevada corporation, and that she as such_____, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such_____.

WITNESS my hand and seal at office, on this the _____ day of August, 2017.


_____
Notary Public

My Commission Expires:


_____


4839-8229-6652, v. 1

003503

# EXHIBIT 17

**Childress, Frank**

| | |
|---|---|
| From: | Childress, Frank |
| Sent: | Wednesday, August 09, 2017 4:50 PM |
| To: | geoffg@ironclad.com; jimm@ironclad.com |
| Cc: | Louis A. Wharton (lwharton@stubbsalderton.com) |
| Subject: | Notice of Default, Acceleration and Demand for Payment |
| Attachments: | Letter to Ironclad Performance Wear Corporation.pdf |

Gentlemen,
Please see attached letter.
Thank you for your consideration,
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

1

003505



## BAKER DONELSON
### BEARMAN, CALDWELL & BERKOWITZ, PC

2000 FIRST TENNESSEE
BUILDING
165 MADISON AVENUE
MEMPHIS, TENNESSEE 38103

PHONE:   901.526.2000
FAX:       901.577.2303

www.bakerdonelson.com

E. FRANKLIN CHILDRESS, JR
**Direct Dial:** 901.577.2147
**Direct Fax:** 901.577.0845
**E-Mail Address:** fchildress@bakerdonelson.com

August 9, 2017

**VIA: E-Mail**

Ironclad Performance Wear Corporation
1920 Hutton Court, Suite 300
Farmers Branch, Texas 75234
Attn: L. Geoffrey Greulich, CEO
geoffg@ironclad.com

Ironclad Performance Wear Corporation
1920 Hutton Court, Suite 300
Farmers Branch, Texas 75234
Attn: James McAlister, CFO
jimm@ironclad.com

### *NOTICE OF DEFAULT, ACCELERATION OF INDEBTEDNESS & DEMAND FOR PAYMENT OF OUTSTANDING INDEBTEDNESS OWED*

Re:   Revolving Loan and Security Agreement dated November 28, 2014, executed by
Ironclad Performance Wear Corporation, a California corporation, and Ironclad
Performance Wear Corporation, a Nevada corporation (the "Borrowers") in favor
of Capital One, National Association, as modified by that certain First
Modification Agreement dated June 15, 2015, that certain Second Modification
Agreement dated March 16, 2016, that certain Third Modification Agreement
dated November 28, 2016, that certain Waiver and Fourth Modification
Agreement dated February 23, 2017, that certain Limited Waiver and Fifth
Modification Agreement dated April 11, 2017, and that certain Sixth Modification
Agreement dated May 10, 2017, that certain Forbearance and Modification
Agreement dated August 1, 2017 (the "Loan Agreement"); the Second Amended
and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal
amount of $8,000,000.00 (the "Note") evidencing the loan to Borrowers (the

4850-5506-2092 v2
2921440-000019 08/09/2017

ALABAMA     FLORIDA     GEORGIA     LOUISIANA     MISSISSIPPI     TENNESSEE     TEXAS     WASHINGTON, D.C.

August 9, 2017
Page 2

"Revolving Loan"); the Warehouse Waiver and Consent dated March 31, 2015, executed by Advantage Media Services, Inc. in favor of Capital One, National Association (the "Warehouse Waiver"); and the Landlord Waiver and Consent dated April 2, 2015, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association (the "Landlord Waiver", together with the Loan Agreement, the Note and the Warehouse Waiver and all other documents executed in connection therewith, are collectively referred to herein as the "Loan Documents").

Dear Borrowers:

As you are aware, this firm has the pleasure of representing Radians Wareham Holding, Inc. ("Radians"). You were previously notified that pursuant to that certain General Assignment and Assumption of Loan Documents and that certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement with Capital One, National Association, Radians is the owner and holder of the Loan Documents (as defined below) relating to the Revolving Loan:

1. That certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, and the Sixth Modification Agreement dated May 10, 2017.

2. That certain Second Amended and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal amount of $8,000,000.00.

3. That certain UCC-1 Financing Statement filed by Capital One, National Association with the California Secretary of State on December 18, 2014, under Document No. 14-7441632305 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No. 62925880003.

4. That certain UCC-1 Financing Statement filed by Capital One, National Association with the Nevada Secretary of State on December 12, 2014, under Document No. 2014031733-1 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No.2017020461-7.

5. That certain Warehouse Waiver and Consent dated March 31, 2015, executed by Advantage Media Services, Inc. in favor of Capital One, National Association.

6. That certain Landlord Waiver and Consent dated April 2, 2015, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association.

4850-5506-2092 v2
2921440-000019 08/09/2017

August 9, 2017
Page 3

7. That certain Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement dated March 7, 2015 with accompanying exhibits referenced therein.

8. That certain General Assignment and Assumption of Loan Documents.

9. That certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement.

Terms used herein but which are not otherwise defined herein, shall have the meanings ascribed thereto as set forth in the Loan Documents.

Effective as of August 1, 2017 (the "Effective Date"), Borrowers and Radians entered into that certain Forbearance and Modification Agreement (the "Forbearance Agreement") and that certain Deposit Account Control Agreement (the "DACA"). In the Forbearance Agreement Borrowers acknowledged that in accordance with Sections 10(b) and (c) of the Loan Agreement, Events of Default have occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

Under the terms of the Forbearance Agreement, Radians agreed to forbear from exercising any remedies available to it under the Loan Documents under the existing Events of Default from the Effective Date through and including 12:00 o'clock Noon Central Time on **August 7, 2017** (the "Forbearance Termination Date"). The Forbearance Agreement further provided that upon the occurrence of the Forbearance Termination Date, Radians may exercise any and all rights and remedies available to Lender provided in the Loan Documents or the Forbearance Agreement.

As provided under Section 11 of the Loan Agreement, as an Event of Default currently exists, Radians hereby accelerates and declares due and immediately payable the entire outstanding principal balance of the Note, together with all accrued and unpaid interest, and all other amounts due and owing under the Note, and any other Loan Documents.

Demand is hereby made for the immediate payment of the sum of **$3,967,447.26** (the "Current Demand Amount") due under the Loan Documents calculated as follows:

| | |
|---|---|
| Outstanding Principal Balance on Loan: | $3,928,332.60 |
| Accrued Unpaid Interest as of August 9, 2017: | $39,114.66 |
| **Current Demand Amount:** | **$3,967,447.26** |

Interest shall continue to accrue on the outstanding principal balance of the Loan from and after the date hereof as provided under the terms of the Note until payment in full is received by Radians in good and immediately available funds. In addition to the amount stated above, in the event the Revolving Loan is repaid in conjunction with financing obtained by Borrowers from a financial or lending institution or other source, or in connection with the acquisition of

4850-5506-2092 v2
2921440-000019 08/09/2017

August 9, 2017
Page 4

any or both Borrowers, or any assets of either or both Borrowers, by a third party other than Radians and/or its affiliates, then as a component necessary to satisfy the Revolving Loan, Borrowers shall pay to Radians the Prepayment Fee as set forth in the Forbearance Agreement.

Likewise, under the terms of the Loan Documents, attorneys' fees and expenses shall continue to accrue and be due and payable by Borrowers in order to satisfy the obligations under the Note.

**In accordance with Section 2.2 of the Loan Agreement, as an Event of Default has occurred and is continuing, Radians is not required to make further advances under the Loan.**

All of Radians' claims, demands and accruals regarding the above-described Loan, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

If the outstanding indebtedness owed to Radians is not paid immediately, Borrowers are hereby advised that Radians intends to exercise its remedies available under the Loan Documents or otherwise at law, or in equity, and furthermore, additional attorneys' fees and other costs of collection incurred by the Lender shall accrue for which Borrowers are liable under the Loan Documents.

Radians reserves the right to exercise, in such order as Radians elects, any one or more of the remedies available to Radians under the Loan Documents or otherwise at law or in equity, including without limitation, the remedies of a secured party under the UCC, including, without limitation the right to take possession of the Collateral securing the Loan and sell the Collateral in accordance with the provisions of the Loan Agreement and the UCC, and nothing contained in this letter shall constitute a waiver of any rights of Radians to pursue such rights and remedies. Please be further advised that no past or future delay or omission in the exercise of any right or remedy accruing to Radians as a result of any Event of Default is intended to constitute a waiver of any right or remedy accruing to Radians as a result of that Event of Default or any other Event of Default.

In accordance with the terms of the Loan Agreement and the DACA, as Events of Default are existing, Radians has provided the required "Notice of Exclusive Control" to Capital One, National Association (the "Bank") and will exercise its rights as provided in the Loan Agreement and DACA.

**Under the terms of the DACA, Borrowers agree that each shall have no right to issue withdrawal, payment, transfer, delivery, disposition or other instructions or any other right or ability to control, access, pick up, withdraw or transfer, deliver or dispose of Items or funds from the Account without Radians prior written consent with respect thereto from and after the receipt by Bank of a Notice of Exclusive Control.**

4850-5506-2092 v2
2921440-000019 08/09/2017

August 9, 2017
Page 5

Please be advised that the Bank has this afternoon acknowledged receipt of the Notice of Exclusive Control.

**Borrowers are further advised that pursuant to the terms of the Loan Agreement, Borrowers are required to notify Radians of any collections received directly by Borrowers from the sale or disposition of any Collateral, and Borrowers are required to hold the proceeds received from such collections in trust for Radians without commingling the same with other funds of Borrowers and agree to turn the same over to Radians immediately upon receipt in identical form received.**

Payment to Radians in an amount less than the Current Demand Amount, together with all interest accrued thereon after the date of this letter, should not be construed as an accord and satisfaction or as Radians' agreement to accept a lesser amount as payment in full of the Loan. Radians' acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment may not be deemed to be an accord and satisfaction, and is not and shall not be deemed to be binding upon Radians. Radians may accept any such payment or check without prejudice to its rights to receive the balance of all amounts due under the Loan Documents or to pursue its remedies.

Please note that we have no obligation or duty to inform Borrowers of Radians' intention to exercise its rights and remedies. We are, however, doing so in this letter as an accommodation to Borrowers. Borrowers shall not be entitled to expect notice in the future of Radians' elections or specifications of Borrowers' obligations under any of the Loan Documents by reason of Radians' election to provide the notices and specifications set forth in this letter.

Neither this letter nor any statement by or on behalf of Radians as to the amount due and owing under any of the Loan Documents: (i) shall constitute a waiver of any rights of Radians to collect any additional amounts to which Radians may be lawfully entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity or (ii) shall constitute an offer to settle or waive any rights of Radians under any of the Loan Documents.

You are hereby notified that Radians shall strictly enforce the Loan Documents in accordance with their respective terms. Please govern yourself accordingly. Your immediate attention is requested.

**THIS FIRM AND RADIANS ARE ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE NOTE AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, TERMS AND PROVISIONS CONTAINED WITHIN THE LOAN DOCUMENTS AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

4850-5506-2092 v2
2921440-000019 08/09/2017

August 9, 2017
Page 6

    To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation.  This notice is given pursuant to 11 U.S.C. Section 362(b)(11), if applicable.

                                    Sincerely,

                                    BAKER, DONELSON, BEARMAN,
                                    CALDWELL & BERKOWITZ, PC


                                    E. Franklin Childress, Jr.

EFC:lmr


cc: Louis A. Wharton, Esq.


4850-5506-2092 v2
2921440-000019 08/09/2017


**003511**

# EXHIBIT 18

## Childress, Frank

| | |
|---|---|
| **From:** | Childress, Frank |
| **Sent:** | Monday, August 14, 2017 1:44 PM |
| **To:** | Louis A. Wharton (lwharton@stubbsalderton.com); John McIlvery |
| **Subject:** | IRONCLAD/RADIANS |
| **Attachments:** | Ironclad-Radians  Forbearance Agreement 4839-5676-7565 v.2.docx |

John and Louie,

Our respective clients met at the end of the week. It is my understanding that your clients requested a further forbearance and Radians agreed to a one week forbearance from today's date. Attached please find my draft of the Forbearance Agreement.   I just called for Louie and understand that he is out this week so wanted to get this to you John.

Please let me know if you have questions.

Thanks

Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

1

## FORBEARANCE AGREEMENT

THIS **FORBEARANCE AGREEMENT** ("Agreement") is made and entered into as of the 14th day of August, 2017 (the "Effective Date"), by and among **RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation (the "Lender" or "Radians"), and **IRONCLAD PERFORMANCE WEAR CORPORATION**, a California corporation ("Ironclad California") and **IRONCLAD PERFORMANCE WEAR CORPORATION**, a Nevada corporation ("Ironclad Nevada" individually, collectively, and interchangeably with Ironclad California, the "Borrowers") The Borrowers, together with Radians are collectively referred to as the "Parties".

### RECITALS

A. On or about November 28, 2014, Capital One, National Association, a National Banking Association, provided Borrowers with a revolving credit facility (the "Revolving Loan"). Pursuant to that certain General Assignment and Assumption of Loan Documents and that certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement with Capital One, National Association, Radians is the owner and holder of the Loan Documents (as defined below) relating to the Revolving Loan.

B. The Revolving Loan is evidenced by the following described documentation:

    i. That certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, the Sixth Modification Agreement dated May 10, 2017, and that certain Forbearance and Modification Agreement dated August 1, 2017 ("the Loan Agreement").

    ii. That certain Second Amended and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal amount of $8,000,000.00 as amended by the Forbearance and Modification Agreement dated August 1, 2017 (the "Note").

    iii. That certain UCC-1 Financing Statement filed by Capital One, National Association with the California Secretary of State on December 18, 2014, under Document No. 14-7441632305 affecting the Collateral (as defined in the Loan Agreement) more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No. 62925880003.

4839-5676-7565 v2

2921440-000020 08/14/2017

iv.   That certain UCC-1 Financing Statement filed by Capital One, National Association with the Nevada Secretary of State on December 12, 2014, under Document No. 2014031733-1 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No.2017020461-7.

v.   That certain Warehouse Waiver and Consent dated March 31, 2015, executed by Advantage Media Services, Inc. in favor of Capital One, National Association.

vi.   That certain Landlord Waiver and Consent dated April 2, 2015, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association.

vii.   That certain Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement dated March 7, 2015 with accompanying exhibits referenced therein.

viii.   That certain General Assignment and Assumption of Loan Documents.

ix.   That certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement.

C.   The Note and the Loan Agreement, together with all documents evidencing, or referring, or relating to the Revolving Loan are hereinafter collectively referred to as the "Loan Documents".

D.   The balance owing on the Note as of August 14, 2017, is an amount of $3,977,268.09 (the "Obligations"). Interest continues to accrue on the Obligations from and after August 14, 2017, as provided in the Note.

E.   By letter of July 26, 2017 (the "July 26 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

F.   By letter of August 1, 2017, Radians notified Borrowers that without waiving the occurrence of Events of Default, the July 26 Letter was rescinded as of July 26, 2017.

G.   Effective as of August 1, 2017, Borrowers and Radians entered that certain Forbearance and Modification Agreement providing for a Forbearance Period to allow Borrowers a period of time to satisfy the Obligations in full, during which time period Radians agreed not to seek collection of the Obligations, except on the occurrence of a Terminable Event as defined in the Forbearance and Modification Agreement.   The Forbearance and Modification Agreement further provided for modification of the Second Amended and Restated Revolving Line of Credit Note and Loan Agreement as provided therein.

H.   Under the terms of the Forbearance and Modification Agreement, the Forbearance Period

expired on the Forbearance Termination Date of August 7, 2017, as Borrowers had failed to satisfy the Obligations on or before the Forbearance Termination Date.

I.    The Forbearance and Modification Agreement further provided that upon the occurrence of the Forbearance Termination Date, Radians may exercise any and all rights and remedies available to Lender provided in the Loan Documents or the Forbearance and Modification Agreement.

J.    By letter of August 9, 2017 (the "August 9 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

K.    As a result of the occurrence of Events of Default, Lender has certain rights and remedies under the Loan Documents. Borrowers have requested that Lender forbear in the exercise of its remedies under the Loan Documents for a period of time specified herein to satisfy the Obligations in full.

L.    Lender is willing to forbear from the exercise of its rights and remedies under the Loan Documents as a result of the occurrence of Events of Default, but only on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals, the covenants herein set forth and confirmed, the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, Borrowers and Lender agree as of the Effective Date as follows:

1.    **Acknowledgement of Recitals**.  Borrowers and Lender acknowledge and agree that the foregoing "Recitals" are true, correct, and complete.

2.    **Acknowledgement of Obligations by Borrowers**. Borrowers acknowledge and agree that Borrowers are indebted to Lender for repayment of the Obligations, including all accrued interest accrued thereon. Borrowers further acknowledge that they are responsible for all fees, expenses and charges as allowed under the Loan Documents. Borrowers hereby reaffirm and ratify the terms of the Loan Documents, as amended herein, and acknowledge that they are enforceable in accordance with their terms.

3.    **Acknowledgement of Security Interests**.  Borrowers acknowledge the validity and enforceability of the security interests in the Collateral granted in favor of Lender under the Loan Documents executed by Borrowers.

4.    **Acknowledgement of Events of Default**. Borrowers have previously acknowledged in the Forbearance and Modification Agreement that in accordance with Sections 10(b) and (c) of

the Loan Agreement, Events of Default have occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

5. **Acknowledgment of Termination of Requirement to Make Further Advances Under the Note**. Borrowers acknowledge that in accordance with Section 2.2 of the Loan Agreement, as Events of Default have occurred and are continuing, Radians is not required to make further advances under the Loan.

6. **Acknowledgement of Lack of Defenses**. Borrowers acknowledge that as of the Effective Date each has no defense, counterclaim, offset, cross complaint, claim or demand of any kind or nature whatsoever (collectively, the "Borrower Claims") that can be asserted to reduce or eliminate all or any part of its liability to repay any of the Obligations to Lender or seek affirmative relief for damages of any kind or nature from Lender, which Borrower Claims arise out of or are related to the Loan Documents or, more generally, Borrowers' relationship with Lender. To the extent that any such Borrower Claims exist as of the Effective Date, Borrowers acknowledge and agree that they have been fully, forever and irrevocably released pursuant to Paragraph 12 hereto.

7. **Forbearance**.

(a)    Lender will forbear from exercising any remedies available to it under the Loan Documents from the Effective Date through and including the Forbearance Termination Date, as further defined below (the "Forbearance Period"), and will not seek collection of the Obligations from Borrowers, except as set forth herein, initiate or join in filing any involuntary bankruptcy petition with respect to Borrowers under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") or otherwise file or participate in any involuntary insolvency, reorganization, moratorium, receivership, or other similar proceedings initiated against Borrowers under the laws of the United States other than in response to protect its interest as a secured creditor; provided, however, that the Forbearance Period shall terminate and Lender shall be permitted to enforce or exercise any remedies available to it under the Loan Documents if: (i) Borrowers materially breach, default, or fail to perform any obligation or agreement contained in this Agreement; (ii) any case or other proceeding is instituted by or against the Borrowers under any state or federal law relating to the bankruptcy of debtors, including without limitation, the Bankruptcy Code; (iii) any Event of Default other than any existing Event of Default occurs under any of the Loan Documents as modified by this Agreement and all of the other documents executed in connection herewith; (iv) Borrowers fail to meet any deadline established under this Agreement for providing required payment, confirmation or documentation; or (v) any of the acknowledgments, warranties or representations of the Borrowers set forth herein shall be untrue or inaccurate in any material respect as of the date made. Each of the foregoing events is hereinafter referred to as a "Terminable Event."

(b)    Subject to the termination set forth in Paragraph 7(a), and unless otherwise agreed to in writing by Lender, the Forbearance Period will terminate at 5:00 o'clock Central

Time on **August 21, 2017** (the "Forbearance Termination Date").

8. **Actions Authorized Upon a Terminable Event or the Occurrence of the Forbearance Termination Date**. Upon the occurrence of a Terminable Event or the Forbearance Termination Date, Lender may exercise any and all rights and remedies available to Lender provided in the Loan Documents or this Agreement.

9. **Adequate Consideration.** Borrowers each hereby acknowledge and agree that Lender's agreed forbearance and extended time for repayment of the Obligations constitutes full and adequate consideration for the execution and delivery by Borrowers of this Agreement. Borrowers materially benefit by the forbearance and agreements of Lender contained in this Agreement. Borrower stipulates that it has the authority and authorization to execute this Agreement.

10. **Liens Unaffected.** Nothing in this Agreement shall adversely affect, invalidate, discharge, release, or impair any security or the Collateral (including, without limitation, the liens and security interests granted in the Loan Documents held by the Lender or the indebtedness secured thereby or the priority of the security interests of such security, which priority of the security interests shall remain unaffected and unimpaired).

11. **Conditions Precedent**. As conditions precedent to Lender's obligation to forbear hereunder, Borrower agree as follows:

      (a)    To comply with the provisions and conditions of this Agreement;

      (b)    Borrowers shall execute this Agreement;

      (c)    Borrowers shall provide to Lender any and all existing documents reasonably requested by Lender relating to the operation of Borrowers' business; and

      (d)    Borrowers shall continue to use the Lockbox as required under the Loan Agreement with access to funds deposited in the Lockbox Account being governed by that certain Deposit Account Control Agreement executed among Borrowers, Radians and Capital One, National Association.

12. **Release of Lender**.

      (a)    Except with respect to Lender's obligations set forth in this Agreement, in consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrowers, and each of their respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and

individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Borrowers or any of their respective heirs, successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions thereunder or related thereto.

(b)      Borrowers understand, acknowledge and agree that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c)      Borrowers agree that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

(d)      Upon full payment and satisfaction of the Obligations, Borrowers shall thereupon automatically be fully, finally and forever released and discharged from any further claim, liability, or obligation in connection with the Revolving Loan and this Agreement, and Lender shall return and mark the Note as "Paid in Full" and release any and all security with respect to the Obligations. This Paragraph 12 shall survive termination of this Agreement.

13. **Remedies Cumulative; No Waiver**.  The execution, delivery and performance of this Agreement by Lender and the acceptance by Lender of the performance of Borrowers hereunder (a) shall not constitute a waiver or release by Lender of any Event of Default that may now or hereafter exist, (b) shall not constitute a novation of any of the Loan Documents, as amended, and, (c) except as expressly provided in this Agreement, shall be without prejudice to, and is not a waiver or release of, Lender's rights at any time in the future to exercise any and all rights conferred upon Lender by any of the Loan Documents or otherwise at law or in equity, including but not limited to the right to institute collection proceedings against Borrowers and/or to exercise any right against any other person or entity not a party to this Agreement.

14. **Cooperation Upon Default**.  Upon the expiration of the Forbearance Period including any mutually agreed upon extensions thereof without Borrowers having made a lump sum payment to Lender in order to satisfy in full the Obligations due and owing to Lender or the occurrence of a Terminable Event, Borrowers also shall, if requested by Lender, assist Lender in the orderly liquidation of the Collateral securing the Obligations (the "Turnover of Assets"). In implementing the Turnover of Assets, Borrowers agree as follows:

(a)      Borrowers will cooperate with Lender in the consensual and orderly

003533

liquidation of the Collateral securing any of the Obligations.

(b)    Borrowers acknowledge that they have received commercially reasonable, timely, and accurate notice of an Event of Default, and Borrowers agree that such notice satisfies all requirements of notice under the Loan Documents and applicable law.

15. **Representations and Warranties**. To induce Lender to enter into this Agreement and as partial consideration for the terms and conditions contained herein, Borrowers represent and warrant, each and all of which shall survive the execution and delivery of this Agreement and all of the other documents executed in connection herewith, that all corporate actions required to be taken by Borrowers for the authorization, execution, delivery and performance of this Agreement and any other documents contemplated hereby have been taken. This Agreement is, and any documents executed pursuant hereto will be legal, valid, and binding obligations of the party or parties thereto, enforceable against each such party in accordance with their respective terms, subject only to bankruptcy, insolvency, reorganization, moratorium and other laws or equitable principles affecting creditors' rights generally.

16. **Counsel.** Borrowers acknowledge that they have read and understand this Agreement, that they have had the ability to consult with an attorney of their own choosing before signing this Agreement, have been afforded an opportunity to deliberate as to whether to enter into this Agreement, that they understand the terms and effects of this Agreement, and that they execute this Agreement voluntarily.

17. **Construction.** This Agreement shall be liberally construed in order to effectuate the rights, benefits, and remedies of each party, as expressed herein, and neither the express language herein nor any principles of interpretation shall be impaired or adversely affected by the language of any prior discussion, form or draft of this Agreement. This Agreement has been the subject of negotiations by the parties, and this Agreement shall not be construed against any party merely because of such party's involvement in its initial preparation and negotiation. Except as modified by this Agreement, the Loan Documents shall remain in full force and effect.

18. **Governing Law.** This Agreement is governed by the laws of the State of Texas. The Parties agree that the Choice of Forum; Consent to Service of Process and Jurisdiction provisions set forth in Section 13.6 of the Loan Agreement shall apply to this Agreement.

19. **Counterparts. Facsimile.** This Agreement may be executed and delivered (including by facsimile or Portable Document Format (pdf) transmission) in one or more counterparts, all of which will be considered one and the same agreement and will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties. Facsimile or pdf transmission of any signed original document or retransmission of any signed facsimile or pdf transmission will be deemed the same as delivery of an original. At the request of any party, the other parties will confirm facsimile or pdf transmission by signing a duplicate original document.

4839-5676-7565 v2

2921440-000020 08/14/2017

**IN WITNESS WHEREOF**, the Parties have executed this Agreement to be effective as of the Effective Date.

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation**

By: _____
    **L. Geoffrey Greulich, CEO**

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation**

By: _____
    **L. Geoffrey Greulich, CEO**

**RADIANS WAREHAM HOLDING, INC., a Nevada corporation**

By: _____
    **Ruth Tutor, CFO**

STATE OF TEXAS
COUNTY OF _____

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION**, the within named bargainor, a California corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the _____day of August, 2017.

_____
Notary Public

My Commission Expires:

_____

STATE OF TEXAS
COUNTY OF _____

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION**, the within named bargainor, a Nevada corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the _____ day of August, 2017.

_____
Notary Public

My Commission Expires:

_____

4839-5676-7565 v2

2921440-000020 08/14/2017

STATE OF TENNESSEE
COUNTY OF SHELBY

     Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **Ruth Tutor**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the _____ of **RADIANS WAREHAM HOLDING, INC.,** the within named bargainor, a Nevada corporation, and that she as such_____, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such_____.

     WITNESS my hand and seal at office, on this the _____ day of August, 2017.


_____
Notary Public

My Commission Expires:


_____

4839-5676-7565 v2

2921440-000020 08/14/2017

**003537**

# EXHIBIT 19

## Childress, Frank

| | |
|---|---|
| **From:** | Childress, Frank |
| **Sent:** | Tuesday, August 15, 2017 3:01 PM |
| **To:** | 'John McIlvery' |
| **Subject:** | RE: IRONCLAD/RADIANS |
| **Attachments:** | Ironclad-Radians  Forbearance Agreement 4839-5676-7565 v.4.docx; Redlinet to Ironclad Forbearance Agreementt.pdf |

John,
See updated Forbearance Agreement and redline reflecting the minor edits made. The Signature pages did not change. I will get the letter prepared now in anticipation receipt of your signatures.
Thanks
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

**From:** John McIlvery [mailto:jmcilvery@stubbsalderton.com]
**Sent:** Tuesday, August 15, 2017 2:31 PM
**To:** Childress, Frank
**Subject:** RE: IRONCLAD/RADIANS

Ok.  We need to receive the withdrawal letter before 2:30, to avoid having to file an 8-K announcing the acceleration.  I hope to send you our signatures to the forbearance shortly.  After that, if we can at least get your withdrawal, that would avoid the 8-K.

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Tuesday, August 15, 2017 12:21 PM
**To:** John McIlvery <jmcilvery@stubbsalderton.com>
**Subject:** RE: IRONCLAD/RADIANS

The withdrawal letter will come under my signature. On prior occasions your client has signed the forbearance first, but that should not be an issue. If we go forward I will need to slightly revise the Agreement to account for the Withdrawal letter.
Regards,
Frank

**E. Franklin Childress, Jr.**
Shareholder

1

003585

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years
in a Row!**

---

**From:** John McIlvery [mailto:jmcilvery@stubbsalderton.com]
**Sent:** Tuesday, August 15, 2017 2:17 PM
**To:** Childress, Frank
**Subject:** RE: IRONCLAD/RADIANS

Frank,

I'm still waiting to hear back on the agreement.  If the parties agree on terms, are you in a position to
deliver the signed forbearance and withdrawal letter, or do you still need to collect signatures?

John

---

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Tuesday, August 15, 2017 11:21 AM
**To:** John McIlvery <jmcilvery@stubbsalderton.com>
**Cc:** Louis A. Wharton <lwharton@stubbsalderton.com>
**Subject:** RE: IRONCLAD/RADIANS

John,
I know that the client contact is having a medical procedure this afternoon and had indicated to me he
would be unavailable after noon our time so doubt Geoff has or will be able to make contact this
afternoon, so he may need to go ahead and make a decision on the forbearance offered.
Regards,
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and
Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for
Seven Years in a Row!**

2

003586

**From:** John McIlvery [mailto:jmcilvery@stubbsalderton.com]
**Sent:** Tuesday, August 15, 2017 12:21 PM
**To:** Childress, Frank
**Cc:** Louis A. Wharton
**Subject:** RE: IRONCLAD/RADIANS

Frank,

I discussed with Geoff, and understand that he will speak directly with your client about the length of the forbearance. Assuming they resolve this remaining item, we should be in a position to sign today. We hope to hear soon.

Thanks,

John

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Tuesday, August 15, 2017 6:41 AM
**To:** John McIlvery <jmcilvery@stubbsalderton.com>
**Cc:** Louis A. Wharton <lwharton@stubbsalderton.com>
**Subject:** RE: IRONCLAD/RADIANS

John,
I heard back from the client. They indicated that in discussions with Geoff, it was indicated that the minimum amount of time needed was a week. At this point they are unwilling to forbear past the 21st. Please let me know how you wish to proceed.
Thanks
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
Direct: 901.577.2147
Fax: 901.577.0845
Mobile: 901.340.5505
E-mail: fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

**From:** John McIlvery [mailto:jmcilvery@stubbsalderton.com]
**Sent:** Monday, August 14, 2017 5:55 PM
**To:** Childress, Frank
**Cc:** Louis A. Wharton
**Subject:** RE: IRONCLAD/RADIANS

Thanks Frank.

3

The only comment we have on the Forbearance is with respect to the term. Ironclad was expecting forbearance for two weeks, which was discussed on Friday. Based on conversations with potential lenders willing to take out Radians, this the minimum time it will take to get a new loan in place. We won't be in a position to get a new facility done in 7 days. Please let me know if Radians will extend this until the 28th?

I am also waiting on confirmation of the outstanding debt in Recital D. I hope to get that sign off from the company shortly.

Thanks,

John

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Monday, August 14, 2017 2:33 PM
**To:** John McIlvery <jmcilvery@stubbsalderton.com>
**Cc:** Louis A. Wharton <lwharton@stubbsalderton.com>
**Subject:** RE: IRONCLAD/RADIANS

John,
Just spoke with the client and they are ok with the issuance of the rescission letter. Please let me know if other than including reference in the Forbearance Agreement if your clients are willing to proceed with the Forbearance.
Thanks
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
Direct: 901.577.2147
Fax: 901.577.0845
Mobile: 901.340.5505
E-mail: fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

**From:** John McIlvery [mailto:jmcilvery@stubbsalderton.com]
**Sent:** Monday, August 14, 2017 3:31 PM
**To:** Childress, Frank
**Cc:** Louis A. Wharton
**Subject:** RE: IRONCLAD/RADIANS

Frank,

In addition to the forbearance agreement, will Radians also be rescinding the acceleration notice, similar to rescission provided with the last forbearance (copy attached)?

4

John

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Monday, August 14, 2017 11:44 AM
**To:** Louis A. Wharton <lwharton@stubbsalderton.com>; John McIlvery
<jmcilvery@stubbsalderton.com>
**Subject:** IRONCLAD/RADIANS

John and Louie,
Our respective clients met at the end of the week. It is my understanding that
your clients requested a further forbearance and Radians agreed to a one week
forbearance from today's date. Attached please find my draft of the
Forbearance Agreement.  I just called for Louie and understand that he is out
this week so wanted to get this to you John.
Please let me know if you have questions.
Thanks
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and
abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee,
Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to
Work For®" for Seven Years in a Row!**

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S.
federal tax issues is contained in this communication (including in any attachments and, if this
communication is by email, then in any part of the same series of emails), such advice was not intended or
written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be
used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing
or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It
is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this
electronic mail transmission in error, please delete it from your system without copying it, and notify the
sender by reply e-mail, so that our address record can be corrected.

003589

## FORBEARANCE AGREEMENT

THIS **FORBEARANCE AGREEMENT** ("Agreement") is made and entered into as of the 14th day of August, 2017 (the "Effective Date"), by and among **RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation (the "Lender" or "Radians"), and **IRONCLAD PERFORMANCE WEAR CORPORATION,** a California corporation ("Ironclad California") and **IRONCLAD PERFORMANCE WEAR CORPORATION,** a Nevada corporation ("Ironclad Nevada" individually, collectively, and interchangeably with Ironclad California, the "Borrowers") The Borrowers, together with Radians are collectively referred to as the "Parties".

### RECITALS

A. On or about November 28, 2014, Capital One, National Association, a National Banking Association, provided Borrowers with a revolving credit facility (the "Revolving Loan"). Pursuant to that certain General Assignment and Assumption of Loan Documents and that certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement with Capital One, National Association, Radians is the owner and holder of the Loan Documents (as defined below) relating to the Revolving Loan.

B. The Revolving Loan is evidenced by the following described documentation:

   i. That certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, the Sixth Modification Agreement dated May 10, 2017, and that certain Forbearance and Modification Agreement dated August 1, 2017 ("the Loan Agreement").

   ii. That certain Second Amended and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal amount of $8,000,000.00 as amended by the Forbearance and Modification Agreement dated August 1, 2017 (the "Note").

   iii. That certain UCC-1 Financing Statement filed by Capital One, National Association with the California Secretary of State on December 18, 2014, under Document No. 14-7441632305 affecting the Collateral (as defined in the Loan Agreement) more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No. 62925880003.

   iv. That certain UCC-1 Financing Statement filed by Capital One, National Association with the Nevada Secretary of State on December 12, 2014, under

Document No. 2014031733-1 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No.2017020461-7.

v.     That certain Warehouse Waiver and Consent dated March 31, 2015, executed by Advantage Media Services, Inc. in favor of Capital One, National Association.

vi.    That certain Landlord Waiver and Consent dated April 2, 2015, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association.

vii.   That certain Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement dated March 7, 2015 with accompanying exhibits referenced therein.

viii.  That certain General Assignment and Assumption of Loan Documents.

ix.    That certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement.

C.   The Note and the Loan Agreement, together with all documents evidencing, or referring, or relating to the Revolving Loan are hereinafter collectively referred to as the "Loan Documents".

D.   The balance owing on the Note as of August 14, 2017, is an amount of $3,977,268.09 (the "Obligations"). Interest continues to accrue on the Obligations from and after August 14, 2017, as provided in the Note.

E.   By letter of July 26, 2017 (the "July 26 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

F.   By letter of August 1, 2017, Radians notified Borrowers that without waiving the occurrence of Events of Default, the July 26 Letter was rescinded as of July 26, 2017.

G.   Effective as of August 1, 2017, Borrowers and Radians entered that certain Forbearance and Modification Agreement providing for a Forbearance Period to allow Borrowers a period of time to satisfy the Obligations in full, during which time period Radians agreed not to seek collection of the Obligations, except on the occurrence of a Terminable Event as defined in the Forbearance and Modification Agreement.   The Forbearance and Modification Agreement further provided for modification of the Second Amended and Restated Revolving Line of Credit Note and Loan Agreement as provided therein.

H.   Under the terms of the Forbearance and Modification Agreement, the Forbearance Period expired on the Forbearance Termination Date of August 7, 2017, as Borrowers had failed to satisfy the Obligations on or before the Forbearance Termination Date.

I.  The Forbearance and Modification Agreement further provided that upon the occurrence of the Forbearance Termination Date, Radians may exercise any and all rights and remedies available to Lender provided in the Loan Documents or the Forbearance and Modification Agreement.

J.  By letter of August 9, 2017 (the "August 9 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

K.  By letter of August 15, 2017, Radians notified Borrowers that without waiving the occurrence of Events of Default, the August 9 Letter was rescinded as of August 9, 2017.

L.  K.As a result of the occurrence of Events of Default, Lender has certain rights and remedies under the Loan Documents. Borrowers have requested that Lender further forbear in the exercise of its remedies under the Loan Documents for a period of time specified herein to satisfy the Obligations in full.

M.  L.Lender is willing to further forbear from the exercise of its rights and remedies under the Loan Documents as a result of the occurrence of Events of Default, but only on the terms and conditions set forth herein.

<strong>AGREEMENT</strong>

NOW, THEREFORE, for and in consideration of the foregoing recitals, the covenants herein set forth and confirmed, the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, Borrowers and Lender agree as of the Effective Date as follows:

1.  **Acknowledgement of Recitals**.  Borrowers and Lender acknowledge and agree that the foregoing "Recitals" are true, correct, and complete.

2.  **Acknowledgement of Obligations by Borrowers**. Borrowers acknowledge and agree that Borrowers are indebted to Lender for repayment of the Obligations, including all accrued interest accrued thereon. Borrowers further acknowledge that they are responsible for all fees, expenses and charges as allowed under the Loan Documents. Borrowers hereby reaffirm and ratify the terms of the Loan Documents, as amended herein, and acknowledge that they are enforceable in accordance with their terms.

3.  **Acknowledgement of Security Interests**. Borrowers acknowledge the validity and enforceability of the security interests in the Collateral granted in favor of Lender under the Loan Documents executed by Borrowers.

4.  **Acknowledgement of Events of Default**. Borrowers have previously acknowledged in the Forbearance and Modification Agreement that in accordance with Sections 10(b) and (c) of the Loan Agreement, Events of Default have occurred for failure to provide materially complete

and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

5. **Acknowledgment of Termination of Requirement to Make Further Advances Under the Note**. Borrowers acknowledge that in accordance with Section 2.2 of the Loan Agreement, as Events of Default have occurred and are continuing, Radians is not required to make further advances under the Loan.

6. **Acknowledgement of Lack of Defenses**. Borrowers acknowledge that as of the Effective Date each has no defense, counterclaim, offset, cross complaint, claim or demand of any kind or nature whatsoever (collectively, the "Borrower Claims") that can be asserted to reduce or eliminate all or any part of its liability to repay any of the Obligations to Lender or seek affirmative relief for damages of any kind or nature from Lender, which Borrower Claims arise out of or are related to the Loan Documents or, more generally, Borrowers' relationship with Lender. To the extent that any such Borrower Claims exist as of the Effective Date, Borrowers acknowledge and agree that they have been fully, forever and irrevocably released pursuant to Paragraph 12 hereto.

7. **Forbearance**.

(a)    Lender will forbear from exercising any remedies available to it under the Loan Documents from the Effective Date through and including the Forbearance Termination Date, as further defined below (the "Forbearance Period"), and will not seek collection of the Obligations from Borrowers, except as set forth herein, initiate or join in filing any involuntary bankruptcy petition with respect to Borrowers under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") or otherwise file or participate in any involuntary insolvency, reorganization, moratorium, receivership, or other similar proceedings initiated against Borrowers under the laws of the United States other than in response to protect its interest as a secured creditor; provided, however, that the Forbearance Period shall terminate and Lender shall be permitted to enforce or exercise any remedies available to it under the Loan Documents if: (i) Borrowers materially breach, default, or fail to perform any obligation or agreement contained in this Agreement; (ii) any case or other proceeding is instituted by or against the Borrowers under any state or federal law relating to the bankruptcy of debtors, including without limitation, the Bankruptcy Code; (iii) any Event of Default other than any existing Event of Default occurs under any of the Loan Documents as modified by this Agreement and all of the other documents executed in connection herewith; (iv) Borrowers fail to meet any deadline established under this Agreement for providing required payment, confirmation or documentation; or (v) any of the acknowledgments, warranties or representations of the Borrowers set forth herein shall be untrue or inaccurate in any material respect as of the date made. Each of the foregoing events is hereinafter referred to as a "Terminable Event."

(b)    Subject to the termination set forth in Paragraph 7(a), and unless otherwise agreed to in writing by Lender, the Forbearance Period will terminate at 5:00 o'clock Central Time on **August 21, 2017** (the "Forbearance Termination Date").

8. **Actions Authorized Upon a Terminable Event or the Occurrence of the Forbearance Termination Date.**    Upon the occurrence of a Terminable Event or the Forbearance Termination Date, Lender may exercise any and all rights and remedies available to Lender provided in the Loan Documents or this Agreement.

9. **Adequate Consideration.** Borrowers each hereby acknowledge and agree that Lender's agreed forbearance and extended time for repayment of the Obligations constitutes full and adequate consideration for the execution and delivery by Borrowers of this Agreement. Borrowers materially benefit by the forbearance and agreements of Lender contained in this Agreement. Borrower stipulates that it has the authority and authorization to execute this Agreement.

10. **Liens Unaffected.** Nothing in this Agreement shall adversely affect, invalidate, discharge, release, or impair any security or the Collateral (including, without limitation, the liens and security interests granted in the Loan Documents held by the Lender or the indebtedness secured thereby or the priority of the security interests of such security, which priority of the security interests shall remain unaffected and unimpaired).

11. **Conditions Precedent.** As conditions precedent to Lender's obligation to forbear hereunder, Borrower agree as follows:

    (a)    To comply with the provisions and conditions of this Agreement;

    (b)    Borrowers shall execute this Agreement;

    (c)    Borrowers shall provide to Lender any and all existing documents reasonably requested by Lender relating to the operation of Borrowers' business; and

    (d)    Borrowers shall continue to use the Lockbox as required under the Loan Agreement with access to funds deposited in the Lockbox Account being governed by that certain Deposit Account Control Agreement executed among Borrowers, Radians and Capital One, National Association.

12. **Release of Lender.**

    (a)    Except with respect to Lender's obligations set forth in this Agreement, in consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrowers, and each of their respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set off,

4839-5676-7565 v4
2921440-000020 08/15/2017

demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Borrowers or any of their respective heirs, successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions thereunder or related thereto.

(b)     Borrowers understand, acknowledge and agree that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c)     Borrowers agree that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

(d)     Upon full payment and satisfaction of the Obligations, Borrowers shall thereupon automatically be fully, finally and forever released and discharged from any further claim, liability, or obligation in connection with the Revolving Loan and this Agreement, and Lender shall return and mark the Note as "Paid in Full" and release any and all security with respect to the Obligations. This Paragraph 12 shall survive termination of this Agreement.

13. **Remedies Cumulative; No Waiver**.  The execution, delivery and performance of this Agreement by Lender and the acceptance by Lender of the performance of Borrowers hereunder (a) shall not constitute a waiver or release by Lender of any Event of Default that may now or hereafter exist, (b) shall not constitute a novation of any of the Loan Documents, as amended, and, (c) except as expressly provided in this Agreement, shall be without prejudice to, and is not a waiver or release of, Lender's rights at any time in the future to exercise any and all rights conferred upon Lender by any of the Loan Documents or otherwise at law or in equity, including but not limited to the right to institute collection proceedings against Borrowers and/or to exercise any right against any other person or entity not a party to this Agreement.

14. **Cooperation Upon Default**. Upon the expiration of the Forbearance Period including any mutually agreed upon extensions thereof without Borrowers having made a lump sum payment to Lender in order to satisfy in full the Obligations due and owing to Lender or the occurrence of a Terminable Event, Borrowers also shall, if requested by Lender, assist Lender in the orderly liquidation of the Collateral securing the Obligations (the "Turnover of Assets"). In implementing the Turnover of Assets, Borrowers agree as follows:

(a)     Borrowers will cooperate with Lender in the consensual and orderly liquidation of the Collateral securing any of the Obligations.

(b)     Borrowers acknowledge that they have received commercially reasonable, timely, and accurate notice of an Event of Default, and Borrowers agree that such notice satisfies

4839-5676-7565 v4
2921440-000020 08/15/2017

all requirements of notice under the Loan Documents and applicable law.

15. **Representations and Warranties**. To induce Lender to enter into this Agreement and as partial consideration for the terms and conditions contained herein, Borrowers represent and warrant, each and all of which shall survive the execution and delivery of this Agreement and all of the other documents executed in connection herewith, that all corporate actions required to be taken by Borrowers for the authorization, execution, delivery and performance of this Agreement and any other documents contemplated hereby have been taken. This Agreement is, and any documents executed pursuant hereto will be legal, valid, and binding obligations of the party or parties thereto, enforceable against each such party in accordance with their respective terms, subject only to bankruptcy, insolvency, reorganization, moratorium and other laws or equitable principles affecting creditors' rights generally.

16. **Counsel.** Borrowers acknowledge that they have read and understand this Agreement, that they have had the ability to consult with an attorney of their own choosing before signing this Agreement, have been afforded an opportunity to deliberate as to whether to enter into this Agreement, that they understand the terms and effects of this Agreement, and that they execute this Agreement voluntarily.

17. **Construction.** This Agreement shall be liberally construed in order to effectuate the rights, benefits, and remedies of each party, as expressed herein, and neither the express language herein nor any principles of interpretation shall be impaired or adversely affected by the language of any prior discussion, form or draft of this Agreement. This Agreement has been the subject of negotiations by the parties, and this Agreement shall not be construed against any party merely because of such party's involvement in its initial preparation and negotiation. Except as modified by this Agreement, the Loan Documents shall remain in full force and effect.

18. **Governing Law**. This Agreement is governed by the laws of the State of Texas. The Parties agree that the Choice of Forum; Consent to Service of Process and Jurisdiction provisions set forth in Section 13.6 of the Loan Agreement shall apply to this Agreement.

19. **Counterparts, Facsimile**. This Agreement may be executed and delivered (including by facsimile or Portable Document Format (pdf) transmission) in one or more counterparts, all of which will be considered one and the same agreement and will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties. Facsimile or pdf transmission of any signed original document or retransmission of any signed facsimile or pdf transmission will be deemed the same as delivery of an original. At the request of any party, the other parties will confirm facsimile or pdf transmission by signing a duplicate original document.

4839-5676-7565 v4
2921440-000020 08/15/2017

**IN WITNESS WHEREOF**, the Parties have executed this Agreement to be effective as of the Effective Date.

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation**

By: _____
   **L. Geoffrey Greulich, CEO**

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation**

By: _____
   **L. Geoffrey Greulich, CEO**

**RADIANS WAREHAM HOLDING, INC., a Nevada corporation**

By: _____
   **Ruth Tutor, CFO**

4839-5676-7565 v4
2921440-000020 08/15/2017

003597

STATE OF TEXAS
COUNTY OF _____

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION,** the within named bargainor, a California corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the _____ day of August, 2017.


_____
Notary Public

My Commission Expires:

_____

STATE OF TEXAS
COUNTY OF _____

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION,** the within named bargainor, a Nevada corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the _____ day of August, 2017.


_____
Notary Public

My Commission Expires:

_____

4839-5676-7565 v4
2921440-000020 08/15/2017

STATE OF TENNESSEE
COUNTY OF SHELBY

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **Ruth Tutor**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the _____ of **RADIANS WAREHAM HOLDING, INC.,** the within named bargainor, a Nevada corporation, and that she as such_____, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such_____.

WITNESS my hand and seal at office, on this the \_\_\_\_ day of August, 2017.


_____

Notary Public

My Commission Expires:


_____

4839-5676-7565 v4
2921440-000020 08/15/2017

003599

### Comparison Details

| | |
|---|---|
| Title | **pdfDocs compareDocs Comparison Results** |
| Date & Time | 8/15/2017 2:57:31 PM |
| Comparison Time | 0.97 seconds |
| compareDocs version | v4.2.0.25 |

### Sources

| | |
|---|---|
| Original Document | c:\Users\EFC\AppData\Local\Temp\ND\Ironclad-Radians  Forbearance Agreement.docx |
| Modified Document | c:\Users\EFC\AppData\Local\Temp\ND\Ironclad-Radians  Forbearance Agreement(1).docx |

### Comparison Statistics

| | |
|---|---|
| Insertions | 5 |
| Deletions | 2 |
| Changes | 2 |
| Moves | 0 |
| TOTAL CHANGES | 9 |
| | |
| | |
| | |
| | |
| | |

### Word Rendering Set Markup Options

| Name | BDBCB Standard |
|---|---|
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Formatting | Color only. |
| Changed lines | Mark left border. |
| Comments color | By Author. |
| Balloons | True |

### compareDocs Settings Used

| | Category | Option Selected |
|---|---|---|
| Open Comparison Report after Saving | General | Always |
| Report Type | Word | Formatting |
| Character Level | Word | False |
| Include Headers / Footers | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include List Numbers | Word | True |
| Include Tables | Word | True |
| Include Field Codes | Word | True |
| Include Moves | Word | True |
| Show Track Changes Toolbar | Word | False |
| Show Reviewing Pane | Word | True |
| Update Automatic Links at Open | Word | False |
| Summary Report | Word | End |
| Include Change Detail Report | Word | Separate |
| Document View | Word | Print |
| Remove Personal Information | Word | False |
| Flatten Field Codes | Word | False |

003600

# ncapobianco

Wednesday, April 17, 2019
12:25:24
Redline of Chelsea Rossetti Offer Letter(110753311_1).PDF

# EXHIBIT 20

## FORBEARANCE AGREEMENT

THIS **FORBEARANCE AGREEMENT** ("Agreement") is made and entered into as of the 14th day of August, 2017 (the "Effective Date"), by and among **RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation (the "Lender" or "Radians"), and **IRONCLAD PERFORMANCE WEAR CORPORATION**, a California corporation ("Ironclad California") and **IRONCLAD PERFORMANCE WEAR CORPORATION**, a Nevada corporation ("Ironclad Nevada" individually, collectively, and interchangeably with Ironclad California, the "Borrowers") The Borrowers, together with Radians are collectively referred to as the "Parties".

## RECITALS

A. On or about November 28, 2014, Capital One, National Association, a National Banking Association, provided Borrowers with a revolving credit facility (the "Revolving Loan"). Pursuant to that certain General Assignment and Assumption of Loan Documents and that certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement with Capital One, National Association, Radians is the owner and holder of the Loan Documents (as defined below) relating to the Revolving Loan.

B. The Revolving Loan is evidenced by the following described documentation:

    i.    That certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, the Sixth Modification Agreement dated May 10, 2017, and that certain Forbearance and Modification Agreement dated August 1, 2017 ("the Loan Agreement").

    ii.    That certain Second Amended and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal amount of $8,000,000.00 as amended by the Forbearance and Modification Agreement dated August 1, 2017 (the "Note").

    iii.    That certain UCC-1 Financing Statement filed by Capital One, National Association with the California Secretary of State on December 18, 2014, under Document No. 14-7441632305 affecting the Collateral (as defined in the Loan Agreement) more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No. 62925880003.

    iv.    That certain UCC-1 Financing Statement filed by Capital One, National Association with the Nevada Secretary of State on December 12, 2014, under

Document No. 2014031733-1 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No.2017020461-7.

v.   That certain Warehouse Waiver and Consent dated March 31, 2015, executed by Advantage Media Services, Inc. in favor of Capital One, National Association.

vi.   That certain Landlord Waiver and Consent dated April 2, 2015, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association.

vii.   That certain Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement dated March 7, 2015 with accompanying exhibits referenced therein.

viii.   That certain General Assignment and Assumption of Loan Documents.

ix.   That certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement.

C.   The Note and the Loan Agreement, together with all documents evidencing, or referring, or relating to the Revolving Loan are hereinafter collectively referred to as the "Loan Documents".

D.   The balance owing on the Note as of August 14, 2017, is an amount of $3,977,268.09 (the "Obligations"). Interest continues to accrue on the Obligations from and after August 14, 2017, as provided in the Note.

E.   By letter of July 26, 2017 (the "July 26 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

F.   By letter of August 1, 2017, Radians notified Borrowers that without waiving the occurrence of Events of Default, the July 26 Letter was rescinded as of July 26, 2017.

G.   Effective as of August 1, 2017, Borrowers and Radians entered that certain Forbearance and Modification Agreement providing for a Forbearance Period to allow Borrowers a period of time to satisfy the Obligations in full, during which time period Radians agreed not to seek collection of the Obligations, except on the occurrence of a Terminable Event as defined in the Forbearance and Modification Agreement.   The Forbearance and Modification Agreement further provided for modification of the Second Amended and Restated Revolving Line of Credit Note and Loan Agreement as provided therein.

H.   Under the terms of the Forbearance and Modification Agreement, the Forbearance Period expired on the Forbearance Termination Date of August 7, 2017, as Borrowers had failed to satisfy the Obligations on or before the Forbearance Termination Date.

I.   The Forbearance and Modification Agreement further provided that upon the occurrence of the Forbearance Termination Date, Radians may exercise any and all rights and remedies available to Lender provided in the Loan Documents or the Forbearance and Modification Agreement.

J.   By letter of August 9, 2017 (the "August 9 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

K.   By letter of August 15, 2017, Radians notified Borrowers that without waiving the occurrence of Events of Default, the August 9 Letter was rescinded as of August 9, 2017.

L.   As a result of the occurrence of Events of Default, Lender has certain rights and remedies under the Loan Documents. Borrowers have requested that Lender further forbear in the exercise of its remedies under the Loan Documents for a period of time specified herein to satisfy the Obligations in full.

M.   Lender is willing to further forbear from the exercise of its rights and remedies under the Loan Documents as a result of the occurrence of Events of Default, but only on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals, the covenants herein set forth and confirmed, the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, Borrowers and Lender agree as of the Effective Date as follows:

1.   **Acknowledgement of Recitals**.  Borrowers and Lender acknowledge and agree that the foregoing "Recitals" are true, correct, and complete.

2.   **Acknowledgement of Obligations by Borrowers**. Borrowers acknowledge and agree that Borrowers are indebted to Lender for repayment of the Obligations, including all accrued interest accrued thereon. Borrowers further acknowledge that they are responsible for all fees, expenses and charges as allowed under the Loan Documents. Borrowers hereby reaffirm and ratify the terms of the Loan Documents, as amended herein, and acknowledge that they are enforceable in accordance with their terms.

3.   **Acknowledgement of Security Interests**. Borrowers acknowledge the validity and enforceability of the security interests in the Collateral granted in favor of Lender under the Loan Documents executed by Borrowers.

4.   **Acknowledgement of Events of Default**. Borrowers have previously acknowledged in the Forbearance and Modification Agreement that in accordance with Sections 10(b) and (c) of the Loan Agreement, Events of Default have occurred for failure to provide materially complete

and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

5. **Acknowledgment of Termination of Requirement to Make Further Advances Under the Note**. Borrowers acknowledge that in accordance with Section 2.2 of the Loan Agreement, as Events of Default have occurred and are continuing, Radians is not required to make further advances under the Loan.

6. **Acknowledgement of Lack of Defenses**. Borrowers acknowledge that as of the Effective Date each has no defense, counterclaim, offset, cross complaint, claim or demand of any kind or nature whatsoever (collectively, the "Borrower Claims") that can be asserted to reduce or eliminate all or any part of its liability to repay any of the Obligations to Lender or seek affirmative relief for damages of any kind or nature from Lender, which Borrower Claims arise out of or are related to the Loan Documents or, more generally, Borrowers' relationship with Lender. To the extent that any such Borrower Claims exist as of the Effective Date, Borrowers acknowledge and agree that they have been fully, forever and irrevocably released pursuant to Paragraph 12 hereto.

7. **Forbearance**.

(a)    Lender will forbear from exercising any remedies available to it under the Loan Documents from the Effective Date through and including the Forbearance Termination Date, as further defined below (the "Forbearance Period"), and will not seek collection of the Obligations from Borrowers, except as set forth herein, initiate or join in filing any involuntary bankruptcy petition with respect to Borrowers under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") or otherwise file or participate in any involuntary insolvency, reorganization, moratorium, receivership, or other similar proceedings initiated against Borrowers under the laws of the United States other than in response to protect its interest as a secured creditor; provided, however, that the Forbearance Period shall terminate and Lender shall be permitted to enforce or exercise any remedies available to it under the Loan Documents if: (i) Borrowers materially breach, default, or fail to perform any obligation or agreement contained in this Agreement; (ii) any case or other proceeding is instituted by or against the Borrowers under any state or federal law relating to the bankruptcy of debtors, including without limitation, the Bankruptcy Code; (iii) any Event of Default other than any existing Event of Default occurs under any of the Loan Documents as modified by this Agreement and all of the other documents executed in connection herewith; (iv) Borrowers fail to meet any deadline established under this Agreement for providing required payment, confirmation or documentation; or (v) any of the acknowledgments, warranties or representations of the Borrowers set forth herein shall be untrue or inaccurate in any material respect as of the date made. Each of the foregoing events is hereinafter referred to as a "Terminable Event."

(b)    Subject to the termination set forth in Paragraph 7(a), and unless otherwise agreed to in writing by Lender, the Forbearance Period will terminate at 5:00 o'clock Central Time on **August 21, 2017** (the "Forbearance Termination Date").

8. **Actions Authorized Upon a Terminable Event or the Occurrence of the Forbearance Termination Date**. Upon the occurrence of a Terminable Event or the Forbearance Termination Date, Lender may exercise any and all rights and remedies available to Lender provided in the Loan Documents or this Agreement.

9. **Adequate Consideration**. Borrowers each hereby acknowledge and agree that Lender's agreed forbearance and extended time for repayment of the Obligations constitutes full and adequate consideration for the execution and delivery by Borrowers of this Agreement. Borrowers materially benefit by the forbearance and agreements of Lender contained in this Agreement. Borrower stipulates that it has the authority and authorization to execute this Agreement.

10. **Liens Unaffected**. Nothing in this Agreement shall adversely affect, invalidate, discharge, release, or impair any security or the Collateral (including, without limitation, the liens and security interests granted in the Loan Documents held by the Lender or the indebtedness secured thereby or the priority of the security interests of such security, which priority of the security interests shall remain unaffected and unimpaired).

11. **Conditions Precedent**. As conditions precedent to Lender's obligation to forbear hereunder, Borrower agree as follows:

       (a)    To comply with the provisions and conditions of this Agreement;

       (b)    Borrowers shall execute this Agreement;

       (c)    Borrowers shall provide to Lender any and all existing documents reasonably requested by Lender relating to the operation of Borrowers' business; and

       (d)    Borrowers shall continue to use the Lockbox as required under the Loan Agreement with access to funds deposited in the Lockbox Account being governed by that certain Deposit Account Control Agreement executed among Borrowers, Radians and Capital One, National Association.

12. **Release of Lender**.

       (a)    Except with respect to Lender's obligations set forth in this Agreement, in consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrowers, and each of their respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set off,

demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Borrowers or any of their respective heirs, successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions thereunder or related thereto.

(b)    Borrowers understand, acknowledge and agree that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c)    Borrowers agree that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

(d)    Upon full payment and satisfaction of the Obligations, Borrowers shall thereupon automatically be fully, finally and forever released and discharged from any further claim, liability, or obligation in connection with the Revolving Loan and this Agreement, and Lender shall return and mark the Note as "Paid in Full" and release any and all security with respect to the Obligations. This Paragraph 12 shall survive termination of this Agreement.

13. <u>Remedies Cumulative; No Waiver</u>.  The execution, delivery and performance of this Agreement by Lender and the acceptance by Lender of the performance of Borrowers hereunder (a) shall not constitute a waiver or release by Lender of any Event of Default that may now or hereafter exist, (b) shall not constitute a novation of any of the Loan Documents, as amended, and, (c) except as expressly provided in this Agreement, shall be without prejudice to, and is not a waiver or release of, Lender's rights at any time in the future to exercise any and all rights conferred upon Lender by any of the Loan Documents or otherwise at law or in equity, including but not limited to the right to institute collection proceedings against Borrowers and/or to exercise any right against any other person or entity not a party to this Agreement.

14. <u>Cooperation Upon Default</u>. Upon the expiration of the Forbearance Period including any mutually agreed upon extensions thereof without Borrowers having made a lump sum payment to Lender in order to satisfy in full the Obligations due and owing to Lender or the occurrence of a Terminable Event, Borrowers also shall, if requested by Lender, assist Lender in the orderly liquidation of the Collateral securing the Obligations (the "Turnover of Assets"). In implementing the Turnover of Assets, Borrowers agree as follows:

(a)    Borrowers will cooperate with Lender in the consensual and orderly liquidation of the Collateral securing any of the Obligations.

(b)    Borrowers acknowledge that they have received commercially reasonable, timely, and accurate notice of an Event of Default, and Borrowers agree that such notice satisfies

all requirements of notice under the Loan Documents and applicable law.

15. <u>Representations and Warranties</u>. To induce Lender to enter into this Agreement and as partial consideration for the terms and conditions contained herein, Borrowers represent and warrant, each and all of which shall survive the execution and delivery of this Agreement and all of the other documents executed in connection herewith, that all corporate actions required to be taken by Borrowers for the authorization, execution, delivery and performance of this Agreement and any other documents contemplated hereby have been taken. This Agreement is, and any documents executed pursuant hereto will be legal, valid, and binding obligations of the party or parties thereto, enforceable against each such party in accordance with their respective terms, subject only to bankruptcy, insolvency, reorganization, moratorium and other laws or equitable principles affecting creditors' rights generally.

16. <u>Counsel.</u> Borrowers acknowledge that they have read and understand this Agreement, that they have had the ability to consult with an attorney of their own choosing before signing this Agreement, have been afforded an opportunity to deliberate as to whether to enter into this Agreement, that they understand the terms and effects of this Agreement, and that they execute this Agreement voluntarily.

17. <u>Construction</u>. This Agreement shall be liberally construed in order to effectuate the rights, benefits, and remedies of each party, as expressed herein, and neither the express language herein nor any principles of interpretation shall be impaired or adversely affected by the language of any prior discussion, form or draft of this Agreement. This Agreement has been the subject of negotiations by the parties, and this Agreement shall not be construed against any party merely because of such party's involvement in its initial preparation and negotiation. Except as modified by this Agreement, the Loan Documents shall remain in full force and effect.

18. <u>Governing Law</u>. This Agreement is governed by the laws of the State of Texas. The Parties agree that the Choice of Forum; Consent to Service of Process and Jurisdiction provisions set forth in Section 13.6 of the Loan Agreement shall apply to this Agreement.

19. <u>Counterparts. Facsimile</u>. This Agreement may be executed and delivered (including by facsimile or Portable Document Format (pdf) transmission) in one or more counterparts, all of which will be considered one and the same agreement and will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties. Facsimile or pdf transmission of any signed original document or retransmission of any signed facsimile or pdf transmission will be deemed the same as delivery of an original. At the request of any party, the other parties will confirm facsimile or pdf transmission by signing a duplicate original document.

Case 1:17-ap-01101-MB   Doc 55-2   Filed 04/26/19   Entered 04/26/19 16:03:45   Desc
Exhibits 11 - 28   Page 88 of 136
Case 1:17-bk-12409-MB   Claim 7-1 Part 21   Filed 10/20/17   Desc Exhibit 19   Page 8
of 12
Case 1:17-bk-12408-MB   Doc 6   Filed 09/11/17   Entered 09/11/17 15:31:11   Desc
Main Document   Page 154 of 309

**IN WITNESS WHEREOF,** the Parties have executed this Agreement to be effective as of the Effective Date.

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation**

By: _____
L. Geoffrey Greulich, CEO

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation**

By: _____
L. Geoffrey Greulich, CEO

**RADIANS WAREHAM HOLDING, INC., a Nevada corporation**

By: _____
Ruth Tutor, CFO

4839-5676-7565 v2

2921440-000020 08/14/2017

STATE OF TEXAS
COUNTY OF Dallas

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared L. Geoffrey Greulich, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of IRONCLAD PERFORMANCE WEAR CORPORATION, the within named bargainor, a California corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the 15th day of August, 2017.

My Commission Expires:

05-17-2020

Notary Public

STACY METZLER
Notary Public, State of Texas
Comm. Expires 05-17-2020
Notary ID 130663860

STATE OF TEXAS
COUNTY OF Dallas

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared L. Geoffrey Greulich, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of IRONCLAD PERFORMANCE WEAR CORPORATION, the within named bargainor, a Nevada corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the 15th day of August, 2017.

My Commission Expires:

05-17-2020

Notary Public

STACY METZLER
Notary Public, State of Texas
Comm. Expires 05-17-2020
Notary ID 130663860

4839-5676-7565 v2

2921440-000020 08/14/2017

**IN WITNESS WHEREOF**, the Parties have executed this Agreement to be effective as of the Effective Date.

BORROWER:

IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation

By: _____
    L. Geoffrey Greulich, CEO

BORROWER:

IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation

By: _____
    L. Geoffrey Greulich, CEO

RADIANS WAREHAM HOLDING, INC., a Nevada corporation

By: _____
    Ruth Tutor, CFO

4839-5676-7565 v4
2921440-000020 08/15/2017

Case 1:17-ap-01101-MB    Doc 55-2    Filed 04/26/19    Entered 04/26/19 16:03:45    Desc
Exhibits 11 - 28    Page 91 of 136
Case 1:17-bk-12409-MB    Claim 7-1 Part 21    Filed 10/20/17    Desc Exhibit 19    Page
119/12
Case 1:17-bk-12408-MB    Doc 6    Filed 09/11/17    Entered 09/11/17 15:31:11    Desc
Main Document    Page 157 of 309

STATE OF TENNESSEE
COUNTY OF SHELBY

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **Ruth Tutor**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the _____CFO_____ of **RADIANS WAREHAM HOLDING, INC.**, the within named bargainor, a Nevada corporation, and that she as such_____CFO_____, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such_____CFO_____.

WITNESS my hand and seal at office, on this the 15th day of August, 2017.

_____
Notary Public

My Commission Expires:

9.4.19

ANGELA G. YORK
STATE OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY
MY COMMISSION EXPIRES 9-4-2019

4839-5676-7565 v4
2921440-000020 08/15/2017

# EXHIBIT 21

## Childress, Frank

| | |
|---|---|
| **From:** | Childress, Frank |
| **Sent:** | Monday, August 21, 2017 11:17 AM |
| **To:** | 'John McIlvery'; Louis A. Wharton (lwharton@stubbsalderton.com) |
| **Subject:** | IRONCLAD/RADIANS |

John and Louie,

My client indicated that Geoff Greulich had called him yesterday about the status of Ironclad matters. I am informed that he indicated that while alternative financing is still being pursued that Bankruptcy Counsel had been retained with the thought of pursuing a Section 363 Sale of the business assets. With the Forbearance Period expiring at 5pm Central time this afternoon, I thought it may be good for us to confer or to confer with your client's bankruptcy counsel sometime this afternoon if you agree.

Thanks,

Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

003648

# EXHIBIT 22

| | |
|---|---|
| From: | Geoff Greulich |
| To: | Ruth Tutor |
| Cc: | Angela Hall; Mike Tutor; Matthew A. Pliskin |
| Subject: | Re: Borrowing base revisions |
| Date: | Monday, August 21, 2017 3:11:44 PM |

Yesterday, Mike told me explicitly to hold off on paying both the interest and fees.

I would appreciate if you could call me right now.

Thank you.

Geoff


Geoff Greulich
Corridor Capital
Cell: 818-207-9331


On Aug 21, 2017, at 3:06 PM, Ruth Tutor <rtutor@radians.com> wrote:

> Geoff,
>
> We do not have any plans to extend the forbearance today.  Have you arranged for
> payment of the interest and attorney's fees?
>
> Regards,
>
> Ruth
>
> Ruth Tutor
> Radians, Inc.

---

**From:** Geoff Greulich [mailto:geoff.greulich@ironclad.com]
**Sent:** Monday, August 21, 2017 2:47 PM
**To:** Ruth Tutor <rtutor@radians.com>
**Cc:** Angela Hall <ahall@radians.com>; Mike Tutor <mst@radians.com>; Matthew A. Pliskin (matthewpliskin@gmail.com) <matthewpliskin@gmail.com>
**Subject:** RE: Borrowing base revisions

Hi Ruth –

I have been trying to reach Mike but he is in meetings.  We will need the extension
the forbearance in the next hour so we can file our 8K by 5:00 PM EST.



EXHIBIT
Tutor
31
11 20 17

Can you please call me so we can get the latest from you?

Thank you,

Geoff

**From:** Ruth Tutor [mailto:rtutor@radians.com]
**Sent:** Friday, August 18, 2017 10:25 AM
**To:** Geoff Greulich <geoff.greulich@ironclad.com>
**Cc:** Angela Hall <ahall@radians.com>; Mike Tutor <mst@radians.com>
**Subject:** Borrowing base revisions

Geoff,

Please see attached for commentary and revisions to the June borrowing base.

Ruth

Ruth Tutor
Radians, Inc. | 5305 Distriplex Farms Dr | Memphis TN 38141
Direct 901.266.2522 | Mobile 901.828.3757 | Toll Free 877.723.4267
rtutor@radians.com | www.radians.com

E-MAIL CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it.

# EXHIBIT 23

## Childress, Frank

| | |
|---|---|
| **From:** | Geoff Greulich <geoff.greulich@ironclad.com> |
| **Sent:** | Monday, August 21, 2017 4:32 PM |
| **To:** | Childress, Frank; Ron Bender |
| **Cc:** | Scott Alderton; Jim McAlister; Matthew A. Pliskin (matthewpliskin@gmail.com); Mike Tutor (mst@radians.com); Ruth Tutor (rtutor@radians.com) |
| **Subject:** | Introduction |

Frank–

Mike Tutor suggested that I introduce you to our bankruptcy attorney, Ron Bender.

As both of you know, Mike and I have had 2 or 3 constructive discussions on the possibility of working together on a pre-arranged bankruptcy with Radians providing the DIP financing and assuming the stocking horse bidder position at an asset valuation of approximately $25MM.

I am sure that we will have many questions on how this might work but I believe the best step now is to have the two of you connect and begin the dialogue on how this might be structured.

Please let me know if you have any questions.

Geoff

**From:** Childress, Frank [mailto:fchildress@bakerdonelson.com]
**Sent:** Wednesday, August 9, 2017 4:50 PM
**To:** Geoff Greulich <geoff.greulich@ironclad.com>; Jim McAlister <jimm@ironclad.com>
**Cc:** Louis A. Wharton (lwharton@stubbsalderton.com) <lwharton@stubbsalderton.com>
**Subject:** Notice of Default, Acceleration and Demand for Payment

Gentlemen,
Please see attached letter.
Thank you for your consideration,
Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
In Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

1

003335

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this communication (including in any attachments and, if this communication is by email, then in any part of the same series of emails), such advice was not intended or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

003336

# EXHIBIT 24

## Childress, Frank

| | |
|---|---|
| **From:** | Geoff Greulich <geoff.greulich@ironclad.com> |
| **Sent:** | Thursday, August 24, 2017 11:45 AM |
| **To:** | Childress, Frank |
| **Cc:** | Matthew Pliskin |
| **Subject:** | FW: JGB Agreement |
| **Attachments:** | JGB Agreement.pdf |

Frank –

Mike and I just got off a call and he asked me to send this to you directly. As you know, we have asked repeatedly that we get a forbearance through the first of September so that we can take out the debt as Radians has requested. Attached is the executed term sheet. We have had several diligence calls and are receiving the first draft of the documents today.

My best,

Geoff



**Geoff Greulich**
**CEO**
Ironclad Performance Wear Corp.
p: 972-996-5664  c: 818-207-9331
a: 1920 Hutton Court #300, Farmers Branch, TX 75234, USA
w: www.ironclad.com | www.konggloves.com | www.ironcladexo.com

1

003656

JGB Management Inc.
21 Charles St, Suite 160
Westport, CT 06880
Phone: 1-212-355-5771
Fax: 1-212-253-4093



**JGB Management Inc.**

### Ironclad Performance Wear Corporation (ICPW)

The following outlines the terms of a proposed transaction with Ironclad Performance Wear Corporation (ICPW), (the "Company") by JGB Management Inc. or its affiliates or designees ("Investors"). Until definitive documentation is executed by all parties, there shall not exist any binding obligation, other than as described in the sections entitled "Reimbursement" and "Exclusivity" on any party. This term sheet does not constitute a contractual commitment of the Company or Investors but merely represents proposed terms for the proposed transaction.

| | |
|---|---|
| **Company:** | Ironclad Performance Wear Corporation (ICPW) |
| **Security Issued:** | Senior Secured loan |
| **Funded Amount:** | $5,███000 USD |
| **Face Amount:** | $5,███ USD, █% OID |
| **Use of Proceeds:** | Refinance existing debt and fund operations |
| **Coupon:** | 10% per annum, paid monthly in cash |
| **Conversion Feature:** | Convertible at 30 cents |
| **Put Option:** | Interest only for █ months, thereafter JGB, at its option, can put up to $█████ per month |
| **Rank:** | Senior Secured at the Company, by all current and future assets. Only debt at the Company other than trade payables. |
| **Maturity:** | 3 years |
| **Exit Fee:** | ██% of original face at maturity or upon sale of company. To the extent JGB has converted any portion of the note, the exit fee will pertain only to remaining principal amount. The exit fee will not be reduced for the reduction of principal due to monthly puts. |
| **Timing:** | On or before September 5, 2017 |
| **Documentation:** | Standard representations, warranties, and covenants for senior notes, including negative pledge agreements when appropriate. |
| **Covenants:** | 1. [Eligible ARs must be greater than $2.5mm at all times]<br>2. [Eligible Inventory must be greater than $5mm at all times]<br>3. [Unadjusted EBITDA not less than -600k/quarter for 2017. Unadjusted EBITDA not less than -150k for Q1 2018, 0 for Q2 2018, and $1.00/quarter thereafter.] |
| **Reimbursement:** | The Company shall pay Investors for expenses incurred in relation to legal expenses, due diligence and investment documentation. ████ is due in advance upon the signing of this term sheet with the balance due at closing. |

**Exclusivity:**    For a period of three weeks from the date hereof (Exclusivity Period), the Company will not solicit or entertain any competing financing offers whatsoever.

Agreed and accepted this 19th day of August, 2017.

**Ironclad Performance Wear Corporation (ICPW)**          **JGB Management Inc.**

By: _____          By: _____
Name:  James H McAlister                                    Name:
Title:    CFO                                                    Title:

003658

# EXHIBIT 25

## Childress, Frank

| | |
|---|---|
| **From:** | Childress, Frank |
| **Sent:** | Thursday, August 24, 2017 1:52 PM |
| **To:** | Ron Bender (RB@lnbyb.com) |
| **Subject:** | email draft |
| **Attachments:** | JGB Agreement.pdf |

Ron,

Attached please find a copy of document forwarded to me late this morning from Geoff Greulich. Mr. Greulich indicated in the accompanying email that this was an "executed term sheet". As you will note, it is **not** executed by the purported lender. Additionally, it clearly states that, "This term sheet does not constitute a contractual commitment of the Company or Investors but merely represents proposed terms for the proposed transaction."

Radians is unwilling to further forbear from exercise of it rights under the Loan Documents based upon the information provided.

Please let me know if you have questions.

Regards,

Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
Direct: 901.577.2147
Fax: 901.577.0845
Mobile: 901.340.5505
E-mail: fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a Row!**

1

003659

JGB Management Inc.
21 Charles St, Suite 160
Westport, CT 06880
Phone: 1-212-355-5771
Fax: 1-212-253-4093

## JGB Management Inc.

### Ironclad Performance Wear Corporation (ICPW)

The following outlines the terms of a proposed transaction with Ironclad Performance Wear Corporation (ICPW), (the "Company") by JGB Management Inc. or its affiliates or designees ("Investors"). Until definitive documentation is executed by all parties, there shall not exist any binding obligation, other than as described in the sections entitled "Reimbursement" and "Exclusivity" on any party. This term sheet does not constitute a contractual commitment of the Company or Investors but merely represents proposed terms for the proposed transaction.

| | |
|---|---|
| **Company:** | Ironclad Performance Wear Corporation (ICPW) |
| **Security Issued:** | Senior Secured loan |
| **Funded Amount:** | $5,███000 USD |
| **Face Amount:** | $5,█████USD, █% OID |
| **Use of Proceeds:** | Refinance existing debt and fund operations |
| **Coupon:** | 10% per annum, paid monthly in cash |
| **Conversion Feature:** | Convertible at 30 cents |
| **Put Option:** | Interest only for █ months, thereafter JGB, at its option, can put up to $███████ per month |
| **Rank:** | Senior Secured at the Company, by all current and future assets. Only debt at the Company other than trade payables. |
| **Maturity:** | 3 years |
| **Exit Fee:** | ██% of original face at maturity or upon sale of company. To the extent JGB has converted any portion of the note, the exit fee will pertain only to remaining principal amount. The exit fee will not be reduced for the reduction of principal due to monthly puts. |
| **Timing:** | On or before September 5, 2017 |
| **Documentation:** | Standard representations, warranties, and covenants for senior notes, including negative pledge agreements when appropriate. |
| **Covenants:** | 1. [Eligible ARs must be greater than $2.5mm at all times]<br>2. [Eligible Inventory must be greater than $5mm at all times]<br>3. [Unadjusted EBITDA not less than -600k/quarter for 2017. Unadjusted EBITDA not less than -150k for Q1 2018, 0 for Q2 2018, and $1.00/quarter thereafter.] |
| **Reimbursement:** | The Company shall pay Investors for expenses incurred in relation to legal expenses, due diligence and investment documentation. ███████ is due in advance upon the signing of this term sheet with the balance due at closing. |

**Exclusivity:**     For a period of three weeks from the date hereof (Exclusivity Period), the Company will not solicit or entertain any competing financing offers whatsoever.

Agreed and accepted this 19th day of August, 2017.

**Ironclad Performance Wear Corporation (ICPW)**          **JGB Management Inc.**

By: _____          By: _____
Name:   James H McAllister                          Name:
Title:   CFO                          Title:

003661

# EXHIBIT 26

**Childress, Frank**

| | |
|---|---|
| **From:** | Childress, Frank |
| **Sent:** | Thursday, August 24, 2017 3:40 PM |
| **To:** | 'geoffg@ironclad.com'; jimm@ironclad.com |
| **Cc:** | Louis A. Wharton (lwharton@stubbsalderton.com); Ron Bender (RB@lnbyb.com) |
| **Subject:** | RADIANS/IRONCLAD |
| **Attachments:** | Acceleration and Demand Letter.pdf |

Gentlemen,

Please see attached letter.

Thank you for your consideration,

Frank

**E. Franklin Childress, Jr.**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Avenue
Suite 2000
Memphis, Tennessee  38103
Direct:  901.577.2147
Fax:  901.577.0845
Mobile:  901.340.5505
E-mail:  fchildress@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

**Baker Donelson – One of FORTUNE Magazine's "100 Best Companies to Work For®" for Seven Years in a
Row!**

1

003662

# BAKER DONELSON
### BEARMAN, CALDWELL & BERKOWITZ, PC

2000 FIRST TENNESSEE
BUILDING
165 MADISON AVENUE
MEMPHIS, TENNESSEE 38103

PHONE:   901.526.2000
FAX:        901.577.2303

www.bakerdonelson.com

E. FRANKLIN CHILDRESS, JR
Direct Dial: 901.577.2147
Direct Fax: 901.577.0845
E-Mail Address: fchildress@bakerdonelson.com

August 24, 2017

**VIA: E-Mail**

Ironclad Performance Wear Corporation
1920 Hutton Court, Suite 300
Farmers Branch, Texas 75234
Attn: L. Geoffrey Greulich, CEO
      geoffg@ironclad.com

Ironclad Performance Wear Corporation
1920 Hutton Court, Suite 300
Farmers Branch, Texas 75234
Attn: James McAlister, CFO
      jimm@ironclad.com

### *NOTICE OF DEFAULT, ACCELERATION OF INDEBTEDNESS & DEMAND FOR PAYMENT OF OUTSTANDING INDEBTEDNESS OWED*

Re:    Revolving Loan and Security Agreement dated November 28, 2014, executed by
       Ironclad Performance Wear Corporation, a California corporation, and Ironclad
       Performance Wear Corporation, a Nevada corporation (the "Borrowers") in favor
       of Capital One, National Association, as modified by that certain First
       Modification Agreement dated June 15, 2015, that certain Second Modification
       Agreement dated March 16, 2016, that certain Third Modification Agreement
       dated November 28, 2016, that certain Waiver and Fourth Modification
       Agreement dated February 23, 2017, that certain Limited Waiver and Fifth
       Modification Agreement dated April 11, 2017, and that certain Sixth Modification
       Agreement dated May 10, 2017, that certain Forbearance and Modification
       Agreement dated August 1, 2017, and that certain Forbearance Agreement dated
       as of August 14, 2017 (the "Loan Agreement"); the Second Amended and
       Restated Revolving Line of Credit Note dated April 11, 2017, in the principal

4814-4044-5262 v1
2921440-000020 08/24/2017

ALABAMA     FLORIDA     GEORGIA     LOUISIANA     MISSISSIPPI     TENNESSEE     TEXAS     WASHINGTON, D.C.

**003663**

August 24, 2017
Page 2

amount of $8,000,000.00 (the "Note") evidencing the loan to Borrowers (the "Revolving Loan"); the Warehouse Waiver and Consent dated March 31, 2015, executed by Advantage Media Services, Inc. in favor of Capital One, National Association as amended by the Amended Warehouse Waiver and Consent (the "Warehouse Waiver"); and the Landlord Waiver and Consent dated April 2, 2015, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association as amended by the Amended Landlord Waiver and Consent (the "Landlord Waiver", together with the Loan Agreement, the Note and the Warehouse Waiver and all other documents executed in connection therewith, are collectively referred to herein as the "Loan Documents").

Dear Borrowers:

As you are aware, this firm has the pleasure of representing Radians Wareham Holding, Inc. ("Radians"). You were previously notified that pursuant to that certain General Assignment and Assumption of Loan Documents and that certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement with Capital One, National Association, Radians is the owner and holder of the Loan Documents (as defined below) relating to the Revolving Loan:

1. That certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, and the Sixth Modification Agreement dated May 10, 2017.

2. That certain Second Amended and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal amount of $8,000,000.00.

3. That certain UCC-1 Financing Statement filed by Capital One, National Association with the California Secretary of State on December 18, 2014, under Document No. 14-7441632305 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No. 62925880003.

4. That certain UCC-1 Financing Statement filed by Capital One, National Association with the Nevada Secretary of State on December 12, 2014, under Document No. 2014031733-1 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No.2017020461-7.

5. That certain Warehouse Waiver and Consent dated March 31, 2015, as amended by the Amended Warehouse Waiver and Consent executed by Advantage Media Services, Inc. in favor of Capital One, National Association.

4814-4044-5262 v1
2921440-000020 08/24/2017

August 24, 2017
Page 3

6. That certain Landlord Waiver and Consent dated April 2, 2015 as amended by the Amended Landlord Waiver and Consent, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association.

7. That certain Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement dated March 7, 2015 with accompanying exhibits referenced therein.

8. That certain General Assignment and Assumption of Loan Documents.

9. That certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement.

Terms used herein but which are not otherwise defined herein, shall have the meanings ascribed thereto as set forth in the Loan Documents.

Effective as of August 1, 2017, Borrowers and Radians entered into that certain Forbearance and Modification Agreement (the "Forbearance and Modification Agreement") and that certain Deposit Account Control Agreement (the "DACA"). In the Forbearance and Modification Agreement Borrowers acknowledged that in accordance with Sections 10(b) and (c) of the Loan Agreement, Events of Default have occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

Effective as of August 14, 2017, (the "Effective Date") Borrowers and Radians entered into that certain Forbearance Agreement (the "Forbearance Agreement"). In the Forbearance Agreement, Borrowers again acknowledged that in accordance with Sections 10(b) and (c) of the Loan Agreement, Events of Default have occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

Under the terms of the Forbearance Agreement, Radians agreed to forbear from exercising any remedies available to it under the Loan Documents under the existing Events of Default from the Effective Date through and including 5:00 pm Central Time on **August 21, 2017** (the "Forbearance Termination Date"). The Forbearance Agreement further provided that upon the occurrence of the Forbearance Termination Date, Radians may exercise any and all rights and remedies available to Lender provided in the Loan Documents or the Forbearance Agreement.

As provided under Section 11 of the Loan Agreement, as an Event of Default currently exists, Radians hereby accelerates and declares due and immediately payable the entire outstanding principal balance of the Note, together with all accrued and unpaid interest, and all other amounts due and owing under the Note, and any other Loan Documents.

4814-4044-5262 v1
2921440-000020 08/24/2017

August 24, 2017
Page 4

Demand is hereby made for the immediate payment of the sum of **$3,944,045.93** (the "Current Demand Amount") due under the Loan Documents calculated as follows:

| | |
|---|---|
| Outstanding Principal Balance on Loan: | $3,928,332.60 |
| Accrued Unpaid Interest as of August 24, 2017: | $15,713.33 |
| **Current Demand Amount:** | **$3,944,045.93** |

Interest shall continue to accrue on the outstanding principal balance of the Loan from and after the date hereof as provided under the terms of the Note until payment in full is received by Radians in good and immediately available funds. In addition to the amount stated above, in the event the Revolving Loan is repaid in conjunction with financing obtained by Borrowers from a financial or lending institution or other source, or in connection with the acquisition of any or both Borrowers, or any assets of either or both Borrowers, by a third party other than Radians and/or its affiliates, then as a component necessary to satisfy the Revolving Loan, Borrowers shall pay to Radians the Prepayment Fee as set forth in the Forbearance and Modification Agreement.

Likewise, under the terms of the Loan Documents, attorneys' fees and expenses shall continue to accrue and be due and payable by Borrowers in order to satisfy the obligations under the Note.

**In accordance with Section 2.2 of the Loan Agreement, as an Event of Default has occurred and is continuing, Radians is not required to make further advances under the Loan.**

All of Radians' claims, demands and accruals regarding the above-described Loan, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

If the outstanding indebtedness owed to Radians is not paid immediately, Borrowers are hereby advised that Radians intends to exercise its remedies available under the Loan Documents or otherwise at law, or in equity, and furthermore, additional attorneys' fees and other costs of collection incurred by the Lender shall accrue for which Borrowers are liable under the Loan Documents.

Radians reserves the right to exercise, in such order as Radians elects, any one or more of the remedies available to Radians under the Loan Documents or otherwise at law or in equity, including without limitation, the remedies of a secured party under the UCC, including, without limitation the right to take possession of the Collateral securing the Loan and sell the Collateral in accordance with the provisions of the Loan Agreement and the UCC, and nothing contained in this letter shall constitute a waiver of any rights of Radians to pursue such rights and remedies. Please be further advised that no past or future delay or omission in the exercise of any right or remedy accruing to Radians as a result of any Event of Default is intended to constitute a waiver

**003666**

August 24, 2017
Page 5

of any right or remedy accruing to Radians as a result of that Event of Default or any other Event of Default.

In accordance with the terms of the Loan Agreement and the DACA, as Events of Default are existing, Radians has provided the required "Notice of Exclusive Control" to Capital One, National Association (the "Bank") and will exercise its rights as provided in the Loan Agreement and DACA.

**Under the terms of the DACA, Borrowers agree that each shall have no right to issue withdrawal, payment, transfer, delivery, disposition or other instructions or any other right or ability to control, access, pick up, withdraw or transfer, deliver or dispose of Items or funds from the Account without Radians prior written consent with respect thereto from and after the receipt by Bank of a Notice of Exclusive Control.**

Please be advised that the Bank has this afternoon initiated the Notice of Exclusive Control.

**Borrowers are further advised that pursuant to the terms of the Loan Agreement, Borrowers are required to notify Radians of any collections received directly by Borrowers from the sale or disposition of any Collateral, and Borrowers are required to hold the proceeds received from such collections in trust for Radians without commingling the same with other funds of Borrowers and agree to turn the same over to Radians immediately upon receipt in identical form received.**

Payment to Radians in an amount less than the Current Demand Amount, together with all interest accrued thereon after the date of this letter, should not be construed as an accord and satisfaction or as Radians' agreement to accept a lesser amount as payment in full of the Loan. Radians' acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment may not be deemed to be an accord and satisfaction, and is not and shall not be deemed to be binding upon Radians. Radians may accept any such payment or check without prejudice to its rights to receive the balance of all amounts due under the Loan Documents or to pursue its remedies.

Please note that we have no obligation or duty to inform Borrowers of Radians' intention to exercise its rights and remedies. We are, however, doing so in this letter as an accommodation to Borrowers. Borrowers shall not be entitled to expect notice in the future of Radians' elections or specifications of Borrowers' obligations under any of the Loan Documents by reason of Radians' election to provide the notices and specifications set forth in this letter.

Neither this letter nor any statement by or on behalf of Radians as to the amount due and owing under any of the Loan Documents: (i) shall constitute a waiver of any rights of Radians to collect any additional amounts to which Radians may be lawfully entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity or (ii) shall constitute an offer to settle or waive any rights of Radians under any of the Loan Documents.

4814-4044-5262 v1
2921440-000020 08/24/2017

August 24, 2017
Page 6

You are hereby notified that Radians shall strictly enforce the Loan Documents in accordance with their respective terms. Please govern yourself accordingly. Your immediate attention is requested.

**THIS FIRM AND RADIANS ARE ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE NOTE AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, TERMS AND PROVISIONS CONTAINED WITHIN THE LOAN DOCUMENTS AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. Section 362(b)(11), if applicable.

Sincerely,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

E. Franklin Childress, Jr.

EFC:lmr

cc: Louis A. Wharton, Esq.
Ron Bender, Esq.

4814-4044-5262 v1
2921440-000020 08/24/2017

**003668**

# EXHIBIT 27

## Childress, Frank

| | |
|---|---|
| **From:** | Ron Bender <RB@lnbyb.com> |
| **Sent:** | Thursday, August 24, 2017 10:58 PM |
| **To:** | Childress, Frank |
| **Cc:** | Ron Bender |
| **Subject:** | Term Sheet and Related Matters |
| **Attachments:** | DIP Stalking Horse Bid Term Sheet v1.doc |

Frank, following our conversations late today, attached please find a draft of a term sheet which would provide a road map of how it would make sense to me to proceed. You will see that I left a number of items blank for your review and comment. I drafted the attached as non-binding on the theory that our clients would work in good faith with each other to document this transaction, get the bankruptcy filings commenced, and the sale process commenced as soon as possible. I inserted next Friday as a target date to complete documentation. As I indicated in my texts to you, the Company needs $100,000 of the swept funds to be returned first thing tomorrow morning to cover issued and outstanding checks and credit card charges, and the Company expects to need $195,000 next week to cover payroll. The Company is working on a proposed cash collateral/dip financing budget. I will deliver it to you as soon as I receive it. I apologize for my lousy cell phone and internet reception. I am flying back to Los Angeles tomorrow afternoon and I will be available to work on all of this with you over the weekend and next week. Thanks. Ron Bender.

**RON BENDER**, Esq.
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Blvd.  |  Suite 1700  |  Los Angeles, CA  90067
Phone  310 229 1234  |  Direct  310 229 3330  |  Cell  310 261 0215  |  Fax  310 229 1244
rb@lnbyb.com  |  **www.lnbyb.com**

1

003671

## NON-BINDING DIP FINANCING AND STALKING HORSE BIDDER TERM SHEET

Ironclad Performance Wear [is this the full name?] and its wholly-owned subsidiary [insert name] (collectively, the "Debtors"), on the one hand, and [insert name of secured creditor], on the other hand ("Secured Creditor") hereby enter into this Non-Binding DIP Financing and Stalking Horse Bidder Term Sheet (the "Term Sheet"). The purpose of this Term Sheet is to set forth the general terms under which the Debtors would file chapter 11 bankruptcy cases, Secured Creditor would provide the Debtors' with DIP Financing and consent to the Debtors' use of cash collateral, and Secured Creditor would serve as a stalking horse bidder in an auction sale process to be conducted by the Debtors during their bankruptcy cases. This Term Sheet is not binding on any of the parties and is subject to the parties reaching an agreement on formal written documentation to be signed by the parties. The parties recognize that time is of the essence, and the parties agree to work in good faith with each other to prepare and to enter into such formal documentation, and then for the Debtors to commence their chapter 11 bankruptcy cases and asset sale process. The parties will endeavor to finalize and sign their formal documentation by no later than Friday, September 1, 2017.

The following sets forth the general terms agreed to by the parties, recognizing that many of the details of the intended transactions will be set forth in the formal documentation:

- Secured Creditor shall serve as a stalking horse bidder with a stalking horse bid of $20 million for a purchase of substantially all of the Debtors' tangible assets (but not including any of the Debtors' causes of action against third parties) – the "Purchased Assets". The Purchased Assets are to be sold by the Debtors to Secured Creditor (or to a successful overbidder) on an "as is," "where is," and "with all faults" basis without representations or warranties. Secured Creditor has completed its due diligence of the Purchased Assets. The Debtors and Secured Creditor will enter into a formal asset sale agreement (the "Asset Sale Agreement") prior to the filing of the Debtors' chapter 11 bankruptcy cases.
- Secured Creditor will provide the Debtors with up to $_____ of post-bankruptcy DIP financing ("DIP Financing") on a secured basis to enable the Debtors to supplement their cash flow from their business operations pending the closing of the Debtors' sale of the Purchased Assets to Secured

Creditor or a successful overbidder. The Debtors' obligations to Secured Creditor on account of the DIP Financing will be secured by a lien against all assets of the Debtors' bankruptcy estates. The DIP Financing will be for a term of ▓▓ months and will bear interest at the rate of ▓▓% per annum. The Debtors and Secured Creditor will enter into a formal DIP Financing agreement (the "DIP Financing Agreement") prior to the filing of the Debtors' chapter 11 bankruptcy cases. In addition to providing the Debtors with DIP Financing, as part of the DIP Financing Agreement, Secured Creditor will also consent to the Debtors' use of cash collateral, which, together with the DIP Financing, will enable the Debtors to pay all of their post-bankruptcy expenses (and any pre-bankruptcy debts which the bankruptcy court authorizes the Debtors to pay).

- Once the Asset Sale Agreement and the DIP Financing Agreement have been signed by the Debtors and Secured Creditor, the Debtors will proceed to file chapter 11 bankruptcy cases in Los Angeles.

- As soon after the filing of the Debtors' chapter 11 bankruptcy cases as is reasonably possible, the Debtors will seek the approval of the bankruptcy Court on an expedited basis of the DIP Financing Agreement and of Secured Creditor to serve as the stalking horse bidder with bidding procedures consistent with that set forth below.

- Secured Creditor will serve as the stalking horse bidder with an initial stalking horse purchase price of $20 million. An auction sale (the "Auction Sale") will take place not more than ▓▓ days following the date of the Debtors' bankruptcy filings. Only financially qualified parties will be eligible to participate in the Auction Sale – with financially qualified parties to mean parties who have demonstrated that they have the financial means to consummate their purchase of the Purchased Assets without financing unless the financing to be used by them is already committed (meaning that any overbid may not contain any financing contingency). Any party who participates in the Auction Sale will have completed their due diligence of the Debtors and will have no due diligence contingency.

- In order to be eligible to participate in the Auction Sale, prospective overbidders will be required at least three business days prior to the Auction Sale to (i) deliver a redlined version of the Asset Sale Agreement indicating any changes the prospective overbidder is requesting to the form of Asset Sale Agreement entered into between the Debtors and Secured Creditor, and (ii) submit a cash deposit of $2 million, which deposit will be non-refundable and forfeited by the prospective overbidder if the

prospective overbidder is deemed by the bankruptcy court to be the winning bidder and fails to close its purchase of the Purchased Assets within [____] business days following the entry of the bankruptcy court order approving the Debtors' sale of the Purchased Assets to the prospective overbidder regardless of whether an appeal has been filed of the sale order provided there is no entered stay pending appeal - i.e., no final order requirement.

- The initial overbid at the Auction Sale will be for a minimum of $20.5 million with each subsequent bidding increment to be at least $250,000 or figures which are wholly divisible by $250,000.
- The Auction Sale will be conducted in the bankruptcy court unless the bankruptcy court declines to have the Auction Sale conducted in the bankruptcy court.
- Secured Creditor will have the right, but not the obligation, to credit bid its pre-bankruptcy secured debt (which is currently in the amount of approximately $[_____]) and its DIP Financing towards its purchase price and any overbid that Secured Creditor elects to submit.  Secured Creditor shall have the right to participate in any Auction Sale.
- If any party other than Secured Creditor is deemed by the bankruptcy court to be the winning bidder at the Auction Sale, then concurrently with the closing of the Debtors' sale of the Purchased Assets to such winning bidder, Secured Creditor will be paid directly out of the sale proceeds (i) the full amount of the Pre-Bankruptcy Secured Debt, plus (ii) the full amount of the DIP Financing, plus (iii) a break-up fee in the amount of $[_____].
- If Secured Creditor is deemed by the bankruptcy court to be the winning bidder at the Auction Sale and Secured Creditor fails to close its purchase of the Purchased Assets within [____] business days following the entry of the bankruptcy court order approving the Debtors' sale of the Purchased Assets to Secured Creditor (regardless of whether an appeal has been filed of the sale order provided there is no entered stay pending appeal - i.e., no final order requirement), then [insert what the penalty to Secured Creditor will be].
- The Debtors' sale of the Purchased Assets to Secured Creditor or a successful overbidder will be free and clear of all liens, claims and interests in accordance with section 363(f) of the Bankruptcy Code.
- The Debtors have the right to market the Purchased Assets for overbid pending the Auction Sale and to hire an investment banker or sales agent to assist the Debtors in this process.

# EXHIBIT 28

## SECOND FORBEARANCE AGREEMENT

THIS **SECOND FORBEARANCE AGREEMENT** ("Agreement") is made and entered into as of the 30th day of August, 2017 (the "Effective Date"), by and among **RADIANS WAREHAM HOLDING, INC.,** a Nevada corporation (the "Lender" or "Radians"), and **IRONCLAD PERFORMANCE WEAR CORPORATION,** a California corporation ("Ironclad California") and **IRONCLAD PERFORMANCE WEAR CORPORATION,** a Nevada corporation ("Ironclad Nevada" individually, collectively, and interchangeably with Ironclad California, the "Borrowers") The Borrowers, together with Radians are collectively referred to as the "Parties".

## RECITALS

A. On or about November 28, 2014, Capital One, National Association, a National Banking Association, provided Borrowers with a revolving credit facility (the "Revolving Loan"). Pursuant to that certain General Assignment and Assumption of Loan Documents and that certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement with Capital One, National Association, Radians is the owner and holder of the Loan Documents (as defined below) relating to the Revolving Loan.

B. The Revolving Loan is evidenced by the following described documentation:

    i.    That certain Revolving Loan and Security Agreement dated November 28, 2014, executed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation, as borrowers, in favor of Capital One, National Association, as lender, as modified by the First Modification Agreement dated June 15, 2015, the Second Modification Agreement dated March 16, 2016, the Third Modification Agreement dated November 28, 2016, the Waiver and Fourth Modification Agreement dated February 23, 2017, the Limited Waiver and Fifth Modification Agreement dated April 11, 2017, the Sixth Modification Agreement dated May 10, 2017, and that certain Forbearance and Modification Agreement dated August 1, 2017 ("the Loan Agreement").

    ii.    That certain Second Amended and Restated Revolving Line of Credit Note dated April 11, 2017, in the principal amount of $8,000,000.00 as amended by the Forbearance and Modification Agreement dated August 1, 2017 (the "Note").

    iii.    That certain UCC-1 Financing Statement filed by Capital One, National Association with the California Secretary of State on December 18, 2014, under Document No. 14-7441632305 affecting the Collateral (as defined in the Loan Agreement) more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No. 62925880003.

4823-9866-6830 v4
2921440-000020 08/30/2017

iv.    That certain UCC-1 Financing Statement filed by Capital One, National Association with the Nevada Secretary of State on December 12, 2014, under Document No. 2014031733-1 affecting the Collateral more particularly described on Exhibit A attached thereto as assigned to Radians by UCC-3 filed under Document No.2017020461-7.

v.    That certain Warehouse Waiver and Consent dated March 31, 2015, as amended by the Amended Warehouse Waiver and Consent, executed by Advantage Media Services, Inc. in favor of Capital One, National Association.

vi.    That certain Landlord Waiver and Consent dated April 2, 2015, as amended by the Amended Landlord Waiver and Consent, executed by Erwin & Essie Appel Trust in favor of Capital One, National Association.

vii.    That certain Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement dated March 7, 2015 with accompanying exhibits referenced therein.

viii.    That certain General Assignment and Assumption of Loan Documents.

ix.    That certain Assignment and Assumption of Assignment Agreement for Proceeds of Credit Approved Receivables Purchase Agreement.

C. The Note and the Loan Agreement, together with all documents evidencing, or referring, or relating to the Revolving Loan are hereinafter collectively referred to as the "Loan Documents".

D. The balance owing on the Note as of August 24, 2017, is an amount of $3,944,045.93 (the "Obligations"). Interest continues to accrue on the Obligations from and after August 24, 2017, as provided in the Note. The balance listed does not reflect funds received by Radians on and after August 24, 2017 under the DACA (defined below).

E. By letter of July 26, 2017 (the "July 26 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

F. By letter of August 1, 2017, Radians notified Borrowers that without waiving the occurrence of Events of Default, the July 26 Letter was rescinded as of July 26, 2017.

G. Effective as of August 1, 2017, Borrowers and Radians entered that certain Forbearance and Modification Agreement providing for a Forbearance Period to allow Borrowers a period of time to satisfy the Obligations in full, during which time period Radians agreed not to seek collection of the Obligations, except on the occurrence of a Terminable Event as defined in the Forbearance and Modification Agreement. The Forbearance and Modification Agreement further provided for modification of the Second Amended and Restated Revolving Line of Credit Note and Loan Agreement as provided therein.

H. Under the terms of the Forbearance and Modification Agreement, the Forbearance Period expired on the Forbearance Termination Date of August 7, 2017, as Borrowers had failed to satisfy the Obligations on or before the Forbearance Termination Date.

I. The Forbearance and Modification Agreement further provided that upon the occurrence of the Forbearance Termination Date, Radians may exercise any and all rights and remedies available to Lender provided in the Loan Documents or the Forbearance and Modification Agreement.

J. By letter of August 9, 2017 (the "August 9 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

K. By letter of August 15, 2017, Radians notified Borrowers that without waiving the occurrence of Events of Default, the August 9 Letter was rescinded as of August 9, 2017.

L. Effective as of August 14, 2017, Borrowers and Radians entered that certain Forbearance Agreement (the "Forbearance Agreement") providing for a Forbearance Period to allow Borrowers a period of time to satisfy the Obligations in full, during which time period Radians agreed not to seek collection of the Obligations, except on the occurrence of a Terminable Event as defined in the Forbearance Agreement.

M. Under the terms of the Forbearance Agreement, the Forbearance Period expired on the Forbearance Termination Date of August 21, 2017, as Borrowers had failed to satisfy the Obligations on or before the Forbearance Termination Date.

N. By letter of August 24, 2017 (the "August 24 Letter"), Borrowers were notified by Radians of the occurrence of Events of Default (as defined in the Loan Agreement) under the terms of the Loan Documents and as a result thereof acceleration and demand for immediate payment of the Obligations.

O. As a result of the occurrence of Events of Default, Lender has certain rights and remedies under the Loan Documents. Borrowers have requested that Lender further forbear in the exercise of its remedies under the Loan Documents for a period of time specified herein to satisfy the Obligations in full.

P. In connection with the execution of the Forbearance and Modification Agreement, Borrowers and Radians entered into that certain Deposit Account Control Agreement (the "DACA"). In accordance with the terms of the Loan Agreement and the DACA, Radians provided the required "Notice of Exclusive Control" to Capital One, National Association (the "Bank") on August 24, 2017, and has exercised its rights as provided in the Loan Agreement and DACA.

Q. Borrowers have notified Radians of their intent to initiate the filing of voluntary cases (the "Bankruptcy Cases") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California on or before Friday, September 1, 2017.

R. Upon the anticipated filing of the Bankruptcy Cases, Borrowers have requested that Radians provide to Borrowers certain debtor in possession financing ("DIP Financing") and consent to the Borrowers' use of cash collateral. Borrowers and Radians have negotiated and executed a Letter of Intent that sets forth the terms of the DIP Financing and cash collateral consent and the terms under which Radians will serve as a stalking horse bidder for the purchase of the Borrowers' assets (excluding cash and causes of action against third parties). A copy of the executed Letter of Intent is attached hereto as Exhibit "1".

S. Lender is willing to further forbear from the exercise of its rights and remedies under the Loan Documents as a result of the occurrence of Events of Default, but only on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals, the covenants herein set forth and confirmed, the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, Borrowers and Lender agree as of the Effective Date as follows:

1. **Acknowledgement of Recitals.** Borrowers and Lender acknowledge and agree that the foregoing "Recitals" are true, correct, and complete.

2. **Acknowledgement of Obligations by Borrowers.** Borrowers acknowledge and agree that Borrowers are indebted to Lender for repayment of the Obligations, including all accrued interest accrued thereon. Borrowers further acknowledge that they are responsible for all fees, expenses and charges as allowed under the Loan Documents. Borrowers hereby reaffirm and ratify the terms of the Loan Documents, as amended herein, and acknowledge that they are enforceable in accordance with their terms.

3. **Acknowledgement of Security Interests.** Borrowers acknowledge the validity and enforceability of the security interests in the Collateral granted in favor of Lender under the Loan Documents executed by Borrowers.

4. **Acknowledgement of Events of Default.** Borrowers have previously acknowledged in the Forbearance and Modification Agreement that in accordance with Sections 10(b) and (c) of the Loan Agreement, Events of Default have occurred for failure to provide materially complete and correct financial statements provided in accordance with the Loan Agreement for fiscal years ended December 31, 2016, and 2015, and the fiscal quarters as of and for the periods ended March 31, 2017, and March 31, June 30 and September 30, 2016.

5. **Acknowledgment of Termination of Requirement to Make Further Advances Under the Note.** Borrowers acknowledge that in accordance with Section 2.2 of the Loan Agreement, as Events of Default have occurred and are continuing, Radians is not required to make further advances under the Loan.

6. **Acknowledgement of Lack of Defenses.** Borrowers acknowledge that as of the Effective

Date each has no defense, counterclaim, offset, cross complaint, claim or demand of any kind or nature whatsoever (collectively, the "Borrower Claims") that can be asserted to reduce or eliminate all or any part of its liability to repay any of the Obligations to Lender or seek affirmative relief for damages of any kind or nature from Lender, which Borrower Claims arise out of or are related to the Loan Documents or, more generally, Borrowers' relationship with Lender. To the extent that any such Borrower Claims exist as of the Effective Date, Borrowers acknowledge and agree that they have been fully, forever and irrevocably released pursuant to Paragraph 14 hereto.

7. **Forbearance**.

(a)    Lender will forbear from exercising any remedies available to it under the Loan Documents (other than those rights of Radians as set forth in the Loan Agreement related to the Lockbox Account of Borrowers and more particularly set forth in the DACA) from the Effective Date through and including the Forbearance Termination Date, as further defined below (the "Forbearance Period"), and will not seek collection of the Obligations from Borrowers, except as set forth herein, initiate or join in filing any involuntary bankruptcy petition with respect to Borrowers under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") or otherwise file or participate in any involuntary insolvency, reorganization, moratorium, receivership, or other similar proceedings initiated against Borrowers under the laws of the United States other than in response to protect its interest as a secured creditor; provided, however, that the Forbearance Period shall terminate and Lender shall be permitted to enforce or exercise any remedies available to it under the Loan Documents if: (i) Borrowers materially breach, default, or fail to perform any obligation or agreement contained in this Agreement; (ii) any case or other proceeding is instituted by or against the Borrowers under any state or federal law relating to the bankruptcy of debtors, including without limitation, the Bankruptcy Code; (iii) any Event of Default other than any existing Event of Default occurs under any of the Loan Documents as modified by this Agreement and all of the other documents executed in connection herewith; (iv) Borrowers fail to meet any deadline established under this Agreement for providing required payment, confirmation or documentation; or (v) any of the acknowledgments, warranties or representations of the Borrowers set forth herein shall be untrue or inaccurate in any material respect as of the date made. Each of the foregoing events is hereinafter referred to as a "Terminable Event."

(b)    Subject to the termination set forth in Paragraph 7(a), and unless otherwise agreed to in writing by Lender, the Forbearance Period will terminate at 5:00 p.m. Pacific Standard Time on **September 1, 2017** (the "Forbearance Termination Date").

8. **Continued Receipt of Funds Under the DACA**.    Borrowers acknowledge that in accordance with the Notice of Exclusive Control issued to the Bank on August 24, 2017, pursuant to the terms of the DACA, funds received in the Lockbox account of Borrowers shall continue to be forwarded by the Bank to Radians. Borrowers further acknowledge that pursuant to the terms of the Loan Agreement they are required to notify Radians of any collections received directly by Borrowers form the sale or disposition of any Collateral, and that Borrowers are required to hold the proceeds received from such collections in trust for Radians without commingling the same with other funds of Borrowers and further agrees to turn the same over to Radians immediately

4823-9866-6830 v4
2921440-000020 08/30/2017

upon receipt in the identical form received.

9. **Advance of Funds Under the Loan Agreement**. In contemplation of execution of this Agreement, Radians has advanced to Borrowers the sum of approximately $36,000.00 to cover issued and outstanding checks and credit card charges, as represented by Borrowers to have been incurred in the ordinary course of the operation of the business of Borrowers (the "Business"). Borrowers have further requested that Radians advance to Borrowers prior to Borrowers' commencement of the Bankruptcy Cases the total additional sum of $519,958.00 in accordance with the funding schedule attached hereto as Exhibit "2" (the "Pre-Bankruptcy Budget") to enable Borrowers to cover the payroll of the Business for the week ending September 1, 2017, to fund certain operating and other related expenses, including professional fees of Bankruptcy Counsel, prior to filing of the Bankruptcy Cases, and to enable Borrowers to commence their Bankruptcy Cases with a functional beginning cash balance of $100,000. Radians agrees to advance to Borrowers all of the requested funds to enable Borrowers to fund the expenses set forth in the Pre-Bankruptcy Budget in accordance with the time table contained in the Pre-Bankruptcy Budget.

10. **Actions Authorized Upon a Terminable Event or the Occurrence of the Forbearance Termination Date**. Upon the occurrence of a Terminable Event or the Forbearance Termination Date, Lender may exercise any and all rights and remedies available to Lender provided in the Loan Documents or this Agreement.

11. **Adequate Consideration**. Borrowers each hereby acknowledge and agree that Lender's agreed forbearance, advance of funds received pursuant to the DACA, and extended time for repayment of the Obligations constitutes full and adequate consideration for the execution and delivery by Borrowers of this Agreement. Borrowers materially benefit by the forbearance and agreements of Lender contained in this Agreement. Borrowers stipulate that they have the authority and authorization to execute this Agreement.

12. **Liens Unaffected**. Nothing in this Agreement shall adversely affect, invalidate, discharge, release, or impair any security or the Collateral (including, without limitation, the liens and security interests granted in the Loan Documents held by the Lender or the indebtedness secured thereby or the priority of the security interests of such security, which priority of the security interests shall remain unaffected and unimpaired).

13. **Conditions Precedent**. As conditions precedent to Lender's obligation to forbear hereunder, Borrowers agree as follows:

      (a)    To comply with the provisions and conditions of this Agreement;

      (b)    Borrowers shall execute this Agreement;

      (c)    Borrowers shall provide to Lender any and all existing documents reasonably requested by Lender relating to the operation of Borrowers' business;

      (d)    Borrowers shall continue to use the Lockbox as required under the Loan Agreement with access to funds deposited in the Lockbox Account being governed by that certain

Deposit Account Control Agreement executed among Borrowers, Radians and Capital One, National Association; and

      (e)    Borrowers have executed the Letter of Intent.

14. <u>Release of Lender</u>.

      (a)    Except with respect to Lender's obligations set forth in this Agreement, in consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrowers, and each of their respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably release, remise and forever discharge Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Borrowers or any of their respective heirs, successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions thereunder or related thereto.

      (b)    Borrowers understand, acknowledge and agree that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

      (c)    Borrowers agree that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

      (d)    Upon full payment and satisfaction of the Obligations, Borrowers shall thereupon automatically be fully, finally and forever released and discharged from any further claim, liability, or obligation in connection with the Revolving Loan and this Agreement, and Lender shall return and mark the Note as "Paid in Full" and release any and all security with respect to the Obligations. This Paragraph 14 shall survive termination of this Agreement.

15. <u>Remedies Cumulative; No Waiver</u>.  The execution, delivery and performance of this Agreement by Lender and the acceptance by Lender of the performance of Borrowers hereunder (a) shall not constitute a waiver or release by Lender of any Event of Default that may now or hereafter

exist, (b) shall not constitute a novation of any of the Loan Documents, as amended, and, (c) except as expressly provided in this Agreement, shall be without prejudice to, and is not a waiver or release of, Lender's rights at any time in the future to exercise any and all rights conferred upon Lender by any of the Loan Documents or otherwise at law or in equity, including but not limited to the right to institute collection proceedings against Borrowers and/or to exercise any right against any other person or entity not a party to this Agreement.

16. **Cooperation Upon Default**. Upon the expiration of the Forbearance Period including any mutually agreed upon extensions thereof without Borrowers having made a lump sum payment to Lender in order to satisfy in full the Obligations due and owing to Lender or the occurrence of a Terminable Event, Borrowers also shall, if requested by Lender, assist Lender in the orderly liquidation of the Collateral securing the Obligations (the "Turnover of Assets"). In implementing the Turnover of Assets, Borrowers agree as follows:

      (a)    Borrowers will cooperate with Lender in the consensual and orderly liquidation of the Collateral securing any of the Obligations.

      (b)    Borrowers acknowledge that they have received commercially reasonable, timely, and accurate notice of an Event of Default, and Borrowers agree that such notice satisfies all requirements of notice under the Loan Documents and applicable law.

17. **Representations and Warranties**. To induce Lender to enter into this Agreement and as partial consideration for the terms and conditions contained herein, Borrowers represent and warrant, each and all of which shall survive the execution and delivery of this Agreement and all of the other documents executed in connection herewith, that all corporate actions required to be taken by Borrowers for the authorization, execution, delivery and performance of this Agreement and any other documents contemplated hereby have been taken. This Agreement is, and any documents executed pursuant hereto will be, legal, valid, and binding obligations of the party or parties thereto, enforceable against each such party in accordance with their respective terms, subject only to bankruptcy, insolvency, reorganization, moratorium and other laws or equitable principles affecting creditors' rights generally.

18. **Counsel.** Borrowers acknowledge that they have read and understand this Agreement, that they have had the ability to consult with an attorney of their own choosing before signing this Agreement, have been afforded an opportunity to deliberate as to whether to enter into this Agreement, that they understand the terms and effects of this Agreement, and that they execute this Agreement voluntarily.

19. **Construction**. This Agreement shall be liberally construed in order to effectuate the rights, benefits, and remedies of each party, as expressed herein, and neither the express language herein nor any principles of interpretation shall be impaired or adversely affected by the language of any prior discussion, form or draft of this Agreement. This Agreement has been the subject of negotiations by the parties, and this Agreement shall not be construed against any party merely because of such party's involvement in its initial preparation and negotiation. Except as modified by this Agreement, the Loan Documents shall remain in full force and effect.

20. <u>Governing Law.</u> This Agreement is governed by the laws of the State of Texas.   The Parties agree that the Choice of Forum; Consent to Service of Process and Jurisdiction provisions set forth in Section 13.6 of the Loan Agreement shall apply to this Agreement.

21. <u>Counterparts, Facsimile.</u> This Agreement may be executed and delivered (including by facsimile or Portable Document Format (pdf) transmission) in one or more counterparts, all of which will be considered one and the same agreement and will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties. Facsimile or pdf transmission of any signed original document or retransmission of any signed facsimile or pdf transmission will be deemed the same as delivery of an original. At the request of any party, the other parties will confirm facsimile or pdf transmission by signing a duplicate original document.

[Signatures on Next Page]

4823-9866-6830 v4
2921440-000020 08/30/2017

**IN WITNESS WHEREOF,** the Parties have executed this Agreement to be effective as of the Effective Date.

**BORROWER:**

**IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation**

By: _____
        L. Geoffrey Greulich, CEO

**BORROWER:**

**IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation**

By: _____
        L. Geoffrey Greulich, CEO

**RADIANS WAREHAM HOLDING, INC., a Nevada corporation**

By: _____
        Mike Tutor, CEO

**IN WITNESS WHEREOF**, the Parties have executed this Agreement to be effective as of the Effective Date.

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION**, a California corporation

By: _____
       L. Geoffrey Greulich, CEO

BORROWER:

**IRONCLAD PERFORMANCE WEAR CORPORATION**, a Nevada corporation

By: _____
       L. Geoffrey Greulich, CEO

**RADIANS WAREHAM HOLDING, INC.**, a Nevada corporation

By: _____
       Mike Tutor, CEO

STATE OF TEXAS
COUNTY OF Dallas

      Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION**, the within named bargainor, a California corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

      WITNESS my hand and seal at office, on this the 30th day of August, 2017.

Notary Public

My Commission Expires:

05-17-2020

STACY METZLER
Notary Public, State of Texas
Comm. Expires 05-17-2020
Notary ID 130663660

STATE OF TEXAS
COUNTY OF Dallas

      Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **L. Geoffrey Greulich**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **IRONCLAD PERFORMANCE WEAR CORPORATION**, the within named bargainor, a Nevada corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

      WITNESS my hand and seal at office, on this the 30th day of August, 2017.

Notary Public

My Commission Expires:

05-17-2020

STACY METZLER
Notary Public, State of Texas
Comm. Expires 05-17-2020
Notary ID 130663660

4823-9866-6830 v4
2921440-000020 08/30/2017

STATE OF TENNESSEE
COUNTY OF SHELBY

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared **Mike Tutor,** with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself (or herself) to be the Chief Executive Officer of **RADIANS WAREHAM HOLDING, INC.,** the within named bargainor, a Nevada corporation, and that he as such Chief Executive Officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as such Chief Executive Officer.

WITNESS my hand and seal at office, on this the 30ᵗʰ day of August, 2017.

_____
Notary Public

My Commission Expires:

9.4.19

ANGELA G. YORK
STATE OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY
MY COMMISSION EXPIRES 9-4-2019

4823-9866-6830 v4
2921440-000020 08/30/2017